UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

SHARPE HOLDINGS, INC., et al.,       )
                                     )
       Plaintiffs,                   )
                                     )
  v.                                 )   No. 2:12-CV-92-DDN
                                     )
UNITED STATES DEPARTMENT OF          )
HEALTH AND HUMAN SERVICES, et al.,   )
                                     )
       Defendants.                   )

MEMORANDUM AND ORDER

This action is before the court on the motion of plaintiffs for a temporary restraining order and a preliminary injunction under Federal Rule of Civil Procedure 65. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court heard oral arguments on December 31, 2012.

I.  BACKGROUND

On December 20, 2012, plaintiffs Sharpe Holdings, Inc., Charles N. Sharpe, Judi Diane Schaefer, and Rita Joanne Wilson commenced this action against defendants United States Department of Health and Human Services, Kathleen Sebelius in her official capacity as Secretary of Health and Human Services, the United States Department of the Treasury, Timothy Geithner in his official capacity as Secretary of the Treasury, the United States Department of Labor, and Hilda Solis in her official capacity as Secretary of Labor. Defendants are the departments and officials responsible for adopting, administering, and enforcing the federal laws and regulations at issue.

By their pending motion, plaintiffs seek immediate injunctive relief prohibiting defendants from applying and enforcing against plaintiffs certain portions of the Patient Protection and Affordable Care Act, Pub. L. 111-148 (March 23, 2010), and the Health Care and Education Reconciliation Act, Pub. L. 111-152 (March 30, 2010) (collectively the "Affordable Care Act" or the "Act"). Defendants oppose the issuance of injunctive relief.

At this initial, pre-discovery stage of the case, plaintiffs' entitlement to immediate injunctive relief depends upon the allegations of their complaint and their pending motion

and the affidavits submitted in support.  At the December 31, 2012 hearing, neither party offered evidence.

The Affordable Care Act, enacted in March 2010, regulates the national health insurance market by directly regulating group health plans and health insurance issuers. The Act contains a preventive services coverage provision which states:

> A group health plan and a health insurance issuer offering group or individual health insurance coverage shall, at a minimum provide coverage for and shall not impose any cost sharing requirements for[,] with respect to women, such additional preventive care and screenings . . . as provided for in comprehensive guidelines supported by the Health Resources and Services Administration for purposes of this paragraph.

42 U.S.C. § 300gg–13(a)(4).

The Health Resources and Services Administration has issued guidelines requiring coverage for "[a]ll Food and Drug Administration approved contraceptive methods, sterilization procedures, and patient education and counseling for all women with reproductive capacity."  <u>Women's Preventive Services: Required Health Plan Coverage Guidelines</u>, Health Resources and Services Administration, <u>http://www.hrsa.gov/womensguidelines/</u> (last visited Dec. 31, 2012).  The FDA has approved several contraceptive methods, including Plan B, Ella, and copper intrauterine devices (IUDs). [1]  <u>Birth Control Guide</u>, FDA Office of Women's Health, <u>www.fda.gov/downloads/ForConsumers/ByAudience/ForWomen/FreePublications/UCM282014.pdf</u>.

The government issued a regulation (ACA mandate) that adopted the Health Resources and Service Administration guidelines as final.  77 Fed.Reg. 8725.  Group health plans and health insurance issuers are required to provide coverage consistent with the guidelines, without cost sharing, in plan or policy years beginning on or after August 1, 2012.  <u>Id.</u> at 8725-26.

Employers failing to meet the requirements of the Act and ACA mandate subject themselves to a number of liabilities.  First, failure to provide an employee health insurance plan is penalized with a fine in the amount equal to one-twelfth of $2000 multiplied by the number of full-time employees on a monthly basis.  26 U.S.C. § 49890H. Further, failure to meet the group plan health requirements is penalized in the amount of

---

[1] Plaintiffs refer to these particular contraceptive methods as abortifacients.  This appellation is supported by the cited Birth Control Guide which indicates for each of the Plan B, Ella, and copper intrauterine devices that, among the ways the respective device may work is to prevent attachment or implantation of the fertilized egg to the uterus wall. Defendants do not deny this assertion.

