UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| SHARPE HOLDINGS, INC., et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 2:12 CV 92 DDN |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| HEALTH AND HUMAN SERVICES, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This action is before the court on the motion of plaintiffs Sharpe Holdings, Inc., Ozark National Life Insurance Company, N.I.S. Financial Services, Inc., CNS Corporation, Charles N. Sharpe, Judi Diane Schaefer, and Rita Joanne Wilson for attorneys' fees and expenses under 42 U.S.C § 1988. (Doc. 110.)

## I. BACKGROUND

Plaintiffs Sharpe Holdings, Inc., Charles N. Sharpe, Judi Schaefer, and Rita Joanne Wilson commenced this action on December 20, 2012, against the Department of Health and Human Services (HHS), HHS Secretary Kathleen Sebelius, the Department of the Treasury, Secretary of the Treasury Timothy Geithner, the Department of Labor, and Secretary of Labor Hilda Solis. Plaintiffs claimed the Affordable Care Act's[1] contraception mandate violates the Religious Freedom Restoration Act (RFRA); the Free Exercise and Establishment Clauses of the First Amendment to the United States Constitution; plaintiffs' freedom of speech and association guaranteed by the First Amendment; and the Administrative Procedures Act, 5 U.S.C. § 706(2). Plaintiffs sought a declaration from the court that the ACA's contraception mandate and its enforcement violate the First Amendment, the Fifth Amendment, RFRA, and the APA. Plaintiffs

---

[1] The Patient Protection and Affordable Care Act, Pub. L. 111-148 (Mar. 23, 2010), and the Health Care and Education Reconciliation Act, Pub. L. 111-152 (Mar. 30, 2010) are collectively known as the "Affordable Care Act" (ACA).

also sought an order prohibiting the enforcement of the mandate against them. Plaintiffs also requested attorneys' and experts' fees. (Doc. 1.)

Plaintiffs moved for a temporary restraining order and a preliminary injunction on December 20, 2012. (Doc. 2.) After oral argument the court issued a temporary restraining order on December 31, 2012. (Doc. 17)

Plaintiffs amended their complaint to add plaintiffs Ozark National Life Insurance Company, CNS Corporation, and N.I.S. Financial Services, Inc., as well as, substitute defendants.[2] (Doc. 52.) A preliminary injunction was issued on June 28, 2013. (Doc. 56.) All proceedings were stayed, pending a resolution of several other cases before the United States Supreme Court. (Doc. 53.)

Plaintiffs amended their complaint again to add CNS International Ministries and Heartland Christian College, both non-profit organizations, as plaintiffs on December 4, 2013. (Doc. 61.) The temporary restraining order and the preliminary injunction were extended to include these plaintiffs on December 30, 2013. (Doc. 84.)

Defendants filed an interlocutory appeal of the temporary restraining order and preliminary injunction to the Eighth Circuit Court of Appeals regarding only plaintiffs CNS International Ministries and Heartland Christian College. (Doc. 85.)

Plaintiffs Sharpe Holdings, Ozark National Life Insurance, N.I.S. Financial Services, CNS Corporation, and Charles N. Sharpe[3] filed a motion for summary judgment and a motion for a permanent injunction on October 1, 2014. (Docs. 95, 96.) The court granted the summary judgment motion and issued a permanent injunction on February 13, 2015. (Doc. 102.)

Plaintiffs' counsel requests attorneys' fees in the amount of $211,735.00 and expenses in the amount of $350.00 under 42 U.S.C. § 1988(b). Defendants object to the amount of plaintiffs' attorney fee request, arguing that the amount of hours claimed worked is excessive when

---

[2] During the course of this lawsuit the Secretaries of Health and Human Services, the Department of the Treasury, and the Department of Labor changed several times.

[3] Defendants appealed the decision to extend the temporary restraining order and preliminary injunction to plaintiffs CNS International Ministries and Heartland Christian College. (Doc. 85.) This appeal is still pending before the Eighth Circuit Court of Appeals. <u>Sharpe Holdings, et al. v. HHS, et al.</u>, 14-1507 (8th Cir. Mar. 5, 2014) (oral argument held on December 10, 2014 before a three judge panel in St. Louis, Missouri).

compared to similarly situated cases. (Doc. 116.) Defendants argue that the work of Professor Carl Esbeck is duplicitous in its entirety, and therefore, should not be reimbursed at all. (Id.) Finally, defendants argue plaintiffs' fees-on-fees amount is excessive. (Id.)