$100 per day for each affected employee.  26 U.S.C. § 49890D.  Additionally, 29 U.S.C. § 1132 authorizes private enforcement suits for failure to meet the requirements of the Act.

The ACA mandate is subject to several exceptions.  First, the Department of Health and Human Services issued a regulation that exempts religious employers from the requirement of providing contraceptive services.  76 Fed.Reg. 46621-01.  The regulation defines religious employer as an employer that meets all of the following criteria:

(1) The inculcation of religious values is the purpose of the organization.
(2) The organization primarily employs persons who share the religious tenets of the organization.
(3) The organization serves primarily persons who share the religious tenets of the organization.
(4) The organization is a non-profit organization as described in the [Internal Revenue Code].

Id.; 45 C.F.R. § 147.130(a)(1)(iv)(B).

Next, individuals are not required to terminate group health plans or health insurance coverage if they enrolled in such plans or for such coverage by March 23, 2010.  42 U.S.C. § 18011.  More specifically, these grandfathered plans are not subject to the requirements of 42 U.S.C. § 300gg–13(a) or the ACA mandate.  Id.  Additionally, employers with fewer than 50 full-time employees are not subject to penalties and fines for failure to provide minimum essential coverage under an eligible employer-sponsored plan.  26 U.S.C. §§ 4980D, 4980H.  Finally, members of a recognized religious sect or division that conscientiously objects to the acceptance of public or private insurance funds and members of health care sharing ministries are exempt from the requirement to obtain minimum essential coverage.  26 U.S.C. §1402(d)(1); 26 U.S.C. § 5000A(d)(2).

Plaintiff Sharpe Holdings, Inc. is a Missouri corporation that employs more than 50 full-time individuals in industries including farming, dairy, creamery, and cheese-making and offers health insurance to employers through a self-insured program.  (Doc. 4-2 at ¶¶ 6,11.)  Plaintiff Charles N. Sharpe is the founder, owner, chairman of the board, and chief executive officer of Sharpe Holdings and sets all policies governing the business conduct of Sharpe Holdings.  (Id. at ¶ 4.)  By their unopposed affidavits, plaintiffs Judi Diane Schaefer and Rita Joanne Wilson are employed by Sharpe Holdings and pay a portion of the required premiums and enjoy the benefits of the self-insured program.

In accordance with their sincerely held religious beliefs and practices, the individual plaintiffs oppose the use, funding, provision, or support of abortion on demand and believe that the use of Plan B, Ella, and copper IUDs constitutes abortion on demand.  (Doc. 4-2 at ¶¶ 13,14,17; Doc. 4-3 at ¶¶ 4-7; Doc. 4-4 at ¶¶ 4-7.)  At the hearing held on December 31, 2012, counsel for plaintiffs stated that they are not contesting the merely

-3-

contraceptive characteristic of the three devices. Rather, the focus of their claims for injunctive relief is the ability of these devices to prevent a fertilized egg from implanting in the wall of the uterus, thereby leading to the ejection of the fertilized egg from the woman's body, in other words, the abortion of the live fetus. Plaintiffs' adherence to these tenets is integral to them. (Docs. 4-2, 15-1, 4-3, 4-4.)

In their complaint, plaintiffs allege violations of the Religious Freedom Restoration Act (RFRA), the First Amendment's Free Exercise and Establishment Clauses, the right against compelled speech, the right of expressive association, and the Administrative Procedure Act. Plaintiffs seek (a) declarations by the court that the ACA mandate and defendants' enforcement thereof violate the First and Fifth Amendments, RFRA, and the Administrative Procedure Act; (b) an order prohibiting defendants' enforcement of the ACA mandate with respect to Plan B, ella, copper IUDs, and related education and counseling; and (c) costs and reasonable attorney and expert fees under 42 U.S.C. § 1988.