## II. PLAINTIFFS' ATTORNEYS' FEES AND EXPENSES

### Lodestar Amount

Plaintiffs request attorneys' fees in the amount of $211,735.00 and expenses in the amount of $350.00. Regarding violations of the Religious Freedom Restoration Act, 42 U.SC. § 2000bb et seq., "[t]he court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b).

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The calculation of these factors results in the "lodestar" amount. See e.g., Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551 (2010). "[The court does] not automatically accept the lawyer's rate as reasonable; we look also to the ordinary fee for similar work in the community." Shakopee Mdewakanton Sioux Cmty. v. City of Prior Lake, Minn., 771 F.2d 1153, 1160 (8th Cir. 1985); see also Miller v. Dugan, 764 F.3d 826, 831 (8th Cir. 2014). The court should also consider:

> (1) the time and labor required, (2) the novelty and difficulty of the question, (3) the skill requisite to perform the legal services properly, (4) the preclusion of other employment due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client and (12) awards in similar cases.

Zoll v. E. Allamakee Cmty. Sch. Dist., 588 F.2d 246, 252 n.11 (8th Cir. 1978). "The most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole." Jenkins by Jenkins v. State of Mo., 127 F.3d 709, 716 (8th Cir. 1997). "If the plaintiff's success is limited, he is entitled only to an amount of fees that is reasonable in relation to the results obtained." Id.

Plaintiffs seek an hourly rate of $450.00 for their lead attorney Timothy Belz, Esq. He is a partner at Ottsen, Leggat & Belz, L.C., a law firm specializing in constitutional law and civil rights. (Docs. 111-5, 111-8.) Mr. Belz has specialized in constitutional and civil rights law since 1983 after leaving the United States Department of Justice. (Doc. 111-5.) Additionally, affidavits provided by local attorneys indicate the requested rate is at or below market norms for St. Louis, Missouri for a similar civil rights lawyer. (Docs. 111-8, 111-9.) Defendants do not argue that a rate of $450.00 per hour for attorney Timothy Belz is unreasonable. (Doc. 116 at 13.) Based on plaintiffs' counsel's experience, expertise, and performance in this case and considering the relevant legal market in the St. Louis metropolitan area, the court finds that an hourly rate of $450 is reasonable for Timothy Belz, Esq.

Plaintiffs seek an hourly rate of $250.00 per hour for attorney J. Matthew Belz, Esq. He is an associate in the law firm of Ottsen Leggat & Belz, L.C. (Doc. 111 at 2.) Although he has less experience than Timothy Belz, he has been co-counsel on a significant number of cases, including those involving civil rights. (Doc. 111-8.) His lack of experience, when compared with the other attorneys involved in the case, is reflected in the diminished hourly rate requested. Local attorneys who have worked with attorney Matthew Belz affirmed that he is a capable lawyer and the rate requested for his services is at or below the market average for a civil rights attorney of his caliber. (Docs. 111-8, 111-9.) Defendants do not argue that a rate of $250.00 per hour for him is unreasonable. (Doc. 116 at 13.) Based on plaintiffs' counsel's experience, expertise, and performance in this case and considering the relevant legal market in the St. Louis metropolitan area, the court finds that an hourly rate of $250 is reasonable for J. Matthew Belz, Esq.

Plaintiffs seek an hourly rate of $450.00 per hour for law professor Carl Esbeck, Esq., an attorney licensed to practice law in Missouri. Mr. Esbeck is a professor at the University of Missouri Law School teaching federal civil rights litigation and constitutional law, specifically religious liberty and church-state relations. (Doc. 111-6.) He has been involved in federal civil rights and constitutional law litigation since 1975. (Id.)

Defendants argue that the court should deny the entire request for attorney's fees for professor Esbeck, contending that the tasks performed by him were duplicative of those performed by attorney Timothy Belz, who had the same experience as professor Esbeck. (Doc.