## II. SUBJECT MATTER JURISDICTION

Defendants argue that the court is without subject matter jurisdiction because plaintiffs lack standing, an issue the court is constrained to take up at the outset. If a plaintiff lacks standing to sue, federal subject matter jurisdiction under Article III of the Constitution is lacking. ABF Freight System, Inc. v. International Broth. of Teamsters, 645 F.3d 954, 958 (8th Cir. 2011). The Eighth Circuit stated the constitutional minimum of standing requires the plaintiffs to show an injury-in-fact that is likely traceable to the challenged action of the defendant and that is likely to be redressed by a favorable decision by this court. Id. (quotation marks and internal citation omitted).

Defendants originally argued that plaintiffs had only conclusorily alleged that their group health plan is not in a "grandfathered" status and thus exempt from the operation of the ACA mandate. However, after the conclusion of the hearing earlier today, the parties resolved this issue; they do not dispute that plaintiffs' group health plan is not grandfathered for exemption from the application of the ACA mandate.

The court concludes from the record of the penalties to be imposed on them by violation of the ACA mandate that plaintiffs have made a sufficient initial showing of standing to sue under Article III.

Defendants argue, that even if plaintiffs show standing under Article III, they cannot show that the ACA Mandate imposes a substantial burden on their religious exercise. For the reasons set forth below, the court disagrees and concludes, for the

purposes of these initial proceedings in this action, that the record shows that plaintiffs would suffer an imminent injury from the operation of the challenged regulations.

The court concludes that it has subject matter jurisdiction over this action.

### III.  MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiffs move for a temporary restraining order and preliminary injunction prohibiting defendants from applying and enforcing against them the statutory and regulatory provisions that require their employee benefit health plan to cover Plan B, Ella, and copper IUDs, and related patient education and counseling.  Specifically, plaintiffs take issue with the requirements of 42 U.S.C. § 300gg-13(a)(4), and the liabilities imposed by 26 U.S.C. § 4980D, § 4980H, and 29 U.S.C. § 1132.

Plaintiffs argue that immediate relief is required because they must identify a health plan and complete the enrollment process immediately, because the renewal date of their current employee health benefit plan is January 1, 2013 and because otherwise failure to follow the ACA Mandate will result in significant fines and penalties.  They argue that they will likely succeed on their claims that the ACA Mandate violates RFRA, the Free Exercise Clause, the Establishment Clause, and the right against compelled speech.

"Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest."  Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981).  "In balancing the equities no single factor is determinative."  Id.  These factors are also considered to determine the propriety of a temporary restraining order.  See S.B. McLaughlin & Co., Ltd. v. Tudor Oaks Condo. Project, 877 F.2d 707, 708 (8th Cir. 1989).

The relevant inquiry is "whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined."  Dataphase, 640 F.2d at 113.  The burden of proof is on the party seeking injunctive relief.  Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987); United States v. Dorgan, 522 F.2d 969, 973 (8th Cir. 1975).

### IV.  DISCUSSION

**A. RFRA**

Plaintiffs argue that the government violated RFRA, contending that the ACA mandate imposes a substantial burden on the exercise of their religion, that the government cannot demonstrate a compelling governmental interest, and that the mandate is not the least restrictive means to achieve any interest.

Under RFRA, the federal government may not substantially burden the exercise of religion unless it demonstrates that the burden is in furtherance of a compelling governmental interest and that the burden is the least restrictive means of furthering that compelling governmental interest.  42 U.S.C.A. § 2000bb-1.

As a threshold inquiry, plaintiffs must show that a federal policy or action substantially burdens their sincerely held beliefs.  United States v. Ali, 682 F.3d 705, 709 (8th Cir. 2012).  "In the First Amendment context, substantially burdening one's free exercise of religion means that the regulation 'must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunity to engage in those activities that are fundamental to a person's religion." Id.