116 at 13.)  "[A]ny fees must be 'reasonably expended,' so that services that were redundant, inefficient, or simply unnecessary are not compensable." Jenkins, 127 F.3d at 716. Duplication of work, however, does not occur when attorneys work together to complete task and each substantially contributes to the work product. West v. Matthews Intern. Corp, 2011 WL 3904100, No. 4:09 CV 1867 DDN, at *4 (E.D. Mo. Sept. 6, 2011). The records submitted indicate that attorneys Timothy Belz and Professor Esbeck worked in tandem on the case for the trial. (Docs. 112-8, 112-9.) Professor Esbeck focused his research on the issues regarding standing, freedom of assembly compared to association, individual claims under the ACA, as well as keeping up-to-date on related cases across the country. (Doc. 111-1 at 1–2.) Attorney Timothy Belz focused on the religious rights of for-profit entities and commercial enterprises. (Doc. 111-1 at 2–4.) The records do not indicate that their work was unnecessarily duplicative.

The work of Professor Esbeck added substantial value to the work performed by Timothy Belz. West, 2011 WL 3904100, at *4. Professor Esbeck researched potential and subsequently filed claims that were different from those of the other attorneys. This case was described by the government as involving an unprecedented expansion of constitutional and statutory free exercise rights. (Doc. 14 at 2.) Using multiple, highly experienced counsel, even law professors, is not unusual in high-profile novel civil rights cases. Republican Party of Minn. v. White, 456 F.3d 912, 918, 921 (8th Cir. 2006) (two firms and one professor in a First Amendment case); Ky. Rest. Concepts Inc. v. City of Louisville, 117 F. App'x 415, 419 (6th Cir. 2004) (two, but not four, law firms on a First Amendment case acceptable); Dorr v. Weber, 714 F. Supp. 2d 1022, 1035 (N.D. Iowa 2010) (multiple attorneys are allowed, but parties must attempt to minimize expenses) (citing 42 U.S.C. § 1988). After carefully considering the record, the court finds Professor Esbeck substantially contributed to the lawsuit and $450.00 per hour is a reasonable rate for his services as an experienced, specialized attorney and professor.

Plaintiffs have not requested reimbursement for paralegal or other staff work.

Reasonableness of Hours Expended

The court must also assess whether the amounts of hours expended by counsel were reasonable in the calculus of the lodestar amount. A district court should exclude hours which are "excessive, redundant, or otherwise unnecessary." Hensley v. Eckerhart, 461 U.S. 424, 434

(1983); Miller v. Dugan, 764 F.3d 826, 832 (8th Cir. 2014). Defendants argue that all the claimed hour amounts were excessive. Specifically, defendants argue that plaintiffs' complaint, temporary restraining order, and preliminary injunction rely heavily on other cases and, therefore, the amounts of hours plaintiffs' counsel claim they worked on them are excessive. Also, defendants compared the amounts of hours worked by plaintiffs to those worked by other similar ACA plaintiffs and found these hours far exceed the others. Additionally, defendants argue several of the plaintiffs' filings were unnecessary and not compensable: motion for summary judgment (Doc. 95), supplemental brief (Doc. 28), motion to lift stay (Doc. 90), motion for ruling (Doc. 55), and reply to the ACLU's amicus brief (Doc. 29). In their reply plaintiffs' counsel reduced their request by 2.6 hours for attorneys Timothy Belz and Matthew Belz by 2.5 hours due to poor documentation. (Doc. 117 at 5.)

A. Excessive hours

The court finds that the hours are excessive when the filings in this case are compared to filings in other cases around the country. The Supreme Court has stated that the process of awarding attorneys' fees gives "rough justice" not "auditing perfection." Fox v. Vice, 131 S. Ct. 2205, 2216 (2011). The district court "may take into their account their overall sense of the suit, and may use estimates in calculating and allocating an attorney's time." Id. The plaintiffs relied heavily on documents filed in three other cases: Hobby Lobby Stores, Inc. v. Burwell, No. 5:12-cv-1000 (W.D. Okla.) (filed Sept 12, 2012), O'Brien v. HHS, No. 4:12-cv-476 (E.D. Mo.) (filed Mar 15, 2012); and, Newland v. Burwell, No. 1:12-cv-1123 (D. Colo.) (filed Apr. 30, 2012).