From the record before the court, the court concludes that plaintiffs have shown that the enforcement of the ACA mandate, and its substantial financial penalties, on their health plan would substantially burden their religious beliefs.  Such would force them to subsidize coverage for drugs and devices used to induce abortion against their religious beliefs and principles, or force them to suffer very substantial economic consequences.

Plaintiffs also argue that that the government cannot demonstrate a compelling governmental interest.  The Supreme Court has articulated that "only those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion" and that "[t]he conduct or actions so regulated have invariably posed some substantial threat to public safety, peace or order." Wisconsin v. Yoder, 406 U.S. 205, 215 (1972); Sherbert v. Verner, 374 U.S. 398, 403 (1963).

The government has proffered the interests of public health and gender equity in support of the ACA mandate, but plaintiffs contend that these interests are insufficient to meet the government's burden.  Particularly, plaintiffs argue that the various exceptions provided by the Act and mandate undermine the government's claim that such interests are compelling.  Plaintiffs point to the fact that the Act does not require employers with fewer than 50 employees to provide employee health insurance and that the ACA mandate does not apply to grandfathered plans.  While these factual assertions by the plaintiffs are not gainsaid by defendant, their impact on plaintiffs' ultimate entitlement to relief requires

-6-

further hearing and consideration.  For the purposes of these proceedings,  this unresolved issue does not detract from plaintiffs' entitlement to relief at this stage of the case.

Plaintiffs further argue that the ACA mandate is not the least restrictive means of achieving the interests of public health and gender equity.  To support their argument, plaintiff suggest offering incentives to provide contraceptive services through tax benefits, directly reimbursing citizens, directly providing to citizens, and providing incentives for pharmacies, physicians, and health clinics to offer the contraceptives free of charge as less restrictive means.  Defendants argue it is not for plaintiffs to devise alternative programs that avoid their involvement with the ACA mandate.

B. First Amendment

Plaintiffs argue that the ACA mandate violates the Free Exercise Clause of the First Amendment, contending that the mandate is not neutral or generally applicable and cannot withstand strict scrutiny.  The Free Exercise Clause states, "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof." Under the Free Exercise Clause, an individual's freedom of religious belief is absolute, but freedom of conduct is not.  See e.g., Bowen v. Roy, 476 U.S. 693, 699 (1986).  A neutral law of general applicability that incidentally burdens religious exercise need only satisfy rational basis review, not strict scrutiny.  Employment Div. v. Smith, 494 U.S. 872 (1990). However, "[a] law burdening religious practice that is not neutral or not of general application must undergo the most rigorous of scrutiny."  Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 546 (1993).  "Neutrality and general applicability are interrelated" and "failure to satisfy one requirement is a likely indication that the other has not been satisfied." Id. at 531-32.

Plaintiffs argue that the Act must withstand strict scrutiny because it is not neutral nor generally applicable.  They contend that because the Act provides preferential treatment for some religious institutions by way of exemption, the ACA mandate lacks neutrality.  "[I]f the object of a law is to infringe upon or restrict practices because of their religious motivation, the law is not neutral." Id. at 533.

Plaintiffs have shown to the court's satisfaction for the purposes of these initial proceedings, that the ACA mandate is not generally applicable because it does not apply to grandfathered health plans, religious employers, or employers with fewer than fifty employees.  Specifically, plaintiffs argue that the ACA mandate's exemptions clearly prefer secular purposes over religious purposes and some religious purposes over other religious

purposes. Burdens cannot be selectively imposed only on conduct motivated by religious belief. Id. at 543. "[W]here the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of 'religious hardship' without compelling reason." Employment Div., Dept. of Human Res. of Oregon v. Smith, 494 U.S. 872, 884 (1990).