Beginning with the complaint, filed December 20, 2012, side-by-side comparison of it with the complaint in Hobby Lobby, filed September 12, 2012, shows that 88 of the 147 paragraphs in plaintiffs' complaint are identical to the Hobby Lobby complaint. (Compare Hobby Lobby Stores, Inc., No. 5:12-cv-1000 (filed Sept 12, 2012) with Sharpe Holdings, No. 2:12-cv-92 (filed Dec. 20, 2012)). The causes of action and the prayer for relief sections only have approximately nine or ten paragraphs out of fifty-seven which are entirely original. (Compare Hobby Lobby Stores, Inc., No. 5:12-cv-1000 at 29–35, 38–40 with Sharpe Holdings, No 2:12-cv-92 at 20–26.) The court does not at all criticize plaintiffs' counsel for using what they admit is a "superb complaint". (Doc. 117 at 4.) However, after the complaint was filed in Hobby Lobby on September 12, 2012, plaintiffs billed an additional 158 hours which have been

classified as "work, research and revision of the HHS suit." The plaintiffs' memorandum in support of the motion for temporary restraining order and preliminary injunction (Doc. 4) relied on the one filed nearly four months earlier in O'Brien v. HHS, et al., 4:12-cv-476 CEJ, (E.D. Mo.) (filed Aug. 23, 2012). Plaintiffs' section analyzing why they will succeed on the merits of their case and, therefore, are entitled to a TRO and preliminary injunction is over 50% identical to that of O'Brien's TRO and preliminary injunction motion. Compare O'Brien, No 4:12-cv-476 (filed Aug. 23, 2012) with Sharpe Holdings, Inc., No 2:12-cv-92 (filed Dec. 20, 2012). This is the bulk of plaintiffs' motion, encompassing pages 10–28 of the 29 page motion.

Therefore, given the extent to which plaintiffs relied on the documents in Hobby Lobby and O'Brien for their own documents, the court reduces by 50% those hours billed after September 12, 2012 and through December 20, 2012, and classified by plaintiffs as work, research or revision of the HHS complaint. This results in a reduction of attorney Timothy Belz's hours by 28.95 hours; attorney Matthew Belz's hours are reduced by 41.45 hours; and Professor Esbeck's hours are reduced by 2.4 hours.

The reply to defendants' memorandum in opposition, filed December 30, 2015 (Doc. 15), is the same type of reply as the one filed in Newland v. HHS, Civ. Action No. 1:12-cv-1123 (filed July 17, 2012). Comparing the two, the analysis sections used by plaintiffs' counsel are identical to those in Newland, and the portions which differ do so because they are fact-specific to the plaintiffs. In the 15 page motion approximately 7 pages are identical or substantially similar to the reply in Newland. Compare Newland, Civ. Action No. 1:12-cv-1123 (filed July 17, 2012) with Sharpe, No. 2:12-cv-92 (filed Dec. 30, 2012).

Therefore, the hours expended between the filing of defendants' motion in opposition on December 28, 2012 (Doc. 14) and plaintiffs' reply to the motion in opposition on December 30, 2012 (Doc. 15) will be reduced by 50%. The court only reduces those hours associated with the reply brief, and not those preparing for oral argument. This results in a reduction of attorney Timothy Belz's hours by 14.5; attorney Matthew Belz's hours by 11.5; and Professor Esbeck's hours by 1.1.

Defendants challenge the hours billed for plaintiffs' motion to clarify (Doc. 36) on the basis that it was not successful. A lawsuit cannot be seen as a grouping of small unrelated motions. "A court should compensate the plaintiff for the time his attorney reasonably spent in

achieving the favorable outcome, even if 'the plaintiff failed to prevail on every contention.'" Fox v. Vice, 131 S. Ct. 2205, 2214 (2011) (quoting Hensley v. Eckerhart, 461 U.S. 424, 435 (1983)); see also, Emery v. Hunt, 272 F.3d 1042, 1047–48 (8th Cir. 2001). The court looks to whether the work is "expended in pursuit of the ultimate result achieved." Fox, 131 S. Ct. at 2214 (quoting Hensley, 461 U.S. at 435). In this motion (Doc. 36) plaintiffs answered a question from the court and disputed a word used by defendants. However, the amount of hours billed for what is a very straight forward, four-sentence motion is excessive: 2.5 for attorney Matthew Belz and 2.6 for attorney Timothy Belz.[4] Therefore, the court reduces these hours by two-thirds, resulting in a reduction of 1.66 and 1.77 hours, respectively.