While the parties contest whether or not compelling governmental reasons justify the categorical exemptions to the ACA mandate, the court concludes that this issue need not be finally resolved now. Suffice it to say that plaintiffs have shown a reasonable likelihood of success on the merits that has not been overcome at this time. See O'Brien v. U.S. Dept. of Health and Human Services, No. 12-3357, Order (8th Cir. Nov. 28, 2012)(order granting stay pending appeal from district court dismissal); Korte v. Sebelius, No. 12-3841 (7th Cir. Dec. 28, 2012)(order granting injunction pending appeal); American Pulverizer Co. v. United States Dept. of Health and Human Services, No. 12-3459-CV-S-RED (W.D. Mo. Dec. 20, 2012)(order granting preliminary injunction); Conestoga Wood Specialties Corp. v. Sebelius No. 12-6744 (E.D. Pa. Dec. 28, 2012) (order granting temporary injunctive relief).

C. Remaining Equitable Factors

Plaintiffs argue that remaining factors of the equitable balancing required by Dataphase also tip in their favor. As stated above, these factors include irreparable harm, harm imposed on other parties by granting the injunctive relief, and public interest.

Plaintiffs argue that they will suffer irreparable harm due to deprivation of First Amendment freedoms and violations of RFRA. They have shown that they must act immediately to implement a new employee health plan due to its January 1, 2013 renewal date in compliance with the law. Injunctive relief will permit plaintiffs to implement a plan consistent with their religious beliefs without the threat of liabilities imposed due to failure to follow the arguably unconstitutional ACA mandate.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). Violations of RFRA also can constitute irreparable harm. See Kikumura v. Hurley, 242 F.3d 950, 963 (10th Cir. 2001).

Plaintiffs further argue that any arguments that injunctive relief would harm the government are frivolous. According to plaintiffs, the government has stayed imposition of the ACA mandate upon thousands of employers and millions of employees, and that the government cannot argue convincingly that injunctive relief in this case would cause it any

harm.  Whether or not plaintiffs' argument in this regard is accurate, it has not been shown to be otherwise at this time.  Further proceedings may contest this issue.

The court concludes that the balance of harms presented at this time tips clearly in favor of the plaintiffs.  The court is not strongly persuaded by the government's arguments that plaintiffs' delay in bringing these proceedings for 16 months should work against their entitlement to short term injunctive relief.  No substantial case has been shown for the government being prejudiced by this passage of time.

The court has concluded that plaintiffs are entitled to injunctive relief that maintains the status quo until the important relevant issues have been more fully heard.

**D. Bond**

Plaintiffs argue that no bond should be imposed.  "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  "The amount of the bond rests within the sound discretion of the trial court." Stockslager v. Carroll Elec. Co-op. Corp., 528 F.2d 949, 951 (8th Cir. 1976).  Since there is no substantial risk of monetary loss to the government by the grant of temporary injunctive relief maintaining the status quo in this case, the court does not order plaintiffs to submit security for the relief.  American Pulverizer Co. v. United States Department of Health and Human Services, Inc., No. 12-3459 CV-S-RED at 9.

**V.  CONCLUSION**

For the reasons stated above,

IT IS HEREBY ORDERED that the motion of plaintiffs Sharpe Holdings, Inc., Charles N. Sharpe, Judi Diane Schaefer, and Rita Joanne Wilson for a temporary restraining order is sustained.

IT IS FURTHER ORDERED that defendants are TEMPORARILY RESTRAINED from enforcing the ACA Mandate regulations regarding abortifacient devices and related counseling.  See 42 U.S.C. § 300gg-13(a)(4), 26 U.S.C. § 4980D, § 4980H, and 29 U.S.C. § 1132.

**IT IS FURTHER ORDERED** that the motion of plaintiffs for a preliminary injunction is set for further hearing on January 14, 2013, at 10:00 a.m.

>                /S/   David D. Noce
> **UNITED STATES MAGISTRATE JUDGE**

**Signed on December 31, 2012.**