On June 13, 2014, plaintiffs filed a request to amend their complaint to include three not-for-profit organizations. (Docs. 49, 51, 52.) Defendants do not argue that these filings were unnecessary, but rather the charges were excessive given the brevity of the motion to amend, and the similarity between the documents and the previously filed ones. The court agrees in part that these hours are excessive and reduces those related to drafting and reviewing the motion for leave to file the amended complaint (Doc. 49), the first amended complaint (Doc. 52), and the motion for a preliminary injunction (Doc. 51) by two-thirds (billing entries from 5/28/13–6/13/13). Attorney T. Belz's hours are reduced by 5.13 and attorney M. Belz by 8.39 hours.

B. Unnecessary Filings

Following oral argument and the issuance of a temporary restraining order, plaintiffs filed a supplemental brief regarding exemptions to the contraceptive mandate. (Doc. 28.) Plaintiffs argue that the court requested this supplemental brief when it granted the TRO and preliminary injunction and said, regarding the various ACA exemptions, "[w]hile these factual assertions by the plaintiffs are not gainsaid by defendant, their impact on plaintiffs' ultimate entitlement to relief requires further hearing and consideration." (Doc. 20 at 6–7.) There is, however, no docket entry from the court requesting a supplemental brief, thereby allowing defendants to also reply to a supplemental brief. The local rules state "[a]dditional memoranda may be filed by

---

[4] This billing entry for attorney Timothy Belz states, "review email from D. Melton; review motion of US government; response to government's motion for extension of time." It is the responsibility of the party claiming fees to annotate his billing entries with such clarity that the court can accurately deduce what each entry pertains to. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983); Miller v. Dugan, 764 F.3d 826, 831 (8th Cir. 2014).

either party only with leave of the Court." E.D. Mo. Local Rule 7 – 4.01 (C). No docket entry indicates the court granted plaintiffs leave to file a supplemental motion after the temporary restraining order was issued. See Docs. 21–28. This filing was unnecessary. Therefore, the hours billed regarding this motion will not be allowed. This reduces attorney Timothy Belz's hours by 4.5 and Matthew Belz's hours by 10.3.

    C. Reasonable Efforts

Defendants have challenged the hours associated with plaintiffs' response to the ACLU amicus brief (Doc. 29), motion to clarify the scope of their consent (Doc. 36), opposition to the stay (Doc. 44), and filing an amended complaint (Docs. 49, 51, 52), as unreasonable or not compensable actions. (Doc. 116 at 8–12.) No party can be expected to win every motion. They should not be penalized for working on and submitting motions unless the motions are frivolous or unreasonable. See Emery v. Hunt, 272 F.3d 1042, 1047–48 (8th Cir. 2001) (consider overall success, necessity and usefulness, and efficiency with which the attorneys worked). These actions were reasonable and furthered the plaintiffs' ultimate goal—a permanent injunction against the ACA's contraceptive mandate, which they achieved in full.

Defendants assert that plaintiffs should not receive any compensation for their reply to the ACLU's amicus curiae brief (Doc. 29). (Doc. 116 at 11–12.) As highlighted by both briefs, there is a dearth of case law regarding attorney fees when responding to an amicus, particularly when the amicus' participation was not solicited. In dicta, the Eleventh Circuit stated, "[a] reasonable amount of time spent reading and responding to opposing amicus briefs is, of course, compensable." Glassroth v. Moore, 347 F.3d 916, 919 (11th Cir. 2003); see also, Litton Sys., Inc. v. AT&T, 613 F. Supp. 824, 832 (S.D.N.Y. 1985) (awarding fees to plaintiff for researching, but never filing a response to an amicus brief filed by the United States Solicitor General). Normally, when a plaintiff is successful, it should be compensated for all hours reasonably expended that furthered its litigation and are not frivolous. Hensley, 461 U.S. at 435. The ACLU's amicus brief raised new issues and case law that plaintiffs had to address or they would not have been representing their clients to the best of their ability. The hours spent by plaintiffs' counsel responding to the ACLU's amicus brief were reasonable, and, therefore, compensable. Plaintiffs filed a motion for ruling on motion for preliminary injunction (Doc. 55) on June 26, 2013. In that motion, plaintiffs' counsel argued that on July 1, 2013, plaintiffs would begin to

accrue penalties and fines without a preliminary injunction. Thus, in the eyes of plaintiffs' counsel, the motion and ruling were reasonably necessary to prevent possible irreparable harm to their clients. The court issued the injunction before July 1, 2013. These hours will be allowed.

Plaintiffs' motion to lift the stay and their motion for summary judgment (Docs. 89–90, 95–97) were necessary to further plaintiffs' case after the Supreme Court issued the ruling in Burwell v. Hobby Lobby Stores, Inc., 134 S. Ct. 2751 (2014), on June 30, 2014. Plaintiffs filed a motion to lift the stay which was granted on August 18, 2014. (Docs. 89–91.) After the parties conferred, at the direction of the court, an order was issued sustaining the joint status report and giving the defendants ten days to determine how they wished to proceed. (Doc. 94.) The plaintiffs immediately filed their motion for summary judgment and related documents on October 1, 2014 (Docs. 95–97), which they had been researching and writing since September 15, 2014. (Doc. 111-1 at 8.) Plaintiffs indicate that they felt they had to move for summary judgment because the government was not willing to agree to the scope of the permanent injunction. (Doc. 117 at 2.) After defendants submitted their version of a permanent injunction (Doc. 98), the court granted the plaintiffs' motion for summary judgment in full. (Doc. 102.) This demonstrates that the motions to lift the stay and for summary judgment were not unnecessary. Therefore, plaintiffs' counsel should be fully compensated for them.

Fees-on-Fees Request

Plaintiffs originally claimed $26,590 for 73 hours of work (as of April 14, 2015) regarding their fees' motion. (Doc. 111 at 17) Plaintiffs claim $18,765 for attorney Timothy Belz and $7,825 for attorney Matthew Belz. (Id.) Defendants object to the amount, arguing that the plaintiffs' requested amount is excessive, and contains work that was unnecessary, namely researching hourly rates that were not the prevailing ones in St. Louis. (Doc. 116 at 14–15.) Plaintiffs responded by agreeing to reduce their requested amount by $11,308, the time used to research prevailing rates outside St. Louis. (Doc. 117 at 5.) Plaintiffs, however, contend that the remaining hours claimed were necessary to compile their records and write their motion and memorandum. (Id.)

"Time spent preparing fee applications is generally compensable." El-Tabech v. Clarke, 616 F.3d 834, 834–44 (8th Cir. 2010). They should neither be excessive, id., nor "result in a

second major litigation." Hensley, 461 U.S. at 436. The court accepts the reduction of the plaintiffs for researching the prevailing rates in Washington, D.C. according to the Laffey rates: 19 hours for attorney Timothy Belz and 11 hours for attorney Matthew Belz. This work was unnecessary, as the proper rates to examine are those in the local area. See Shakopee Mdewakanton Sioux Cmty. v. City of Prior Lake, Minn., 771 F.2d 1153, 1160 (8th Cir. 1985); Monsanto Co., et al. v. Hill, et al., 2005 WL 4813446, No. 4:03-CV-181 CEJ, at *1 (E.D. Mo. 2005). These reductions result in a total of compensable fees-on-fees hours of 22.7 for attorney Timothy Belz and 20.3 hours for Matthew Belz.

### III. CONCLUSION

Applying these considerations, the court finds and concludes that the following hourly rates and hours of effort are reasonable compensation for plaintiffs' legal representation:

| | | | |
|---|---|---|---|
| a. | for attorney Timothy Belz: | 178.75 at $450.00 per hour = | $80,437.50 |
| b. | for attorney Matthew Belz: | 189.26 at $250.00 per hour = | $47,315.00 |
| c. | for professor Carl Esbeck: | 23.40 at $450.00 per hour = | $10,530.00 |

TOTAL:            $138,282.50

Plaintiffs also request documented expenses in the amount of $350.00. This is a reasonable amount in this case.

Therefore,

**IT IS HEREBY ORDERED** that the motion of plaintiffs for attorneys' fees and expenses (Doc. 110) is sustained in part and denied in part. Defendants shall pay plaintiffs $138,282.50 as reasonable attorneys' fees and $350.00 in expenses.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on June 17, 2015.