# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

_____

SHARPE HOLDINGS, INC., *et al.*,

      Plaintiffs-Appellees,

    v.

UNITED STATES DEPARTMENT
OF HEALTH AND HUMAN
SERVICES, *et al.*,

      Defendants-Appellants.

No. 14-1507

_____

## MOTION OF APPELLEES FOR ATTORNEY FEES AND EXPENSES

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... iii

INTRODUCTION ........................................................................ 1

DISCUSSION ........................................................................... 2

   I. Lodestar Methodology and Factors ......................................... 2

      A.  Hours Reasonably Expended ........................................... 3

         1.  District Court Proceedings ......................................... 5

         2.  Before the Eighth Circuit ......................................... 6

         3.  Before the Supreme Court ........................................ 8

         4.  Before the Eighth Circuit on Remand ........................... 10

      B.  Reasonable Rates ................................................... 12

         1.  The Requested Rates For Movants' Attorneys Were
            Approved as Reasonable in this Case Two Years Ago ............... 13

         2.  Missouri Lawyers Weekly "Billing Rates" ................... 14

         3.  Missouri Cases .................................................... 14

         4.  The Laffey Matrixes and Locality Pay Rates ................. 17

            a.  The United States Attorney's Office's Laffey Matrix ............. 18

            b.  The LSI-Adjusted Laffey Matrix ............................. 20

         5.  Attorney Qualifications ........................................ 20

         6.  Supporting Declarations  ........................................ 21

   II.  Lodestar Calculation ................................................ 22

i

III. Expenses ............................................................................................... 22

CONCLUSION ............................................................................................... 23

ii

# TABLE OF AUTHORITIES

**Cases**

*Albright v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*,
   4:11CV01691 AGF, 2013 WL 4855304 (E.D. Mo. Sept. 11, 2013) ............  16

*Betton v. St. Louis County*, 4:05CV01455 JCH, 2010 WL 2025333
   (E.D. Mo. May 19, 2010) ................................................................  17

*Betton v. St. Louis County, Mo.*, 405 Fed. Appx. 101 (8th Cir. 2010) ..............  17

*Bishop v. Comm. on Prof'l Ethics & Conduct of Iowa State Bar Ass'n*,
   686 F.2d 1278 (8th Cir. 1982) ........................................................  6

*Blanchard v. Bergeron*, 489 U.S. 87 (1989) .........................................  1

*Boehner v. McDermott*, 541 F. Supp. 2d 310 (D.D.C. 2008) ..........................  10

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dept. of Health &
   Human Res.*, 532 U.S. 598 (2001) ..................................................  6

*Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014) ..........................  7

*Buzzanga v. Life Ins. Co. of N. Am.*, 4:09-CV-1353 CEJ, 2013 WL 784632
   (E.D. Mo. Mar. 1, 2013) ..............................................................  14

*Casey v. City of Cabool*, 12 F.3d 799 (8th Cir. 1993) ...............................  3, 4, 12

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978) ............................  3

*Dunkin Donuts Franchising LLC v. Sai Food Hospitality, LLC*,
   4:11CV01484 AGF, 2014 WL 2009106 (E.D. Mo. May 16, 2014) ............  18

*Easley v. Empire Inc.*, 757 F.2d 923 (8th Cir. 1985) .........................................  6

*Eckermann v. Colvin*, 4:13-CV-04002-SLD, 2014 WL 4899624
   (C.D. Ill. Sept. 29, 2014) ............................................................  20

*Executive Affiliates, Inc. v. AAF-McQuay, Inc.*, 4:12-CV-175 CEJ,
2013 WL 6571595 (E.D. Mo. Dec. 13, 2013) ............................................. 16

*Fox v. Vice*, 563 U.S. 826 (2011) ...................................................... 3

*Gregory v. United States*, 110 Fed. Cl. 400 (2013) ................................. 16

*Hanig v. Lee*, 415 F.3d 822 (8th Cir. 2005) ....................................... 2

*Hasbrouck v. Texaco, Inc.*, 879 F.2d 632 (9th Cir.1989) .......................... 10

*Hendrickson v. Branstad*, 934 F.2d 158 (8th Cir. 1991) .......................... 13

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ..................................... 2, 4

*Holmes v. Slay*, 4:12-CV-2333 HEA, 2017 WL 994473
(E.D. Mo. Mar. 15, 2017) ............................................................ 14

*Howe v. City of Akron*, 17 F. Supp. 3d 690
(N.D. Ohio Apr. 8, 2014) ............................................................ 20

*Hunter Eng'g Co. v. Hennessy Indus., Inc.*, 4:08 CV 465 DDN,
2010 WL 2628336 (E.D. Mo. June 25, 2010) ........................................ 17

*IMS Health Corp. v. Schneider*, 901 F. Supp. 2d 172 (D. Me. 2012) ............. 19

*Jorstad v. IDS Realty Trust*, 643 F.2d 1305 (8th Cir. 1981) ..................... 11

*LC Corp., LLC v. Valley Beef, LLC*, 17-1146, 2017 WL 3200323
(8th Cir. Mar. 9, 2017) ............................................................. 15

*LC Franchisor, LLC v. Valley Beef, LLC*, 4:15-CV-00383-JCH,
2016 WL 7405841 (E.D. Mo. Dec. 22, 2016) ........................................ 15

*Maher v. Barton*, 4:13-CV-2260 CEJ, 2014 WL 1316936
(E.D. Mo. Apr. 2, 2014) ............................................................. 16

*McDonald v. Armontrout*, 860 F.2d 1456 (8th Cir. 1988) ......................... 12

*Moore v. City of Des Moines*, 766 F.2d 343 (8th Cir. 1988) ....................... 12

iv

*Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319
    (D.C. Cir. 1982) ...................................................................... 10

*Neufeld v. Searle Laboratories*, 884 F.2d 335 (8th Cir. 1989) ........................ 22

*Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400 (1968) ..................... 3

*Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219
    (4th Cir. 2009) ...................................................................... 20

*Pennsylvania v. Delaware Valley Citizens Council for Clean Air*,
    478 U.S. 546 (1986) ................................................................ 2

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010) ................................. 1, 3

*Pinkham v. Camex, Inc.*, 84 F.3d 292 (8th Cir. 1996) ................................... 22

*Planned Parenthood Great Plains v. Williams*, 863 F.3d 1008
    (8th Cir. 2017) ...................................................................... 6

*Planned Parenthood of Kansas & Mid-Missouri, Inc. v. Lyskowski*,
    2:15-CV-04273-NKL, 2016 WL 4083484 (W.D. Mo. Aug. 1, 2016) .......... 15

*Riverside v. Rivera*, 477 U.S. 561 (1986) ........................................... 3

*S.M. v. Lincoln County*, 4:12CV02276 PLC, 2016 WL 6441587
    (E.D. Mo. Nov. 1, 2016) ........................................................... 15

*Sellers v. Peters*, 624 F. Supp. 2d 1064 (E.D. Mo. 2008) ............................ 11

*Sharpe Holdings, Inc. v. U.S. Dep't of Health & Human Services*,
    2:12 CV 92 DDN, 2015 WL 3773426 (E.D. Mo. June 17, 2015) ........... 12, 13

*Snider v. City of Cape Giradeau*, 752 F.3d 1149 (8th Cir. 2014) ..................... 13

*SSM Managed Care Org., L.L.C. v. Comprehensive Behavioral Care, Inc.*,
    4:12-CV-2386 CAS, 2014 WL 1389581 (E.D. Mo. Apr. 9, 2014) .............. 15

v

*Thornton v. Mainline Communications, LLC*, 4:12-CV-00479 SNLJ,
    2016 WL 687844 (E.D. Mo. Feb. 19, 2016) ................................................. 15

*Tussey v. ABB, Inc.*, 06-04305-CV-C-NKL, 2012 WL 5386033
    (W.D. Mo. Nov. 2, 2012) ............................................................................ 17

*U.S. ex rel. Peterson v. Sanborn Map Co., Inc.*, 4:11CV000902 AGF,
    2014 WL 2815592 (E.D. Mo. June 23, 2014) ............................................. 18

*Wheaton Coll. v. Burwell*, 134 S. Ct. 2806 (2014) ............................................. 7

*White v. McKinley*, 05-0203-CV-W-NKL, 2009 WL 813372
    (W.D. Mo. Mar. 26, 2009) ........................................................ 13, 17, 18, 19

*Zubik v. Burwell*, 136 S. Ct. 1557 (2016) ......................................................... 11


**Statutes**

42 U.S.C. 1988 ....................................................................................... 1, 6, 17


**Other Authorities**

"Billing Rates 2017," Missouri Lawyers Weekly ............................................. 14

Executive Order 13715, "Adjustments of Certain Rates of Pay" ...................... 19

LSI-Adjusted Laffey Matrix ............................................................................. 20

S. Rep. No. 94-1011 (1976) ............................................................................... 1

USAO Laffey Matrix ............................................................................. 18, 19, 20

## INTRODUCTION

Plaintiffs-Appellees CNS International Ministries (CNS) and Heartland

Christian College (HCC) (collectively, Movants) are the prevailing parties in this

appeal and move for an award of attorney fees and expenses pursuant to 42 U.S.C.

1988.

Congress enacted 42 U.S.C. 1988 in order to ensure that federal rights are

adequately enforced. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010).

Section 1988 provides for recovery of attorney fees in actions to enforce the

Religious Freedom Restoration Act (RFRA). 42 U.S.C. 1988(b). Counsel for a

prevailing party under § 1988 "should be paid, as is traditional with attorneys

compensated by a fee paying client, 'for all time reasonably expended on a

matter.'" *Blanchard v. Bergeron*, 489 U.S. 87, 91 (1989) (citing S. Rep. No. 94-

1011, p. 6 (1976) (legislative history of § 1988)).

This was not an ordinary case. First, this Court's September 17, 2015

opinion created a circuit split; the seven other courts of appeals to address the issue

ruled against the religious claimants. This split gave all the nonprofit challengers to

the contraceptive mandate the foothold they needed with the Supreme Court,

which granted certiorari in their cases several weeks after this Court's decision.

Second, as the parties were preparing for the December 2014 oral argument in this

case, they had to change course and file additional "supplemental" briefs because

1

of regulatory changes to the "accommodation" that had resulted in an "augmented accommodation" in the summer of 2014. Third, in addition to the changing regulatory landscape, relevant court decisions were rapidly handed down causing the parties to provide many 28(j) letters and responses while the Court was deliberating. Finally, Movants filed two briefs with the Supreme Court: (1) a response to the government's petition for writ of certiorari in this case; and (2) an amicus brief in a related case, *Zubik v. Burwell,* Nos. 14-1418, 14-1453, 14-1505, 15-35, 15-105, 15-119 and 15-191 (Sup. Ct.).

Given the unique success achieved, and for the reasons more fully explained below, Movants' attorneys are now entitled under applicable law to recover their expenses and the reasonable lodestar for the services they provided. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983).

## DISCUSSION

### I.  Lodestar Methodology and Factors

The starting point for determining a reasonable attorney fee is the "lodestar" calculation: that is, the number of hours reasonably expended multiplied by a reasonable hourly rate. *Hanig v. Lee,* 415 F.3d 822, 825 (8th Cir. 2005). The "resulting product is *presumed* to be the minimum reasonable fee to which counsel is entitled." *Pennsylvania v. Delaware Valley Citizens Council for Clean Air*, 478 U.S. 546, 564 (1986) (emphasis in original). Adjustments to the lodestar are

2

appropriate only for a limited number of reasons and in "exceptional cases" and the burden of proving an adjustment is to be borne by the party seeking the adjustment. *Perdue*, 559 U.S. at 552, 554. The lodestar "presumption is a 'strong' one." *Id.* at 552.

"The primary purpose of this formulation is to promote diffuse private enforcement of civil rights law by allowing the citizenry to monitor rights violations at their source, while imposing the costs of rights violations on the violators." *Casey v. City of Cabool,* 12 F.3d 799, 805 (8th Cir. 1993). As the Supreme Court has explained:

> When a plaintiff succeeds in remedying a civil rights violation, we have stated, he serves "as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority." He therefore "should ordinarily recover an attorney's fee" from the defendant—the party whose misconduct created the need for legal action. Fee-shifting in such a case at once reimburses a plaintiff for "what it cos[t][him] to vindicate [civil] rights," and holds to account "a violator of federal law."

*Fox v. Vice*, 563 U.S. 826, 833 (2011) (quoting *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 (1968), *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416, 418 (1978), and *Riverside v. Rivera*, 477 U.S. 561, 577-78 (1986)).

## A.  Hours Reasonably Expended

Congress intended that "[i]n computing the fee, counsel for prevailing parties should be paid, as is traditional for attorneys compensated by a fee-paying

client, 'for all time reasonably expended on a matter.'" *Casey*, 12 F.3d at 805. The hours devoted to the litigation include all work on all matters involving the "common core of facts" and work "based on related legal theories." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 435 (1983). As the Supreme Court recognized, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims." *Id*. at 435. The "result is what matters," even if "the plaintiff failed to prevail on every contention." *Id*. at 435.

Movants used primarily two lawyers in the prosecution of this case, Timothy Belz and Matthew Belz of Ottsen, Leggat & Belz, L.C. Tim Belz, a partner, spent 625.5 hours on the case and Matt Belz, an associate for some of the case but a partner since late 2015, spent 377.3 hours on the case. Carl H. Esbeck, a professor at the University of Missouri School of Law, spent 71.8 hours on the case. Detailed reports, first for Tim Belz and Matt Belz and then for Professor Esbeck, are attached as Exhibit 1. A spreadsheet breakdown of the hours worked by each attorney during the different stages of the litigation is attached as Exhibit 2.

Both Movants have prevailed in this case against every defendant and have, since their preliminary injunction on December 30, 2013, obtained the relief they have sought along the way.

The following four subsections are summaries of the work done by Movants' attorneys at each of the main stages in the litigation.

## 1. District Court Proceedings[1]

Movants' attorneys worked 214.8 hours at the district court prior to the government's appeal.

Movants' attorneys' initial work involved researching their claims and the quickly evolving legal landscape, amending their complaint, and joining the nonprofit parties to the case. (The case previously involved related for-profit entities challenging the contraceptive mandate.) Movants' attorneys then began working on their motion for a preliminary injunction, the 44-page memorandum in support, supporting declarations, and related research.

This prompted a 30-page brief from the government in opposition to Movants' motion for injunctive relief, as well as an amicus brief from the American Civil Liberties Union. Doc. 68; Doc. 74.

Movants then filed a 19-page reply brief on December 25, 2013. Doc. 78.

During the last days of December, 2013, Movants and the government also filed supplemental authorities, notifying the court of related decisions that were

---

[1] Movants are unsure if this Court will decide this subsection of the motion, as it applies to fees and expenses before the district court. But even if this Court does not decide fees and expenses before the district court, the information contained in this subsection provides context.

5

issuing in courts around the country. The end of the year was particularly active and important because many insurance plan years end with the calendar year.

The district court entered a preliminary injunction in favor of Movants on December 30, 2013, and Movants have had an abortifacient-free insurance plan since that date, despite contrary regulations. Doc. 84. That relief obtained by the Movants, which "the focus should be on," is "real." *Easley v. Empire Inc.*, 757 F.2d 923, 931-32 (8th Cir. 1985); *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dept. of Health & Human Res.*, 532 U.S. 598, n.13 (2001).

The preliminary injunction has never been disturbed, making Movants prevailing parties[2] under § 1988. *Planned Parenthood Great Plains v. Williams*, 863 F.3d 1008, 1011 (8th Cir. 2017) (citing *Bishop v. Comm. on Prof'l Ethics & Conduct of Iowa State Bar Ass'n*, 686 F.2d 1278, 1290 (8th Cir. 1982)).

## 2. Before the Eighth Circuit

In March of 2014, the government filed its appeal and on May 22, 2014, the government filed a 41-page Appellants' Brief. Several amicus briefs were filed shortly thereafter in support of the government's position, including those by the American Civil Liberties Union, NARAL Pro-Choice America and Planned Parenthood of the St. Louis Region and Southwest Missouri.

---

[2] Movants intend to further prevail in the district court, to which the case has been remanded, by obtaining the declaratory and permanent injunctive relief prayed for in their complaint.

6

On June 30, 2014, the relevant controlling authority was clarified dramatically when the Supreme Court handed down its opinion in *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014). Less than a month later, the Supreme Court decided that a nonprofit college did not have to follow portions of the "accommodation" that set forth the means by which it was to notify the Government of its objection to providing contraceptive coverage to employees. *Wheaton Coll. v. Burwell*, 134 S. Ct. 2806 (2014).

On July 22, 2014, Movants CNS and HCC filed a 68-page Appellees' Brief and Addendum. Movants' attorneys spent 251.8 hours on the initial briefing process before this Court.

After the parties filed their initial briefs, the contraceptive mandate began an evolution that continued until as recently as October 6, 2017. For nonprofits, there was originally a "temporary safe harbor," and then an "accommodation," and then an "augmented accommodation." Part of this evolution occurred before oral argument in the appeal in this case, and so in November 2014, the government and Movants filed "supplemental" briefs, each of which was 37 pages long, detailing and arguing the effects of the regulatory changes on the lawsuit. Movants' attorneys spent 93.9 hours on their supplemental briefing and other things during this timeframe.

7

During what was roughly a month before oral argument, Movants reviewed a multitude of related decisions, monitored oral arguments that were taking place in related cases, held a moot court, and otherwise prepared for oral argument. Oral argument occurred on December 10, 2014. Movants' attorneys spent 102.9 hours on this portion of the appeal.

In the months following oral argument, but before this Court's opinion in September 2015, CNS and HCC submitted three Rule 28(j) letters. They also responded to seven of the eight 28(j) letters filed by the government. This was an active period of appellate legislation in the contraceptive mandate cases as many of the appeals of the December, 2013 district court judgments were being decided.

On September 17, 2015, this Court affirmed the district court's decision in favor of CNS and HCC. The other seven appellate courts to rule on the matter ruled against the religious claimants. Between oral argument and when the Court's decision was handed down, Movants' attorneys spent 123.3 hours on the case.

In total, Plaintiff's attorneys worked 571.9 hours at this Court prior to beginning work at the Supreme Court.

### 3. Before the Supreme Court

This Court issued its opinion on September 17, 2015, creating a split in the circuits. The Supreme Court granted the other religious claimants' petitions for certiorari in all the other cases on November 6, 2015. In the case at bar, the

8

government waited until the 89th day (December 15, 2015) to file its petition for a writ of certiorari. This made consolidation with the existing cases unlikely and, because the cases before the Supreme Court were already being briefed, this effectively thwarted any possibility that CNS and HCC would be able to defend this Court's decision in their favor before the Supreme Court. On January 28, 2016, CNS and HCC filed a response to the government's certiorari petition. Exhibit 3. Movants' attorneys worked 43.6 hours during this timeframe.

On January 8, 2016, CNS and HCC also filed an amicus brief in the related and aforementioned Supreme Court case, *Zubik v. Burwell,* Nos. 14-1418, 14-1453, 14-1505, 15-35, 15-105, 15-119 and 15-191 (Sup. Ct.). Exhibit 4. The *Zubik* plaintiffs were similarly situated to CNS and HCC, and if the Supreme Court had issued a substantive opinion, it would have likely ended the case at bar one way or the other. The amicus brief detailed the many changes—about eight—made by the government to make the contraceptive mandate less restrictive to religious freedom, despite prior government claims in each instance that the then-current iteration of the mandate was the least restrictive. This repeated moving of the goal posts by the government goes a long way toward explaining why this case was as time-consuming as it was. Movants' attorneys spent 63.8 hours working on the amicus brief and other items during this period.

Time spent working on amicus briefs should be awarded if it is expended "in pursuit of a successful resolution in th[e] matter and a reasonably prudent attorney would have done the same . . ." *Boehner v. McDermott*, 541 F. Supp. 2d 310, 320 (D.D.C. 2008); *Hasbrouck v. Texaco, Inc.*, 879 F.2d 632 (9th Cir.1989) (holding, in antitrust context, award of attorney fees for amicus work in a related case was reasonable because a reasonable and prudent lawyer would have undertaken such work to advance or protect his client's interest); *see also Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1335 (D.C. Cir. 1982) ("Compensable time should not be limited to hours expended within the four corners of the litigation"; instead, time is compensable as long as it was "expended in pursuit of a successful resolution of the case in which fees are being claimed.").

On June 16, 2016, the Supreme Court vacated every other circuit decision in the related cases, remanding for further proceedings. At the same time, it granted certiorari in this case, vacated this Court's decision, and remanded for further proceedings.

Movants' attorneys worked a total of 107.4 hours before the Supreme Court.

### 4. Before the Eighth Circuit on Remand

The Supreme Court's decision to vacate the circuits' decisions was accompanied by a mandate that the parties find an alternative solution to the

10

problematic "augmented accommodation" that was in place. *Zubik v. Burwell*, 136 S. Ct. 1557, 1560 (2016).

For more than a year starting on July 21, 2016, the government filed status reports, eight in total. CNS and HCC responded to some of these.

During this time, and as part of what they believed to be their responsibility under *Zubik*, CNS and HCC filed with the Centers for Medicare & Medicaid Services a response to the government's Request For Information (RFI) regarding possible ways the government could respect religious objections while still furthering its stated interests.

Also, during this time, various ideas for settlement were discussed among the many attorneys for the religious claimants and the government.

On October 6, 2017, the Government issued an interim final rule that indeed, at last, respected religious objections to the contraceptive mandate. On the same day, the Government dismissed its appeal in the case at bar.

Finally, during settlement negotiations and on this motion for fees, Tim Belz has reasonably expended 51.7 hours and Matt Belz has reasonably expended 24.6 hours. Time reasonably spent on an application for fees and expenses is recoverable. *Sellers v. Peters*, 624 F. Supp. 2d 1064, 1068 (E.D. Mo. 2008) (citing *Jorstad v. IDS Realty Trust*, 643 F.2d 1305 (8th Cir. 1981)). Movants' attorneys were able to use some of the work they did on a previous fee application, relating

11

only to the for-profit portion of this case, in order to minimize time spent. *See* Doc.

118, *Sharpe Holdings, Inc. v. U.S. Dep't of Health & Human Services*, 2:12 CV 92

DDN (E.D. Mo.).

Movants' attorneys have worked a total of 180.5 hours in the nearly 18

months this case has been on remand to this Court.

***

The above descriptions do not include the many meetings, phone calls and

hours spent on research and routine motions. The attached time reports contain

more detailed explanations of the time spent on this case by Movants' attorneys.

### B.  Reasonable Rates

In setting reasonable attorney fees, the touchstone is whether the rates are in

line with those prevailing in the community for comparable services by lawyers of

reasonably comparable skill, experience, and reputation. *See Moore v. City of Des

Moines*, 766 F.2d 343, 346 (8th Cir. 1988). "Community" should be given an

expansive reading, and other parts of the state, like Kansas City, help define the

relevant market. *See McDonald v. Armontrout,* 860 F.2d 1456, 1459 (8th Cir.

1988). In a complex matter, the relevant market "may extend beyond the local

geographic community" and include the national market or a market for a

particular legal specialization. *Casey v. City of Cabool,* 12 F.3d 799, 805 (8th Cir.

1993).

12

The Eighth Circuit and courts within it have affirmed approval of higher than usual hourly rates based on the specialized skill of counsel, particularly in the area of civil rights. *White v. McKinley*, 05-0203-CV-W-NKL, 2009 WL 813372, at *8 (W.D. Mo. Mar. 26, 2009) (citing *Hendrickson v. Branstad,* 934 F.2d 158, 164 (8th Cir. 1991) (affirming rate based on that of comparable nationally-prominent federal civil rights counsel, rather than local counsel, because of attorney's expertise in civil rights law)); *Snider v. City of Cape Giradeau*, 752 F.3d 1149, 1160 (8th Cir. 2014) (discussing need to attract experienced counsel, including in civil rights cases).

Movants' attorneys seek the following rates:

| Attorney | Rate |
|---|---|
| Tim Belz | $450 |
| Carl Esbeck | $450 |
| Matt Belz | $250 |

### 1.  The Requested Rates For Movants' Attorneys Were Approved as Reasonable in this Case Two Years Ago.

The rates requested for Movants' attorneys in this case were approved and expressly deemed reasonable by Judge David Noce in this case in 2015, when the associated for-profit plaintiffs successfully challenged the contraceptive mandate. *Sharpe Holdings, Inc. v. U.S. Dep't of Health & Human Services*, 2:12 CV 92 DDN, 2015 WL 3773426, at *2-3 (E.D. Mo. June 17, 2015) ("the court finds that an hourly rate of $450 is reasonable for Timothy Belz, Esq."; "the court finds that

13

an hourly rate of $250 is reasonable for J. Matthew Belz, Esq."; "the court finds Professor Esbeck substantially contributed to the lawsuit and $450.00 per hour is a reasonable rate for his services as an experienced, specialized attorney and professor."). The government did not challenge these rates.

## 2.  Missouri Lawyers Weekly "Billing Rates"

District courts often cite Missouri Lawyers Weekly's annual "Billing Rates" feature as helpful in determining reasonable rates. *See e.g. Buzzanga v. Life Ins. Co. of N. Am.*, 4:09-CV-1353 CEJ, 2013 WL 784632, at *1 (E.D. Mo. Mar. 1, 2013). For St. Louis in 2017, the issue listed the average partner rate at $504 per hour and the average associate rate at $269 per hour. *See* "Billing Rates 2017," Missouri Lawyers Weekly, http://molawyersmedia.com/2017/08/07/st-louis-averages-411-kansas-city-373/ (last visited Oct. 18, 2017).

## 3.  Missouri Cases

There are several Missouri district court cases that support the rates proposed by the Movants (in addition to the aforementioned attorney fees decision by Judge Noce in the for-profit portion of this case). The cases below start with the most recent:

- In *Holmes v. Slay*, 4:12-CV-2333 HEA, 2017 WL 994473 (E.D. Mo. Mar. 15, 2017), rates of $250, $330, $350, $400 and $450 per hour were identified as reasonable in a civil rights case. *Id*. at *4.

14

- In *LC Franchisor, LLC v. Valley Beef, LLC*, 4:15-CV-00383-JCH, 2016 WL 7405841 (E.D. Mo. Dec. 22, 2016), *appeal dismissed sub nom. LC Corp., LLC v. Valley Beef, LLC*, 17-1146, 2017 WL 3200323 (8th Cir. Mar. 9, 2017), rates between $355 and $477 per hour were approved for two St. Louis attorneys. *Id*. at *2.

- In *S.M. v. Lincoln County*, 4:12CV02276 PLC, 2016 WL 6441587 (E.D. Mo. Nov. 1, 2016), rates of $350, $375 and $450 per hour were identified as reasonable in a civil rights case. *Id*. at *9.

- In *Planned Parenthood of Kansas & Mid-Missouri, Inc. v. Lyskowski*, 2:15-CV-04273-NKL, 2016 WL 4083484 (W.D. Mo. Aug. 1, 2016), the court awarded the plaintiff $156,630.68 in fees and expenses. *Id*. at *1. The opinion did not list the attorneys' rates, but the pleadings show that that they were between $315 and $500 per hour for each of the five attorneys, two of whom were associates. *Id*. at Doc. 85, p. 7; Doc. 85-1.

- In *Thornton v. Mainline Communications, LLC*, 4:12-CV-00479 SNLJ, 2016 WL 687844 (E.D. Mo. Feb. 19, 2016), the court found a law school classmate of Matthew Belz, who is claiming $250 per hour in this case, to have a reasonable hourly rate of $250. *Id.* at *2.

- In *SSM Managed Care Org., L.L.C. v. Comprehensive Behavioral Care, Inc.*, 4:12-CV-2386 CAS, 2014 WL 1389581 (E.D. Mo. Apr. 9, 2014), the

15

court found that "the billing rates for litigation partners in St. Louis firms vary from a high of $495 to $550/hour to a low of $230 to $295/hour," and that rates of $235 to $247.50 for a litigation associate were "reasonable (if not low) compared to litigation associates in the St. Louis area firms." *Id*. at *3.

- In *Maher v. Barton*, 4:13-CV-2260 CEJ, 2014 WL 1316936 (E.D. Mo. Apr. 2, 2014), the court found another law school classmate of Matthew Belz to have a reasonable hourly rate of $280. *Id*. at *2.

- In *Executive Affiliates, Inc. v. AAF-McQuay, Inc.*, 4:12-CV-175 CEJ, 2013 WL 6571595 (E.D. Mo. Dec. 13, 2013), the court found $450 to be a reasonable partner rate and $300 to be a reasonable associate rate. *Id*. at *3.

- In *Albright v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*, 4:11CV01691 AGF, 2013 WL 4855304 (E.D. Mo. Sept. 11, 2013), the court found a lead counsel rate of $500 to be reasonable. *Id*. at *8. The other attorneys' rates were apparently between $245 and $300. *Id*.

- In *Gregory v. United States*, 110 Fed. Cl. 400 (2013), the United States Court of Federal Claims analyzed Kansas City rates and found "$475 per hour for partners" and "$275 per hour for associates" to be "not only . . . reasonable, [but] average or below average for the Kansas City market." *Id*. at 406.

16

- In *Tussey v. ABB, Inc.*, 06-04305-CV-C-NKL, 2012 WL 5386033 (W.D. Mo. Nov. 2, 2012) *vacated and remanded* (on other grounds), 746 F.3d 327 (8th Cir. 2014), the court found a "blended hourly rate of $514.60" to be reasonable and applied the rate uniformly to plaintiffs' attorneys, which had various levels of experience. *Id*. at *4.

- In *Hunter Eng'g Co. v. Hennessy Indus., Inc.*, 4:08 CV 465 DDN, 2010 WL 2628336 (E.D. Mo. June 25, 2010), the Court agreed to hourly attorney rates from $300 to $440. *Id*. at *3.

- In *Betton v. St. Louis County*, 4:05CV01455 JCH, 2010 WL 2025333 (E.D. Mo. May 19, 2010) *aff'd sub nom. Betton v. St. Louis County, Mo.*, 405 Fed. Appx. 101 (8th Cir. 2010), the court found rates of $400 and $450 to be reasonable.

- In *White v. McKinley*, 05-0203-CV-W-NKL, 2009 WL 813372 (W.D. Mo. Mar. 26, 2009), rates of $250 per hour, $395 per hour and $450 per hour were identified as reasonable. *Id*. at *7.

### 4.  The Laffey Matrixes and Locality Pay Rates

The vast majority of cases involving claims under 42 U.S.C. 1988 are against state and local officials and governmental entities. One of the ways in which this case is rare is that it involves a claim for fees and expenses under § 1988 *against the federal government*. Accordingly, it may be appropriate for the

17

Court in this case to consider what are known as the Laffey Matrixes, which are commonly used to determine attorney fees in cases against the federal government. There are two Laffey Matrixes: one prepared by the U.S. Attorney's office for the District of Columbia, the other being the LSI-Adjusted[3] Laffey Matrix, which is not prepared by the government.

### a.  The United States Attorney's Office's Laffey Matrix

One oft-used version of the Laffey Matrix is "prepared by the Civil Division of the United States Attorney's Office for the District of Columbia to be used in cases in which a fee-shifting statute permits the prevailing party to recover reasonable attorneys' fees." *U.S. ex rel. Peterson v. Sanborn Map Co., Inc.*, 4:11CV000902 AGF, 2014 WL 2815592, at *2 (E.D. Mo. June 23, 2014); *Dunkin Donuts Franchising LLC v. Sai Food Hospitality, LLC*, 4:11CV01484 AGF, 2014 WL 2009106, at *5 (E.D. Mo. May 16, 2014); *White v. McKinley*, 05-0203-CV-W-NKL, 2009 WL 813372, at *7 (W.D. Mo. Mar. 26, 2009) (allowing attorney rates between $250 and $450 per hour). A current version of the USAO's Laffey Matrix is attached as Exhibit 5.[4]

The rate provided by the Justice Department for the most experienced attorneys, those who have 31 or more years of experience, is $568 per hour for the

---

[3] "LSI" stands for "Legal Services Index."

[4] This version was obtained from the Justice Department's website. *See* https://www.justice.gov/usao-dc/file/796471/download (last visited Oct. 18, 2017).

18

years 2015-16 and $581 per hour for the years 2016-17. Tim Belz and Carl Esbeck have been attorneys for roughly 40 years each. For attorneys with 8-10 years of experience—Matt Belz has nine—the Justice Department provides a rate of $386 per hour for the years 2015-16 and $395 per hour for the years 2016-17.

Those numbers are admittedly tailored for the Washington, D.C. and Baltimore market. Courts in non-Washington jurisdictions have used government-provided locality pay differential numbers to make adjustments. This appears to be the approach used in the Western District of Missouri. *White*, a 2009 case, at *7 ("Even adjusting for locality, the matrix would dictate a rate of $426 per hour for Mr. Kanovitz and Jon Loevy . . .").

The Washington, D.C. area has a locality pay rate of 24.78%. Executive Order 13715 (Schedule 9).[5] The St. Louis area has a locality pay rate of 14.49%. *Id*. Courts simply subtract the lower rate to determine the reduction, which here would lead to a 10.29% reduction from the Washington, D.C. rates. *IMS Health Corp. v. Schneider*, 901 F. Supp. 2d 172, 196 n.17 (D. Me. 2012). This results in a $509.55 rate for St. Louis attorneys such as Tim Belz and Carl Esbeck who have 31 or more years of experience using the 2015-16 USAO Laffey figure, and $521.22 using the 2016-17 figure. For Matt Belz, who has nine years of

[5] Executive Order 13715, "Adjustments of Certain Rates of Pay," available at https://www.opm.gov/policy-data-oversight/pay-leave/salaries-wages/pay-executive-order-2016-adjustments-of-certain-rates-of-pay.pdf (last visited Oct. 31, 2017).

experience, the USAO's Laffey Matrix rate, adjusted to St. Louis, is $346.28 per hour using the 2015-16 figure and $354.35 using the 2016-17 figure.

### b.  The LSI-Adjusted Laffey Matrix

There is a separate version of the Laffey Matrix, not prepared by the government, which contains higher rates (the "LSI-Adjusted Laffey Matrix"). *See* http://laffeymatrix.com/see.html (last visited October 18, 2017), cited in *Newport News Shipbuilding & Dry Dock Co. v. Holiday*, 591 F.3d 219, 229 n.11 (4th Cir. 2009); *Eckermann v. Colvin*, 4:13-CV-04002-SLD, 2014 WL 4899624, at *2 (C.D. Ill. Sept. 29, 2014); *Howe v. City of Akron*, 17 F. Supp. 3d 690, 693 n.6 (N.D. Ohio Apr. 8, 2014).

However the Laffey Matrix is applied, and whichever one is applied, it supports considerably higher rates than those requested by the Movants' attorneys even when adjusted for locality.

### 5.  Attorney Qualifications

Tim Belz graduated Order of the Coif from the University of Iowa College of Law in 1976 and has specialized in litigation since spending his first five years in the Antitrust Division of the U.S. Department of Justice. *See* Timothy Belz Declaration and *Curriculum Vitae,* Exhibit 6. His focus has been on constitutional law cases with a particular emphasis on religious liberty cases. *Id*. (see representative cases).

20

Carl Esbeck graduated from Cornell University School of Law in 1974. After clerking for a year, he was an associate and then partner at a firm where he focused on civil rights and commercial litigation cases. *See* Esbeck Declaration and *Curriculum Vitae,* Exhibit 7. He joined the faculty of the University of Missouri School of Law in 1981 and has since been published widely in the area of constitutional law and religious liberty. *Id*. Now the *R.B. Price* Professor and *Isabelle Wade & Paul C. Lyda* Professor of Law emeritus, he has taught classes on Constitutional Law, Religious Liberty, Civil Rights, and a Seminar on the Foundations of the American Constitution. *Id*.

Matt Belz, who became a partner at Ottsen, Leggat & Belz, L.C. in late 2015, was before that an associate at the firm since graduating from the University of Missouri School of Law in 2008. *See* Matthew Belz Declaration, Exhibit 8. His primary focus has been litigation and he has worked on many § 1983 cases, including authoring dozens of major briefs. He was recently lead counsel in another civil rights case, *Powell v. St. Francois County*, 4:14-cv-01230 AGF (E.D. Mo.). *Id*.

### 6.  Supporting Declarations

The reasonableness of the requested rates is further demonstrated by the declarations of attorneys Al W. Johnson and Mark (Thor) Hearne II, who attest that the rates requested are within, and indeed lower than, market norms, based on the

21

requesting attorneys' skill and experience. *See* Declaration of Al W. Johnson (Exhibit 9) and Mark Hearne (Exhibit 10).

## II.  Lodestar Calculation

A reasonable fee can be set in this case consistent with established case law and local rates and practices by multiplying the number of compensable hours by the hourly rates of Movants' attorneys as follows:

| Attorney | Rate | Hours | Total |
|---|---|---|---|
| Tim Belz | $450 | 625.5 | $281,475 |
| Carl Esbeck | $450 | 71.8 | 32,310 |
| Matt Belz | $250 | 377.3 | 94,325 |
| | | | **$408,110** |

## III.  Expenses

Movants are entitled to recover the expenses incurred in the prosecution of this case. Recoverable expenses include costs and out-of-pocket expenses of Movants' attorneys. *Neufeld v. Searle Laboratories*, 884 F.2d 335, 342 (8th Cir. 1989); *see also Pinkham v. Camex, Inc.*, 84 F.3d 292, 294-95 (8th Cir. 1996) (a reasonable attorney fee must include "reasonable out-of-pocket expenses of the kind normally charged to clients by attorneys.").

Movants seek only their printing costs for two briefs filed before the Supreme Court. The first was their amicus brief filed in *Zubik v. Burwell,* Nos. 14-1418, 14-1453, 14-1505, 15-35, 15-105, 15-119 and 15-191 (Sup. Ct.) on January 8, 2016. Exhibit 4. The printing costs from Cockle Legal Briefs were $1,011.66.

22

The second was Movants' January 28, 2016 response brief to the government's petition for writ of certiorari filed in *Dept. of Health and Human Services v. CNS Int'l Ministries,* 15-775 (Sup. Ct). Exhibit 3. The printing costs for that brief from Becker Gallagher were $742.06. The total in expenses sought by Movants is $1,753.72.

Movants' attorneys do not seek reimbursement for any mileage or the considerable amount of Pacer or Westlaw usage required by this case.

## CONCLUSION

For the foregoing reasons, Movants respectfully request that this Court award attorney fees of $408,110 and out-of-pocket expenses of $1,753.72.

Respectfully submitted this 6th day of November 2017.

OTTSEN, LEGGAT AND BELZ, L.C.

By: /s/ *Timothy Belz*
Timothy Belz #MO-31808
J. Matthew Belz #MO-61088
112 South Hanley, Second Floor
St. Louis, Missouri 63105-3418
Phone: (314) 726-2800
Facsimile: (314) 863-3821
tbelz@olblaw.com
jmbelz@olblaw.com

Attorneys for CNS International Ministries, Inc. and Heartland Christian College

23

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the textual portion of the foregoing motion (exclusive of the tables of contents and authorities, certificates of service and compliance, but including footnotes) contains 5,093 words as determined by the word counting feature of Microsoft Word 2011.

/s/ *Timothy Belz*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 6, 2017, I caused a true and correct copy of this filing to be served on counsel by means of the Court's ECF system.

/s/ *Timothy Belz*
Timothy Belz

24

# OTTSEN, LEGGAT & BELZ, L.C.
## 112 South Hanley, Suite 200
## St. Louis, MO 63105-3418
### Ph : (314) 726-2800, Fax : 314-863-3821
## Time, Expense & Notes Report

| Date | By | Description : | Hours: |
|------|----|--------------|--------|
| 07/09/12 | JB | Research re: O'Brien and Archdioceses cases; compare O'Brien petitions | 1.00 |
| 07/01/13 | TB | Review Final Rule for religious nonprofits and research regarding religious nonprofit cases | 3.80 |
| 07/05/13 | TB | Further review of Final Rule for religious nonprofits and research regarding religious nonprofit cases | 4.80 |
| 07/06/13 | TB | Research complaints that were filed on behalf of religious nonprofits; preparation of amended complaint | 3.90 |
| 07/08/13 | TB | Research regarding religious nonprofit status given passage of Final rule; work on amendment of pleadings; two telephone conferences with David Melton, General Counsel for nonprofits | 5.60 |
| 08/28/13 | JB | Research re: religious employers/churches and the contraceptive mandate; check status of Willis Bros. case in D.C. | 1.00 |
| 10/28/13 | TB | Communications with various attorneys regarding status of nonprofit religious cases across country; review same | 4.40 |
| 10/29/13 | TB | Review research and perform new research regarding "accommodation" cases extant across country | 3.80 |
| 10/30/13 | JB | Work on amended complaint; research re: temporary enforcement safe harbor and religious accommodation | 4.20 |
| 10/31/13 | JB | Work on amended complaint | 3.20 |
| 11/02/13 | TB | Research latest on "accommodation," etc., for religious nonprofits | 3.20 |
| 11/05/13 | JB | Draft motion for joinder; research re: joinder; research re: amendment to complaint | 2.80 |
| 11/06/13 | JB | Work on memo in support of motion for joinder; related research | 5.20 |
| 11/07/13 | TB | Review and revise motion, brief, and second amended complaint; research regarding arguments against the proposed "accommodation" | 5.80 |
| 11/07/13 | JB | Revise motion and memo re: joinder of CNSIMI and HCC | 0.50 |
| 11/08/13 | JB | Revise second amended complaint | 1.50 |
| 11/14/13 | JB | Revise complaint and other amendment docs | 1.50 |
| 11/14/13 | TB | Communications with David Melton; review and revise second amended complaint | 2.40 |
| 11/19/13 | TB | Review and revise second amended complaint; motion to file and bring in two more plaintiffs; memorandum in support | 2.50 |
| 11/19/13 | JB | Finalize second amended documents; file all | 1.00 |
| 11/21/13 | JB | Research; review opinion re: nonprofits from Western District of Pennsylvania | 1.50 |
| 11/22/13 | JB | Review Zubik opinion and briefing | 2.50 |
| 11/27/13 | JB | Work on preliminary injunction brief; related research | 6.20 |
| 12/02/13 | JB | Work on preliminary injunction brief | 6.50 |
| 12/03/13 | JB | Work on preliminary injunction brief | 6.60 |
| 12/04/13 | JB | Work on preliminary injunction brief; review Little Sisters of the Poor briefs and incorporate | 6.50 |
| 12/05/13 | TB | Review and revise draft of 40-page brief in support of motion for TRO and preliminary injunction; research regarding same | 5.80 |
| 12/06/13 | TB | Review and revise brief in support of TRO and preliminary injunction; research same | 3.80 |
| 12/07/13 | JB | Work on preliminary injunction memo | 3.20 |
| 12/07/13 | TB | Research; review and revise brief in support of TRO and PI | 3.60 |
| 12/08/13 | JB | Draft Sharpe declaration; draft Melton declaration; revise brief | 4.00 |
| 12/08/13 | TB | Research regarding contraceptive accommodation and the regulations that created it; amend motion for TRO and PI accordingly; review and revise brief in support | 5.00 |
| 12/09/13 | JB | Research re: small employers and ACA fines; review Annex Medical pleadings; draft motion to file overlength brief | 1.50 |
| 12/09/13 | TB | Review and revise brief in support of TRO and PI; review and revise declarations in consultation with Melton | 2.50 |
| 12/10/13 | JB | Revise brief; revise declarations | 6.50 |

**Exhibit 1**

| Date | | Description | Hours |
|---|---|---|---|
| 12/10/13 | TB | Review and revise motion for TRO and PI; supporting brief; declarations for David Melton and Charles Sharpe | 4.50 |
| 12/11/13 | JB | Review/revise all documents; file all | 3.80 |
| 12/11/13 | TB | Back and forth with declarants regarding declarations; review and revise brief for TRO and PI; prepare for final | 6.00 |
| 12/16/13 | TB | Review regulations for avenues of relief for CNSIMI and Heartland Christian College; emails with DOJ attorney back and forth; telephone conferences with Dave Melton; research regulations | 2.40 |
| 12/17/13 | JB | File notice of substitution; file joint notice of parties | 0.40 |
| 12/17/13 | TB | Several telephone conferences with Kelly in clerk's office regarding substitution of party defendants and addition of new plaintiffs; file consents to Magistrate by new plaintiffs; meet with clerk; file notice of substitution of Secretary Perez at Dept. of Labor; email with opposing counsel; prepare joint memorandum draft and send to opposing counsel | 3.70 |
| 12/18/13 | TB | Review government response brief; related research | 5.20 |
| 12/18/13 | TB | Review 35-page response brief from Defendants in opposition to our motions for TRO and preliminary injunction | 2.10 |
| 12/19/13 | JB | Begin reply brief; review new accommodation cases | 6.50 |
| 12/20/13 | JB | Work on reply brief; review new accommodation decisions | 5.50 |
| 12/21/13 | TB | Research; review and revise Reply Brief responding to Gov't brief in opposition to our motion for TRO and PI | 4.30 |
| 12/22/13 | JB | Work on reply brief | 6.30 |
| 12/22/13 | TB | Research issues for Reply Brief, including  penalties for non-compliance with contraceptive mandate | 2.10 |
| 12/23/13 | TB | Research new cases being decided on daily basis; review filings by DOJ; review and revise reply brief | 5.50 |
| 12/24/13 | JB | Meeting with J. Sauer and T. Belz | 1.00 |
| 12/24/13 | TB | Confer with Matt Belz and John Sauer regarding Notre Dame case and others; discuss strategy; research all nine nonprofit cases decided to date; review and revise reply brief | 7.50 |
| 12/25/13 | JB | Review, revise and finalize reply brief; file same | 4.00 |
| 12/25/13 | TB | Review and revise reply brief; research recent cases; review for final | 9.00 |
| 12/26/13 | TB | Review Catholic Diocese of Nashville case | 0.80 |
| 12/27/13 | TB | Review East Texas Baptist University case; pinpoint pages to bring to judge's attention; file supplemental authority notice | 1.10 |
| 12/27/13 | JB | Draft and file ETBU supplement | 0.50 |
| 03/25/14 | TB | Research and communications with attorneys in similar situations; telephone conferences with Dave Melton; review Supreme Court argument | 2.50 |
| 03/26/14 | TB | Research; review Supreme Court proceedings; communications regarding nonprofit strategies with co-counsel and other attorneys | 2.10 |
| 03/28/14 | TB | Review transcript of Supreme Court argument in preparation for briefing in CNSIMI case; discuss with similarly-situated attorneys; focus on accommodation issues | 2.70 |
| 05/20/14 | TB | Telephone conference with local ACLU attorney regarding amicus brief filing | 0.30 |
| 05/21/14 | TB | Review Dordt College and Cornerstone cases, which cited Sharpe Holdings, in favor of plaintiffs; discuss results with counsel for plaintiffs; review DOJ opening appeal brief in Heartland (Sharpe Holdings) case | 3.60 |
| 05/22/14 | TB | Review DOJ opening brief; research legal questions; communicate with DOJ and various amici regarding consents; communicate with counsel on same side of issue as we are; communicate with co-counsel; communicate with Melton | 3.40 |
| 05/23/14 | TB | Communications with government and with lawyers wishing to file amici briefs pro and con; research legal issues raised in DOJ brief | 2.60 |
| 05/27/14 | TB | Review government opening brief in 8th Circuit; research regarding same; communications with similarly situated counsel regarding arguments under RFRA; emails back and forth with group wanting to file amicus on behalf of government; emails with co-counsel Carl Esbeck, con law professor at Missouri Law School; telephone conference with Dave Melton, corporate counsel for CNS Int'l Ministries and other Sharpe Holdings plaintiffs; further research | 5.50 |
| 05/28/14 | TB | Review Government brief in accommodation case | 3.00 |
| 05/29/14 | JB | Review Government cases; review Notre Dame decisions; review notes from Esbeck; related research. | 4.50 |

| 05/29/14 | TB | Research and prepare responses to Judge Posner arguments used by Government in its brief; review ACLU et al. amicus brief; review amicus brief from Paul Weiss law firm | 5.50 |
|---|---|---|---|
| 05/30/14 | JB | Research accommodation cases and current scorecard | 5.50 |
| 05/30/14 | TB | Telephone conferences with Dave Melton; office conferences with Matt Belz; all regarding disposing of arguments made by the Government in its brief on appeal; research regarding and multiple communications with other counsel regarding the unique circumstances of being self-insured and dealing with third party administrators as opposed to outside insurance companies | 5.00 |
| 06/02/14 | JB | Begin draft of brief | 5.00 |
| 06/02/14 | TB | Emails regarding responses to briefs of amici on side of Government; emails with co-counsel regarding amici on our side; research issues raised by Government and its amici | 3.50 |
| 06/03/14 | JB | Work on brief | 4.50 |
| 06/03/14 | TB | Review competing standards for preliminary injunctions as between Heartland case (2003) and Planned Parenthood case (2008); discuss with counsel; research 8th circuit cases regarding same ("fair chance" v. "likelihood") | 3.90 |
| 06/04/14 | JB | Work on brief; research federal registry re: accommodation and TPAs. | 5.50 |
| 06/04/14 | TB | Research issues surrounding Notre Dame decision in 7th Circuit and compare to arguments CNSIMI has made; communications with counsel in similar cases | 3.60 |
| 06/05/14 | JB | Work on brief; review briefs and pleadings from Becket Fund and Government in Guiding Souls case. | 5.00 |
| 06/05/14 | TB | Research cases recently decided that discuss Notre Dame and other relevant decisions; discuss with co-counsel | 5.10 |
| 06/06/14 | JB | Work on brief; draft and file motion for additional time | 5.20 |
| 06/06/14 | TB | Research legal issues raised by Government and its amici; preparation of appellees' main brief | 3.30 |
| 06/09/14 | JB | Work on brief; research re: other accommodation cases and briefs | 4.20 |
| 06/10/14 | JB | Work on brief | 3.50 |
| 06/12/14 | JB | Work on brief; review Sixth and Seventh Circuit decisions | 5.00 |
| 06/19/14 | TB | Review analysis by Carl Esbeck; email to him and Matt; review 6th Cir. opinion | 1.00 |
| 06/20/14 | TB | Telephone conferences and emails with counsel regarding content of brief | 1.00 |
| 06/30/14 | TB | Review Hobby Lobby decision; telephone conferences with Dave Melton, Sam Lee, Carl Esbeck; emails with them and similarly-situated counsel; strategize as to how to proceed in Heartland (CNS Int'l Ministries) religious nonprofit; review Hobby Lobby Supreme Court decision in detail | 7.40 |
| 07/01/14 | TB | Telephone conference with Carl Esbeck regarding strategies for proceeding with brief in 8th Circuit and what to argue in light of Hobby Lobby | 0.80 |
| 07/02/14 | JB | Review Hobby Lobby decision; research recent nonprofit decisions; work on brief | 5.50 |
| 07/02/14 | TB | Telephone conference with Dave Melton; telephone conference with Matt Belz; all re: appellee brief in 8th Circuit | 1.00 |
| 07/03/14 | JB | Work on brief | 4.80 |
| 07/03/14 | TB | Research regarding government's accommodation for religious nonprofits; research regarding required certification by government; preparation of appellee brief in 8th circuit | 5.50 |
| 07/04/14 | TB | Thorough review of Government's appellant's brief, in view of the recent Hobby Lobby case and yesterday's Wheaton College order; preparation of appellee's brief | 6.90 |
| 07/05/14 | TB | Research for appellee's brief, especially regarding ERISA requirements; preparation of appellee's brief | 5.00 |
| 07/06/14 | JB | Work on brief; related research | 2.00 |
| 07/06/14 | TB | Research legal and factual issues; preparation of appellee brief for 8th Circuit | 7.50 |
| 07/07/14 | JB | Work on brief | 4.00 |
| 07/07/14 | TB | Telephone conference with Dave Melton; telephone conference with Carl Esbeck; phone conference with Charles Sharpe; research legal issues in view of Hobby Lobby decision; prepare appellee's brief | 6.50 |
| 07/08/14 | TB | Research for and review and revise appellee brief in 8th Circuit | 8.50 |
| 07/09/14 | JB | Work on brief; related research | 4.00 |
| 07/09/14 | TB | Prepare, review and revise appellee brief in 8th Circuit | 7.80 |
| 07/10/14 | JB | Work on brief; research re: nonprofit cases | 4.50 |
| 07/11/14 | TB | Review and revise appellee brief for 8th Circuit; research regarding same | 8.00 |
| 07/12/14 | TB | Research and review and revise appellee brief for 8th Circuit | 5.50 |
| 07/14/14 | TB | Research ERISA arguments and discuss with Melton | 1.60 |

| | | | |
|---|---|---|---|
| 07/15/14 | JB | Meeting with T. Belz re: revisions; work on brief/research | 5.00 |
| 07/15/14 | TB | Review and revise using Esbeck edits; confer with Matt Belz | 2.00 |
| 07/16/14 | TB | Research regarding ERISA requirements as applied to contraceptive mandate; telephone conference with Dave Melton and Matt Belz to go over Melton's changes in appellee brief in 8th Circuit; telephone call with Melton regarding ERISA findings | 1.40 |
| 07/20/14 | JB | Work on brief; related research | 4.00 |
| 07/20/14 | TB | Review and revise appellee brief in 8th Circuit; discuss changes with Matt Belz | 5.50 |
| 07/21/14 | JB | Work on brief, including tables and addendum; file all | 4.00 |
| 07/21/14 | TB | Review and revise appellee brief in 8th Circuit; prepare for final; cite checks; proofread; make changes | 7.50 |
| 07/22/14 | TB | Telephone call from clerk at 8th Circuit regarding fact that only two of several plaintiffs are appellees; tried to clear up her confusion; she said would take it up with the clerk; review and revise certificate of service and communicate with printer; prepare for printer and send instructions regarding printing paper copies of briefs; communicate with co-counsel; review of supplemental briefs filed in the 10th Circuit Court of Appeals today | 2.80 |
| 07/23/14 | TB | Communications with attorneys similarly situated regarding next move by DOJ on religious nonprofit "accommodation" changes as promised by DOJ; research regarding same; communications with DOJ attorneys regarding their request for extra time to reply, telling them we would not oppose | 2.50 |
| 07/24/14 | TB | Review appellee brief paper versions back from printer and file same | 1.00 |
| 08/14/14 | JB | Research re: Section 1988 and recovery of fees; review statuses of several related cases | 3.00 |
| 08/14/14 | JB | Correspondence with Justice Department | 0.20 |
| 08/18/14 | TB | Telephone conference with Patrick Nemeroff at USDOJ regarding his request for changes in briefing schedule due to new IFR issuing later this week from Government; telephone conference with Dave Melton regarding same; telephone call to Nemeroff; review draft of joint motion proposed by DOJ; send to co-counsel | 2.20 |
| 08/19/14 | TB | Email with DOJ; review email from client; confer with client; edit and return proposed joint motion prepared by USDOJ | 1.50 |
| 08/20/14 | TB | Telephone conference with USDOJ attorney regarding briefing schedule given new IFR coming out; review file; review Marty Lederman blog regarding same; confer with Carl Esbeck regarding same; research regarding responses of similarly situated religious nonprofits in 10th Circuit; confer with co-counsel | 1.90 |
| 08/24/14 | TB | Research new IFR from government; compare to Hobby Lobby and discuss, over last three days, our options with counsel similarly situated | 4.50 |
| 08/28/14 | TB | Confer with counsel in cases similarly situated, including counsel for Dordt College, about strategies | 1.80 |
| 09/08/14 | TB | Telephone conference with Patrick Nemeroff of USDOJ Appellate Staff, regarding scheduling of post-new accommodation briefing; review file | 0.30 |
| 09/15/14 | TB | Communications, including email and telephonic, with USDOJ regarding briefing at 8th Circuit level; telephone conference with Dave Melton regarding same; communication with Greg Baylor, representing Dordt College regarding same | 1.70 |
| 09/17/14 | TB | Back and forth with USDOJ regarding joint motion at USDOJ's request to change briefing schedule before the 8th Circuit; confer with client and co-counsel; review file and research legal issues | 2.90 |
| 10/21/14 | JB | Review Dordt college brief from Government; review cases and pleadings in case | 3.00 |
| 10/21/14 | TB | Research regarding 8th Circuit brief | 3.20 |
| 10/22/14 | JB | Review augmented accommodation; reivew Dordt College brief; review Little Sisters briefing | 5.00 |
| 10/22/14 | TB | Research for and preparation of 8th Circuit appellee brief; communications with counsel for Dordt College to coordinate arguments | 3.20 |
| 10/23/14 | JB | Work on response to supplemental brief; review Priests for Life briefing | 5.00 |
| 10/24/14 | JB | Work on response to supplemental brief; review declarations in our case and others; review Hobby Lobby and Wheaton College and subsequent decisions; review Guidestone briefing | 4.00 |
| 10/26/14 | JB | Work on response to supplemental brief; review correspondence with G. Baylor | 2.00 |
| 10/26/14 | TB | Research legal issues in 8th Circuit brief filed by government in Dordt College, to which we must respond in supplemental brief; emails with Greg Baylor regarding same | 2.60 |
| 10/27/14 | JB | Work on supplemental brief; related research | 5.00 |

| Date | Initials | Description | Hours |
|---|---|---|---|
| 10/28/14 | JB | Work on supplemental brief; correspondence with clerk re: technical requirements for brief; review FRAP and local rules re: supp. briefs | 4.80 |
| 10/28/14 | TB | Review and revise supplemental brief in 8th Circuit | 5.80 |
| 10/29/14 | JB | Revisions to supplemental brief; review Archdiocese of STL and Ave Maria cases and opinions | 4.50 |
| 10/29/14 | TB | Review and revise supplemental brief for the Eighth Circuit | 2.40 |
| 10/30/14 | TB | Review and revise draft of supplemental 8th Circuit brief; telephone conference with Dave Melton regarding same; emails with Greg Baylor; confer with Matt Belz | 3.20 |
| 11/03/14 | JB | Review correspondence with T. Belz and G. Baylor; revisions to brief; work on tables; finalize brief and file | 7.00 |
| 11/03/14 | TB | Review and revise several consecutive, serial drafts of 30-page supplemental brief in 8th Circuit; emails with counsel in similar 8th Circuit case; confer with Matt Belz regarding same; review and revise | 10.50 |
| 11/07/14 | TB | Review scheduling by 8th Circuit and confer with Greg Baylor regarding same; confer with Dave Melton and associate about same; emails notifying client and others | 0.50 |
| 11/17/14 | TB | Research regarding upcoming arguments in 8th Circuit; extensive email exchanges with similarly situated counsel regarding likely questions from the bench; review reply brief filed by government | 2.90 |
| 11/18/14 | TB | Review reply brief in 8th Circuit case from government; research cited law | 4.50 |
| 11/20/14 | JB | Review government reply brief and begin review of new accommodation decisions | 4.00 |
| 11/20/14 | TB | Review reply brief of government; research positions presented in same | 2.30 |
| 12/01/14 | JB | Research re: Southern Nazarene and Geneva College pleadings; research CMS and CCIIO releases and guidelines and regs | 4.00 |
| 12/02/14 | JB | Review Priests for Life opinion and cited cases; correspondence from Esbeck | 3.00 |
| 12/03/14 | JB | File oral argument response form; research re: accommodation cases; listen to seventh circuit oral argument and research cases; notes and memo re: oral argument | 4.00 |
| 12/03/14 | TB | Prepare for oral argument; communications with Greg Baylor, attorney making arguments in other cases and arguing case immediately after ours; emails with attorneys similarly situated; research recent rulings regarding attenuations, etc. | 4.20 |
| 12/04/14 | TB | Communication via email and telephone with similarly situated attorneys and with David Melton; listen to oral arguments in other circuits; discuss upcoming oral arguments with Matt Belz; prepare for oral argument | 6.40 |
| 12/05/14 | JB | Listen to third circuit oral argument and research cited cases; draft notes and memo re: same; related research | 4.50 |
| 12/05/14 | TB | Preparation of oral argument; telephone and email with Melton and other similarly situated attorneys; research recent opinions; review briefs | 5.80 |
| 12/06/14 | TB | Preparation for oral argument; email with other attorneys arguing similar cases; research recent opinions; review briefs; review recent oral arguments in other circuits | 5.00 |
| 12/07/14 | TB | Preparation for oral argument; email with other attorneys arguing similar cases; research recent opinions; review briefs; review recent oral arguments in other circuits | 5.50 |
| 12/08/14 | JB | Research and review Priests for Life decision and related 28j letters; review Baylor correspondence; research and memo re: least restrictive alternatives | 5.00 |
| 12/08/14 | TB | Preparation for oral argument; emails with other attorneys similarly situated; telephone conference with Dave Melton; confer with Matt Belz, associate | 7.50 |
| 12/09/14 | JB | Moot; meetings with C. Esbeck and G. Baylor; research Wheaton College and Hobby Lobby; research re: RFRA and third party rights | 5.50 |
| 12/09/14 | TB | Moot court and prepare for oral argument | 7.00 |
| 12/09/14 | TB | Preparation for oral argument; prepare opening; confer with Carl Esbeck and Greg Baylor | 3.70 |
| 12/10/14 | JB | Prep for oral argument; oral argument | 1.50 |
| 12/10/14 | TB | Prepare for oral argument; oral argument | 3.50 |
| 01/23/15 | JB | Research re: Holt v. Hobbs and 28(j) letters; work on draft of 28(j) letter | 3.50 |
| 01/23/15 | TB | Communications with similarly situated attorneys regarding Holt v. Hobbs case; research same; preparation of Rule 28(j) letter regarding supplemental authorities | 0.90 |
| 01/24/15 | TB | Review Holt v. Hobbs opinion from Supreme Court and prepare suggestions for Rule 28(j) letter to Eighth Circuit | 1.20 |
| 02/03/15 | JB | Check Dordt College pleadings re: 28(j) letters | 0.20 |

| Date | Initials | Description | Hours |
|---|---|---|---|
| 02/10/15 | JB | Review Government 28j letter and Geneva College decision; review 28j letters in other pending cases | 2.00 |
| 02/11/15 | TB | Review Government's 28(j) letter following their victory in the 3d Circuit; review Geneva Colege case; emails with co-counsel | 1.50 |
| 02/12/15 | JB | Review status of 10th Circuit appeal and 28j letters; revise 28j response re: Geneva College; review Becket database | 1.50 |
| 02/12/15 | TB | Fly speck Geneva College opinion from the 3d Circuit, for purpose of filing a Rule 28(j) letter responding to the Government's 28(j) letter; share research with attorneys similarly situated and speak to client regarding same; research for and prepare Rule 28(j) response letter for filing in the 8th Circuit | 4.90 |
| 02/13/15 | JB | Revise 28j response | 0.50 |
| 02/13/15 | TB | Work with Matt Belz, Dave Melton, and Carl Esbeck to research 3rd Circuit opinion in Geneva College and write, review and revise response to Government's Rule 28(j) letter regarding Third Circuit Geneva College decision | 6.50 |
| 03/09/15 | JB | Locate and review Notre Dame order; research briefing in Notre Dame case at Supreme Court level; research cases that have relied on Notre Dame appellate court level | 3.00 |
| 03/09/15 | TB | Preparation of Rule 28(j) letter to 8th Circuit clerk notifying court of GVR by Supreme Court of 7th Circuit Notre Dame decision | 2.50 |
| 03/10/15 | JB | Review and revise 28(j) letter; review Rienzi 28(j) letter; research Notre Dame, Geneva College and Priests for Life cases; file 28(j) letter | 2.50 |
| 03/10/15 | TB | Telephone conference with client; emails with client and co-counsel and other similarly situated attorneys regarding Rule 28(j) letter; review and revise several times | 2.10 |
| 03/11/15 | TB | Confer with other attorneys in similar court of appeals cases regarding content of their 28(j) letters and sharing ours regarding GVR of Notre Dame case by Supreme Court; confer with Greg Baylor and request that he file 28(j) letter in Dordt College case, companion to our case | 0.70 |
| 04/24/15 | TB | Emails and telephone calls regarding Supreme Court stay in Zubik and Persico and Geneva College cases in 3rd Circuit; research same; all over past week | 1.00 |
| 04/27/15 | JB | Review Michigan Catholic Conference decision and history; draft 28(j) letter | 2.00 |
| 04/27/15 | TB | Review action of the Supreme Court in Michigan Catholic Conf. v. Burwell (6th Circuit) in GVRing case; emails with other counsel similarly situated; preparation of 28(j) letter to 8th Circuit; email to Melton | 2.20 |
| 04/28/15 | JB | Revise 28(j) letter; research similar letters in similar cases; file letter | 1.00 |
| 04/28/15 | TB | Tweak 28j letter; communications with Esbeck, Melton and others; review relevant portions of file | 1.90 |
| 04/29/15 | TB | Emails with counsel similarly situated around the country regarding our various 28j letters regarding the GVRing of Michigan Catholic Conference by the Supreme Court | 0.50 |
| 05/27/15 | JB | Review 28(j) letter re: Notre Dame; review Becket response; draft 28(j) letter | 4.00 |
| 05/29/15 | JB | Revisions to 28(j) letter; research re: government briefing in Notre Dame | 0.80 |
| 05/29/15 | TB | Review and revise draft of our response to Government's 28j letter based on Seventh Circuit's Notre Dame II opinion; research same, referring to other responses in other circuits | 1.00 |
| 06/02/15 | JB | Revisions to 28(j) letter; correspondence with G. Baylor and co-counsel; file 28(j) letter | 0.60 |
| 06/02/15 | TB | Review and revise response to Government's 28j letter based on Notre Dame II from the 7th Circuit | 0.50 |
| 06/30/15 | JB | Review East Texas Baptist decision from 5th Circuit; review Govt 28(j) letter re: same; work on response to 28(j) letter | 2.20 |
| 06/30/15 | TB | Review and revise response to Government's Rule 28j letter based on 5th Circuit case | 1.50 |
| 07/01/15 | JB | Revise Texas Baptist 28(j) letter; file same | 0.80 |
| 07/01/15 | JB | Review and revise response to Texas Baptist 28j letter filed by Government | 0.80 |
| 07/02/15 | JB | Review Zubik stay and begin work on 28j citation; review status of 10th and 11th circuit pending cases. | 1.50 |
| 07/08/15 | JB | Finish Zubik 28(j) draft | 0.50 |
| 07/09/15 | JB | File Zubik 28(j) letter | 0.30 |
| 07/09/15 | TB | Research, review and revise proposed Zubik 28j letter to 8th Circuit; email to co-counsel and counsel in related case | 0.70 |
| 07/14/15 | TB | Review 10th Circuit opinion denying RFRA claim by religious nonprofits; emails with co-counsel regarding same and how to respond to Government's 28j letter | 2.00 |
| 07/15/15 | JB | Review Little Sisters decision in 10th Circuit; revise 28(j) letter | 1.20 |

| 07/15/15 | TB | Review Little Sisters case from 10th Circuit; discuss with Dave Melton; preparation of response to Government's 28j letter; distribute to co-counsel and other attorneys similarly situated for comment and correction | 4.50 |
| 07/16/15 | TB | Review and revise response to Government 28j letter, inserting corrections and suggestions from co-counsel and others; review Little Sisters case from 10th Circuit | 2.00 |
| 07/18/15 | TB | Review Professor Josh Blackman's article regarding HHS lack of expertise to craft religious exemptions; consider 28j letter referencing Roberts' opinion stating the same thing; further research re: same | 2.30 |
| 08/07/15 | JB | Review 2nd Circuit decision; work on 28(j) response | 2.00 |
| 08/07/15 | TB | Review Catholic Health Care System case decided by 2d Circuit; preparation of response to government's 28j letter | 3.50 |
| 08/09/15 | JB | Review Esbeck comments re: 28(j) response; revise 28(j) letter | 1.50 |
| 08/09/15 | TB | Review and revision of response to Government's 28j letter based on 2d Circuit opinion | 1.30 |
| 08/10/15 | TB | Research Hobby Lobby opinion; review and revise multiple drafts of response to 28j letter of Government citing 2d Circuit case | 3.80 |
| 08/24/15 | JB | Review 28(j) letter re: new 6th Circuit MCC decision; review MCC decisions and summarize. | 2.00 |
| 08/27/15 | JB | Draft MCC 28(j) response; review Hobby Lobby | 2.00 |
| 08/28/15 | TB | Prepare, review and revise response to government's 28j letter based on Sixth Circuit MCC decision; email to counsel | 0.90 |
| 08/28/15 | JB | Revisions to MCC 28(j) response | 0.50 |
| 09/01/15 | JB | Revise and file 28(j) response re: MCC | 0.50 |
| 09/04/15 | TB | Review ERISA brief by Martin Nussbaum which was filed as an amicus brief in Supreme Court Little Sisters cert petition and focuses on ERISA; emails to Matt Belz and Carl Esbeck regarding any use to which it might be put; review our own main brief and supplemental brief in the 8th Circuit; review Judge Manion's dissent in 7th Circuit case to be cited in response to anticipated 28j letter from the government | 2.60 |
| 09/11/15 | JB | Review Grace Schools and Little Sisters rehearing litigation; draft 28(j) response | 4.00 |
| 09/13/15 | TB | Research and review and revise Little Sisters and Grace Schools response to government's 28j letter | 2.00 |
| 09/14/15 | JB | Revisions to 28(j) letter re: Grace Schools; file same. | 0.50 |
| 09/17/15 | TB | Telephone conference with Mark Rienzi of Beckett Fund regarding representation at oral argument etc. if case should go to Supreme Court | 0.60 |
| 09/17/15 | TB | Review positive opinion from the 8th Circuit in Sharpe Holdings v. Burwell, striking down the so-called accommodation; discuss with clients and co-counsel; discuss strategy with same | 2.70 |
| 09/30/15 | TB | Telephone conference with Dave Melton; telephone conference with Mark Rienzi, Paul Clement and others from Becket Fund regarding where things go from here | 0.80 |
| 10/06/15 | TB | Discussions with Mark Rienzi and Dave Melton regarding interplay between for-profit and nonprofit cases; review file; review rules regarding government requesting rehearing en banc in 8th Circuit and related questions, to form strategy for proceeding; extended conversation with client, Dave Melton, regarding beginning of plan year and interplay between for-profits and nonprofits | 2.30 |
| 11/03/15 | TB | Email to clients; discuss with Esbeck, Matt Belz and Dave Melton (client) the consequences of the government not seeking rehearing en banc | 1.20 |
| 11/10/15 | TB | Telephone conference with Carl Esbeck regarding proposed amicus brief in Supreme Court; review materials provided by Esbeck regarding same | 1.10 |
| 11/19/15 | TB | Discussions with Esbeck regarding filing amicus brief; research whether winning party can file petition for certiorari; review Supreme Court rules regarding same; emails to formerSupreme Court clerks regarding same | 1.70 |
| 11/20/15 | TB | Emails with Supreme Court experts regarding petition for certiorari; review file; review Supreme Court rules and associated cases | 0.90 |
| 12/02/15 | JB | Conference call re: amicus briefs | 1.00 |
| 12/02/15 | TB | Telephone conference with all potential amici in Supreme Court case involving religious nonprofits (Zubik v. Burwell) (1.0 hours); followup with Dave Melton | 1.20 |
| 12/03/15 | TB | Emails and telephone conferences with Esbeck and then with Melton also regarding change in circumstance brought on by LDS taking over brief | 1.00 |
| 12/07/15 | TB | Telephone conference with co-counsel regarding amicus brief; review file | 0.60 |

| | | | |
|---|---|---|---|
| 12/28/15 | JB | Research re: amicus briefs in Supreme Court and Government positions on least restrictive means throughout litigation | 2.80 |
| 12/29/15 | JB | Work on amicus brief; research federal register | 4.50 |
| 12/30/15 | JB | Work on amicus brief; review brief rules; review government documentation re: exchanges | 4.00 |
| 12/30/15 | TB | Telephone conference with Kim Colby of Christian Legal Society regarding amicus brief strategies and questions; research regarding our amicus brief for Supreme Court | 1.50 |
| 12/31/15 | JB | Work on amicus brief; revise intro | 1.00 |
| 12/31/15 | TB | Research for, review and revise amicus brief for Supreme Court case | 3.50 |
| 01/02/16 | TB | Review and revise amicus brief for Supreme Court; research for same | 3.70 |
| 01/03/16 | TB | Review and revise amicus brief (new version) | 1.80 |
| 01/04/16 | JB | Review Becket Fund brief; work on amicus brief | 2.00 |
| 01/04/16 | TB | Review and revise amicus brief for Supreme Court; review appeal briefs filed by religious claimants in Zubik et al; discuss with Matt Belz | 4.70 |
| 01/05/16 | JB | Work on amicus brief; research exchanges; review Jones Day brief | 1.50 |
| 01/05/16 | TB | Review and revise Supreme Court amicus brief; review briefs filed yesterday by petitioners in Supreme Court; discuss with client, Dave Melton | 3.60 |
| 01/06/16 | TB | Research for and review and revise amicus brief for Supreme Court, filed on behalf of amici CNS Int'l Ministries and Heartland Christian College; confer with other counsel; confer with Dave Melton by email and telephone; make more revisions | 7.20 |
| 01/06/16 | JB | Final work on brief; review Rienzi comments | 4.00 |
| 01/07/16 | JB | Work on tables for amicus brief; review correspondence with K. Colby; review T. Belz revisions; review printer's changes | 1.20 |
| 01/07/16 | TB | Confer with Kim Colby, counsel for another amici, Christian Legal Society; confer with Matt Belz, co-counsel on brief; confer with David Melton, client and co-counsel; review and revise; confer with personnel at Cockle Printing Company; proofread proofs from Cockle Printing and discuss with M. Belz | 5.50 |
| 01/08/16 | JB | Work on certain cites for Amicus brief; phone conference with printer re: revisions | 0.60 |
| 01/08/16 | TB | Final proofreading of amicus brief for Supreme Court in Zubik; discuss substantial changes with Matt Belz; discuss all final changes with Trish Cockle at Cockle Printing | 3.20 |
| 01/12/16 | JB | Correspondence with Supreme Court Clerk; draft letter for extension of time; review rule | 0.50 |
| 01/12/16 | TB | Communications with Solicitor General's office, Andy Cockle, Dave Melton, clerk of Supreme Court and others to get extension of two weeks in which to respond to Government's petition for writ of certiorari; preparation, review and revision of same; research regarding how to respond substantively | 2.80 |
| 01/19/16 | JB | Work on response to petition for cert. | 4.00 |
| 01/21/16 | JB | Work on response to cert petition | 5.00 |
| 01/24/16 | TB | Review Melton revisions; research regarding brief | 3.50 |
| 01/25/16 | JB | Incorporate D. Melton revisions; review and revise brief; related research | 3.00 |
| 01/25/16 | TB | Review and revise Brief in Opposition to Government's petition for writ of certiorari; discuss with Matt Belz; discuss with Dave Melton; review and revise again | 2.50 |
| 01/26/16 | JB | Revisions to response to cert. petition | 1.00 |
| 01/26/16 | TB | Incorporate Carl Esbeck changes and suggestions where appropriate; edit and re-edit; confer with Matt Belz regarding same | 3.50 |
| 01/27/16 | JB | Revisions to response to cert. petition | 1.00 |
| 01/27/16 | TB | Review and revise brief responding to Government's petition for writ of certiorari; to Matt; back from Matt; review and revise and send to printer; get back from printer and flyspeck proofs; check pagination and citations; check table of authorities; mark up and send back to printer; email with printer; emails with Dave Melton | 4.80 |
| 01/28/16 | TB | Fly speck Supreme Court brief one more time and email printer with three changes; back and forth with printer; email client | 2.70 |
| 02/15/16 | TB | Discuss likely options with attorney Martin Nussbaum, given death of Justice Scalia; discuss with Dave Melton | 0.70 |
| 02/23/16 | TB | Confer with counsel in Washington DC regarding status of Zubik appeal in Supreme Court | 0.60 |
| 03/24/16 | TB | Review Supreme Court argument; communications with attorneys involved in same; emails with Melton and Esbeck | 2.30 |

| Date | Init. | Description | Hours |
|------|-------|-------------|-------|
| 03/29/16 | TB | Emails with co-counsel and others regarding SCOTUS request for further briefing on least restrictive alternative; extended telephone conversation with Woody Cozad to answer questions about Sharpe Holdings case asked by Senator Blunt | 2.90 |
| 03/30/16 | TB | Confer with Matt Belz regarding SCOTUS post-argument order in Zubik; telephone and email with Esbeck and with Melton regarding same; email with Mark Rienzi at Becket Fund regarding same; research same; research Form 700 and send to Melton; set up phone conference with Rienzi; emails with counsel for other religious claimants in Zubik case; phone conferences with same; phone conference with Mark Rienzi at Becket Fund to share my ideas and pass along Dave Melton's ideas | 3.10 |
| 03/31/16 | TB | Emails with client and co-counsel and other counsel similarly situated; research issues connected with SCOTUS post-argument order in Zubik and comment on same; telephone conference with Dave Melton regarding same; research Missouri solution; telephone conference with Mark Rienzi regarding same; telephone conference with Sam Lee regarding Missouri experience; telephone conference with Adele Keim at Becket Fund regarding Missouri; telephone call to Sam Lee | 3.80 |
| 04/01/16 | TB | Extended telephone conference with Ed Haislmaier and his associate at Heritage Foundation regarding how to respond to Supreme Court post-argument order | 1.10 |
| 04/10/16 | TB | Back and forth with Becket Fund attorneys et al regarding Missouri opt in and out procedure and experience; review UHC and BCBS Anthem materials regarding same; review Missouri statutes | 3.60 |
| 04/13/16 | TB | Discuss Little Sisters supplemental brief for SCOTUS with co-counsel; discuss with David Melton; review Supreme Court supplemental filings by Paul Clement et al. and by Government; emails with co-counsel and client; review Missouri references | 1.90 |
| 04/22/16 | TB | Review reply brief of Little Sisters et al. to Government's supplemental brief | 0.90 |
| 05/16/16 | TB | Review per curiam decision in Zubik; review GVR in CNS Int'l Ministries; emails with clients and co-counsel and counsel similarly situated | 2.60 |
| 05/19/16 | TB | Review correspondence from the Supreme Court; discuss with co-counsel; emails to co-counsel and clients; extended phone conversation with Mark Rienzi, counsel for Little Sisters of the Poor | 2.40 |
| 06/22/16 | TB | Review filing of status report by USDOJ; review order of court reopening case and send out to interested persons | 0.90 |
| 06/29/16 | TB | Review Government status report to Eighth Circuit and research underlying case regarding same; telephone conferences with attorneys regarding same | 1.90 |
| 07/21/16 | TB | Review the Government's status report to the 8th Circuit; discuss objectionable portions of it with client; discuss procedure with Yvette at clerk's office; discuss with Supreme Court counsel in Zubik case; discuss further with client | 2.40 |
| 07/22/16 | TB | Telephone conference with Dave Melton; telephone conferences with Mark Rienzi at Becket Fund; research Zubik order; telephone conference with Yvette at 8th Circuit clerk's office; prepare response to status report | 3.30 |
| 07/23/16 | TB | Research file; confer with Esbeck; confer with Matt Belz; confer with David Melton; confer with Mark Rienzi at Becket Fund; research cases; prepare status report for 8th Circuit | 3.00 |
| 07/24/16 | JB | Review and revise response to Government status report. | 0.30 |
| 08/03/16 | TB | Review sua sponte order from 8th Circuit and email same to co-counsel and clients | 0.20 |
| 09/13/16 | TB | Preparation of comments to supply to rule-making apparatus of federal government regarding RFI (Request for Information) that was issued by federal government | 3.20 |
| 09/15/16 | TB | Review requirements of Government's Request for Information and discuss strategies with counsel similarly situated | 3.30 |
| 09/16/16 | JB | Draft of response to RFI; research RFI responses | 3.00 |
| 09/16/16 | TB | Research requirements for making comments regarding contraceptive mandate when TPAs are involved; discuss with counsel similarly situated | 2.50 |
| 09/17/16 | TB | Research all briefs filed in Zubik/Little Sisters Supreme Court case, including merits briefs and supplemental briefs required by SCOTUS to see what was said regarding self-insured/TPA situations | 2.20 |
| 09/18/16 | TB | Research and then review and revise comments responding to RFI of government; discuss with counsel similarly situated | 1.90 |
| 09/19/16 | JB | Revisions to RFI response | 1.00 |
| 09/19/16 | TB | Emails to Rienzi and also to Melton | 0.40 |
| 09/20/16 | JB | Revisions to RFI response; file | 0.80 |

| | | | |
|---|---|---|---|
| 10/03/16 | TB | Review government status report; review 8th Circuit order setting new status report for November 30, 2016 | 0.40 |
| 10/26/16 | TB | Telephone conference with co-counsel regarding strategies to proceed given Government delays; review file with regard to same | 0.50 |
| 11/17/16 | TB | Telephone conference with Greg Baylor, attorney for Dordt College, regarding strategies moving forward given political changes, etc., and status report coming up; review file; telephone conference on Monday, November 14, with USDOJ regarding same issues | 1.40 |
| 11/22/16 | TB | Telephone conference with Dave Melton for update on case in light of recent political and legal developments; review file | 0.90 |
| 11/28/16 | JB | Review Government status report; research re: Zubik and other nonprofit cases; draft status report | 3.00 |
| 11/30/16 | JB | Correspondence with 8th Circuit re: filing of responsive status report | 0.20 |
| 12/01/16 | JB | Multiple revisions to status report; file same. | 1.00 |
| 12/01/16 | TB | Research regarding authority of Government to control TPAs in self-insured situations; prepare, review and revise status report response; discuss with Matt Belz and David Melton | 1.90 |
| 12/09/16 | TB | Review order from 8th Circuit judges regarding status report and requirement that it should include Government explanation as to how status as self-insured could affect case; discuss with co-counsel | 0.50 |
| 01/25/17 | TB | Telephone conferences and emails to co-counsel and clients over past week | 2.20 |
| 02/28/17 | JB | Review government status report and draft response. | 0.80 |
| 03/27/17 | TB | Review Supreme Court order in Zubik and confer with attorneys for similarly-situated clients | 1.50 |
| 03/29/17 | TB | Review 8th Circuit filings; email to Joshua Salzman at USDOJ regarding status | 0.30 |
| 03/30/17 | TB | Email with Mark Rienzi at Becket Fund regarding possibility of contacting HHS regarding contraceptive mandate enforcement; telephone with Rienzi; further email to Rienzi | 0.90 |
| 04/25/17 | JB | Conference call with government attorneys and attorney in similar cases | 0.60 |
| 04/25/17 | TB | Telephone conference with Dave Melton; many emails with similarly situated attorneys in Washington, D.C. setting up meeting with Acting Solicitor General; all in attempt to move cases forward if not resolve them; telephone conference with all attorneys similarly situated post-Zubik regarding strategy to take vis-a-vis meeting with Acting Solicitor General; telephone conference with Acting Solicitor General [1.5 hours] | 3.00 |
| 04/26/17 | TB | Telephone conference and email with client, David Melton; telephone conference with Zubik attorneys, including Paul Clement and others, regarding moving toward an agreement with the government | 1.30 |
| 04/27/17 | JB | Research Zubik order and options going forward | 0.50 |
| 04/27/17 | TB | Review discussions of last two days among Zubik attorneys and USDOJ, including Acting Solicitor General; email to Esbeck, Matt Belz and Melton | 0.50 |
| 04/28/17 | TB | Telephone conference with client (David Melton) regarding how to respond to offer of Acting Solicitor General; review status reports from 60 days ago; review motions being made in other circuits; emails and telephone conferences with Becket Fund attorneys; preparation of status report; further email with Becket Fund plus more research on current status of accommodation | 4.30 |
| 04/30/17 | TB | Email to Baylor, Esbeck and Melton regarding CA8 status report due tomorrow; further emails with attorney from Becket Fund (Little Sisters), research for and preparation of status memorandum to file Monday, May 1, tomorrow; review status report and motion filed by Becket Fund in the Fifth Circuit | 2.90 |
| 05/01/17 | JB | Research Notre Dame case; review and revise Sharpe Holdings status report; file same | 1.00 |
| 05/01/17 | TB | Review status report from Government due May 1; review and revise our proposed status report and circulate and accept return comments regarding same; review and revise, and then finalize our status report | 1.80 |
| 05/04/17 | TB | Review emails regarding pending Executive Order affecting case in the 8th Circuit; respond to same; review summary of proposed EO; more emails | 0.90 |
| 05/30/17 | TB | Emails with counsel in Washington, D.C. regarding impending interim final rule at HHS; email to Melton | 0.40 |
| 05/31/17 | TB | Review draft of new Interim Final Regulation; discuss with co-counsel; discuss with David Melton | 1.50 |
| 06/08/17 | TB | Emails with attorneys representing other claimants, specifically Becket Fund attorneys in Washington, D.C., regarding the language of and effect of new proposed IFR; review language of same; telephone conference with Dave Melton; review proposed IFR; email to similarly-situated counsel in Washington, D.C. regarding proposed IFR | 1.80 |

| | | | |
|---|---|---|---|
| 06/29/17 | TB | Confer with Washington, DC attorneys regarding status of proposed new rule at HHS and effect on status of this case | 0.40 |
| 06/30/17 | TB | Emails with counsel for Dordt College and Cornerstone University, similarly situated to Heartland Christian College and CNS Ministries, regarding how to respond to government's request for an additional 60 days for yet another status report; review and revise various drafts of responses to government's status report; prepare for final | 2.50 |
| 08/29/17 | TB | Telephone and email discussions with attorneys in Washington DC regarding settlement negotiations with DOJ; review draft of settlement; further communications with attorneys at ADF and Becket Fund; review Government status report filed in 8th Circuit | 2.90 |
| 08/30/17 | TB | Review proposed settlement draft between DOJ and our side; email to client; research what has been said already in Sharpe Holdings for-profit case; emails with Washington DC lawyers | 2.90 |
| 09/04/17 | TB | Review and revise proposed settlement agreement and proposed judgment to be used in nonprofit accommodation cases; redline suggested changes and make comments; send to Becket Fund atttorney | 2.40 |
| 09/19/17 | TB | Communications with Becket Fund and ADF attorneys regarding settlement terms being negotiated with USDOJ; preparation of Section 1988 fees and expenses claim | 4.50 |
| 09/20/17 | JB | Work on fees issues/compilation for nonprofit matter | 2.00 |
| 09/20/17 | TB | Further communications with attorneys at Becket Fund and ADF regarding final settlement terms; email to USDOJ informing them of our desire to settle on same terms; preparation of claim for fees and expenses under Section 1988 as part of agreement | 7.50 |
| 10/04/17 | TB | Emails to USDOJ officials regarding settlement; emails with similarly situated attorneys in Zubik cases; telephone conference with Mark Rienzi; review file | 1.80 |
| 10/09/17 | JB | Correspondence with co-counsel; draft response to motion to dismiss appeal | 0.40 |
| 10/09/17 | TB | Telephone and email communications with Greg Baylor, Mark Rienzi, Carl Esbeck, Matt Belz and Dave Melton with respect to responding to Government motion to dismiss their appeal and our request to include attorney fee determination among things the district court should do | 1.50 |
| 10/10/17 | JB | File response to motion to dismiss | 0.20 |
| 10/10/17 | TB | Telephone conference with Dave Melton, general counsel for clients; email with Esbeck and Matt Belz; email with Patrick Nemeroff et al at USDOJ; review FRAPs and local 8th Circuit rules | 0.90 |
| 10/12/17 | TB | Review 75 pages of comments accompanying publication of new Rule by HHS, Labor and Treasury; apply to situations faced by CNS Corporation, Ozark National Life, NIS Financial, CNS Int'l Ministries, inc., Heartland Christian College | 2.50 |
| 10/14/17 | TB | Email to Lisa Pake, regarding records from 2003; search paper records and Pacer for 2002-2005 records for precedent regarding sending mandate from 8th Circuit to district court (Judge Webber) to determine fees and expenses on appeal | 1.20 |
| 10/15/17 | TB | Review emails from USDOJ and Mark Rienzi at Becket Fund regarding settlement discussions on Monday (tomorrow); review and flyspeck 10-13-2017 draft of settlement document | 1.90 |
| 10/16/17 | JB | Draft and file bill of costs | 1.00 |
| 10/16/17 | TB | To courthouse to speak with clerk (Yvette) regarding order and motions regarding fees and costs; telephone conference with Greg Baylor, ADF attorney who also has 8th Circuit cases; telephone conference with Dave Melton, client's general counsel; review and revise claim for court costs on appeal; telephone conference with Mark Rienzi; telephone conference with USDOJ; telephone conference with Greg Baylor; telephone conference with Dave Melton, GC for clients | 4.50 |
| 10/17/17 | JB | Draft motion to remand fees; correspondence with co-counsel and attorneys on related cases | 0.50 |
| 10/17/17 | TB | Emails with counsel for clients similarly situated; emails with Dave Melton; emails with Carl Esbeck; telephone conference with Carl Esbeck; review and revise motion to remand fee request from 8th Circuit to district court; review order of 8th Circuit that fee motion should be made in appeals court; discuss with co-counsel, preparation of exhibits for same; work on fee and expense claim | 5.50 |
| 10/18/17 | JB | Work on fee petition and brief | 3.00 |
| 10/19/17 | JB | Work on fee petition and brief | 2.00 |
| 10/20/17 | TB | Strategize and confer with co-counsel etc. regarding how to proceed, given need for injunction and 8th Circuit action; prepare extensive email regarding same to Dave Melton, Matt Belz and Carl Esbeck | 1.80 |
| 10/23/17 | JB | Work on fee petition and brief; research re: fees and amicus briefs | 3.00 |
| 10/27/17 | TB | Review and revise brief in support of motion for fees and expenses, along with declaration | 1.60 |

| 10/30/17 | JB | Revisions to brief in support of motion for fees and expense; related research | 4.00 |
| 11/01/17 | JB | Work on declarations and exhibits to brief | 1.00 |
| 11/01/17 | TB | Review and revise motion for declaratory and injunctive relief being filed for Catholic Benefits Association by Martin Nussbaum in Oklahoma; this is motion we had discussed at length, and will be used by us in Sharpe Holdings in district court [1.2]; review and reivse brief in support of Eighth Circuit motion for fees and expenses [1.9] | 3.10 |
| 11/02/17 | JB | Correspondence with A. Johnson, T. Hearne and C. Esbeck re: revisions to declarations; work on brief tables | 3.00 |
| 11/02/17 | TB | Review billing records for presentation to Eighth Circuit; review and revise motion for fees, declarations and memorandum in support | 3.00 |
| 11/03/17 | TB | Review and revise declarations, brief in support of motion for fees; communications with Matt Belz and Thor Hearne | 2.20 |
| 11/6/17 | JB | Final proofreading of fee brief, motion and declarations; prepare exhibits for filing; file all | 4.50 |

| | |
|---|---|
| Tim Belz Hours: | 625.50 |
| Matthew Belz Hours: | 377.30 |
| Total hours: | 1,002.80 |

**Carl H. Esbeck Statement of Fees & Costs**

2012-03-12      0.4      conferring by telephone with Timothy Belz re: initial engagement and discussion of parties and possible nature of claims.

2012-03-22      0.4      exchange of e-mails w/ T. Belz re: statement of faith and etc.

2012-04-04      0.2      exchange e-mails w/ T. Belz re: recent article on freedom of association & corporate religious conscience.

2012-04-05      0.7      reviewing research article by Professor Robert Vischer, on right of assembly and freedom of association with respect to nonprofits; send email to T. Belz re: pleading count of freedom of association.

2012-07-12      2.7      reading Sup. Ct. cases Lee, Alamo Foundation, Jimmy Swaggart Ministries, and Prince v. MA; preparing memorandum for T. Belz and D. Melton; sending email to Belz and Melton.

2012-07-23      0.4      exchange of e-mails regarding recent rulings on standing and lack of ripeness dismissing cases brought by Becket; T. Belz email and attachment re: freedom of assembly.

2014-07-01      1.2      two telephone calls with Timothy Belz re: the impact of the Hobby Lobby ruling on the part of this case pending in the Eight Circuit.

2014-07-02      0.3      conferring by telephone with Timothy Belz re: Kennedy's opinion on differing treatment of religious organizations by Gov't.

2014-07-05      0.4      participation on email string re: third-party administrators and footnote 9 solution to what can be required of religious organizations.

2014-07-07      0.5      conferring by telephone with Timothy Belz re: preparation of reply brief.

2014-07-09      0.3      participation in email string re: our characterization of substantial religious burden.

2014-07-12      1.2      reviewing proposed brief amici by Christian Legal Society (Kim Colby) and sending two emails to Timothy Belz with critical comments on same.

2014-07-14      4.4      reviewing and proposing edits to draft Reply Brief of Timothy and Matt Belz.

2014-07-15      4.9      researching some points of law; finish review and proposed edits to draft of Reply Brief; sending edits via email to Timothy Belz.

2014-07-18      0.3      exchanging emails with Timothy Belz re: latest HHS directive to disclose to employees any withholding of contraception coverage.

2014-07-21      0.3      exchanging emails with Timothy Belz re: communication from counsel for Government w/r/t Government working out nationwide response to impact of Hobby Lobby decision on religious nonprofits.

2014-08-01     0.3     exchanging emails with Timothy Belz re: new proposed IRS tax forms bearing on ACA responsibilities and religious nonprofit corporations.

2014-08-18     0.4     exchanging emails with Timothy Belz re: draft stipulation w/r/t new briefing schedule; emails on M. Lederman's blog post on the case or controversy left after the Wheaton College solution.

2014-08-20     0.3     more exchange of email re: M. Lederman's posts and review of filings in 10th Circuit in similar cases.

2014-08-22     0.4     receiving new proposed final regulations release by Gov't re: the Wheaton College order; sending email to Tim Belz regarding same.

2014-08-23     1.0     studying new proposed final regulations; sending half dozen emails to Tim Belz regarding whether Sharpe Holdings if still complicit in wrongdoing such that there is still a RFRA claim and case is not moot.

2014-08-25     0.3     exchange of emails re: burden on the Government to make the first move concerning the new IFRs.

2014-11-07     0.5     conferring by telephone w/ Timothy Belz re: Eighth Cir setting and panel, setting in Dordt College case on same day; plans to moot the arguments on day before and precedent.

2014-11-17     0.9     receiving and reading email traffic about questions to expect at oral argument; drafting email reply and commentary in answer to questions.

2014-11-24     2.2     studying Gov't Reply Brief of Nov. 18th and preparing memo for T. Belz with suggestions for hearing and oral argument; sending e-mail to T. Belz transmitting same.

2014-11-26     1.4     listening to audio recording of oral argument in Third Circuit; making notes of things to do and not do in Eighth Circuit and pass on to Timothy Belz.

2014-12-08     2.2     listening to audio recording of oral argument in Seventh Circuit; making notes of questions to prepare for in Eighth Circuit argument.

2014-12-09     5.4     travel to Clayton, MO, to moot Belz and Greg Baylor (ADF); meeting with Tim & Matt Belz, and Greg Baylor to discuss how best to argue case; mooting Belz and Baylor for Eight Circuit oral argument.

2015-01-21     0.3     exchange of email w/ T. Belz re: letter to circuit panel re: new opinion in Holt v. Hobbs.

2015-02-12     1.3     exchanging emails with Timothy Belz re: Third Circuit decision in Geneva College, and reading new opinion.

2015-02-13     1.4     exchanging several email w/ T. Belz about refining Rule 28(j) letter; reading and distinguishing Bowen v. Roy.

2015-03-09     1.4     email from Greg Baylor, ADF, concerning SCOTUS' gvr of the Notre Dame case decided by the Seventh Circuit; discussion via email Tim Belz, G. Baylor, and Mark Rienzi concerning what to put into a Rule 28(j) letter to Eighth Circuit where our appeal is pending.

2015-03-10     0.5     reviewing and providing edits on draft Rule 28(j) letter by T. Belz; reviewing draft Rule 28(j) letter by Mark Rienzi.

2015-04-28     0.5     reviewing gvr by Sup. Ct., reviewing three drafts of Rule 28(j) letter by T. Belz.

2015-05-20     0.4     reviewing Seventh Circuit's opinion in Notre Dame case; exchanging emails with T. Belz.

2015-05-21     1.1     reviewing opinions by judges of D.C. Circuit Court of Appeals in denial of petition for rehearing en banc; sending email to T. Belz concerning anticipated Rule 28j letter.

2015-05-28     1.0     sending T. Belz via email Becket Funds editorial on HHS recent release of accommodation for Insurance Companies w/r/t no need to provide full array of contraceptives; exchange of email re: Governments most recent Rule 28(j) Letter; reviewing draft letter, making suggested edits and returning letter to T. Belz.

2015-06-23     1.6     reading with care latest decision against our position, in the *East Texas Baptist University* case in the Fifth Circuit court of appeals.

2015-06-25     0.4     reading Government's Letter; exchanging emails with Tim Belz regarding Government's Rule 28(j) letter.

2015-06-26     1.2     conferring by telephone with T. Belz re: 28(j) response; drafting letter for T. Belz's examination and filing come Monday.

2015-06-30     0.3     reviewing drafts of Rule 28j letter in reply to *East Texas Baptist* decision.

2015-07-09     0.4     reviewing draft of Rule 28j letter on *Zubik* disposition in SCOTUS, and returning e-mail with suggested edits.

2015-07-10     0.3     receiving from HHS recent regulatory changes, and forwarding them to T. Belz.

2015-07-15     0.3     working w/ T. Belz on 28j reply to Tenth Circuit opinion in Little Sisters of the Poor.

2015-08-08     0.4     exchanging email with T. Belz re:  Rule 28j letter in reply to Second Circuit opinion.

2015-08-09     2.8     reading with care Second Circuit opinion; composing Rule 28j letter; sending series of emails to Tim and Matt Belz; sending email to T. Belz and Greg Baylor of ADF on TPA not subject to Government's authority because of ERISA.

2015-08-10      2.1      reading T. Belz email and draft 28j letter; composing new letter and sending to T. Belz via email; revising third draft of letter.

2015-08-28      0.3      reading T. Belz email and draft 28j letter in Michigan Catholic Conference decision by 6th Circuit Court of Appeals; sending reply email with suggestions.

2015-09-11      0.4      reading T. Belz email and draft 28j letter in Grace Schools v. Burwell, 7th Cir., and sending suggestions.

2015-09-12      0.2      exchange of emails with T. Belz on 28j letter.

2015-09-17      0.9      reading opinions of Eighth Circuit panel in this case and Dordt College case; conferring by phone with T. Belz concerning opinion and next moves.

2015-09-20      0.7      composing email to T. Belz re:  posing questions concerning arrangements with Becket Fund should Government appeal; laying out argument concerning need to show cause-in-fact as part of the prima facie claim.

2015-10-31      0.4      exchanging emails with T. Belz re:  deadlines for petition of rehearing en banc and petition for certiorari.

2015-11-03      0.3      exchange of emails re: DOJ not seeking rehearing in Circuit.

2015-11-06      0.3      exchange of emails re: grant of cert. by SCOTUS in related cases from other circuits.

2015-12-15      0.5      receiving a viewing Government's Petition for Writ of Certiorari; sending email to T. Belz regarding response.

2015-12-17      1.0      reading with care Government's Petition for Writ of Certiorari and sending detailed e-mail to Tim and Mat Belz urging filing of a Reply Brief and rationale.

2015-12-22      1.3      writing memo concerning Government's claim that there is no "substantial burden" and that RFRA claimants have to do more than assert unilateral claim of "burden," by suggesting we agree that RFRA claimants have to show, if challenged, both sincerity and that claimant is religious; composing e-mail transmitting attached memo to Tim and Matt Belz and Dave Melton.

2016-01-25      0.3      exchange of e-mails with Tim and Matt Belz re: suggesting edits to draft Brief in Opposition to Government's petition for certiorari.

2016-01-26      4.2      editing draft Brief in Opposition; sending email with attachment to Tim and Matt Belz.

2016-01-29      0.3      exchange of emails with T. Belz re: oral argument setting in SCOTUS and our final reply brief.

2016-03-29      0.5      taking note of SCOTUS' request for add'l briefing in Zubic; email exchanges with T. Belz, M. Bela and D. Melton concerning same.

2016-03-30      0.4      continuing with discussion with respect to responding to SCOTUS' thinking and how to respond.

2016-03-31      0.4      reviewing email and attachment from T. Belz re: does SCOTUS order pertain to self-insured plans or not; sending email reply w/ my advice.

2016-04-08      0.3      conferring by phone with T. Belz re: SCOTUS' new briefing schedule and possible replies by DOJ, Becket and ADF.

2016-05-16      1.1      reading SCOTUS' per curium opinion and GVR; reading and participating in email string w/r/t what this means and our arguments on remand.

2016-05-17      0.5      continued email exchanges with T. Belz re: Court's opinion and approach to Circuit panel.

2016-07-21      0.6      reading Government's status report and emails from T. Belz and Dave Melton; sending emails concerning how to proceeding given Government's intent to impose duty on TPA.

2016-07-27      0.5      conferring by phone with Tim Belz re: Sharpe Holdings' response to Government's status report; strategy at this time to Government's indicated intent to charge TPA; exchange of emails with T. Belz re: how to proceed on Status Report.

2016-07-30      0.3      composing email to T. Belz regarding prompting ruling in Circuit over Gov'ts claim that it has authority to order TPA to provide contraception.

2016-08-03      0.4      reviewing T. Belz email and attached order from Circuit; sending email urging motion after next status report Oct. 7.

2016-10-26      0.3      conferring by phone with T. Belz re:  possible challenge to DOJ's status report suggesting position contra to ERISA, thus getting a ruling out of the Circuit panel.

2016-12-08      0.3      reviewing email from T. Belz and attached Order from Circuit Panel granting extension of time to file status report, and requesting that next report address plaintiffs' status as self-insured.

2017-01-10      0.3      reviewing email from T. Belz and attached DOJ Status Report; sending reply email.

2017-01-20      0.3      locating the new executive order by President Trump on the ACA; sending to T. Belz via email.

2017-01-21      0.2      exchanging emails with T. Belz on new executive order by President and implications for resolving this lawsuit.

2017-04-25      0.3      exchanging emails with Timothy Belz re: word from DOJ on Trump Administration position on contraceptive mandate and RFRA suits post Zubik order.

2017-04-27     0.6     reviewing notes of conference call with Acting Solicitor General; reviewing emails from T. Belz and Dave Melton; sending two emails with my comments on SO's inadequate offer to settle.

2017-04-28     0.3     sending email with commentary on the DOJ proposed settlement; discussion with Greg Baylor counsel for Dordt College.

2017-04-29     0.2     exchange of emails with T. Belz on response to DOJ settlement offer.

2017-05-01     0.2     reviewing email from T. Belz and attachments re: status report and our proposed reply; sending reply email.

2017-05-03     0.4     exchanging and forwarding emails and attachments to T. Belz concerning forthcoming Trump Executive Order; comparing leaked EO with the Ex Order as signed.

2017-05-04     0.3     exchanging emails concerning EO as issued; forwarding statement by Secretary of HHS (Price) on his response to the EO.

2017-06-01     0.4     sending e-mail to Tim Belz and Dave Melton re: notice on OMB webpage concerning review of HHS interim final rule to accommodate religious and moral objections; sending link to same w/r/t leaked copy of HHS interim final rule; skimming the proposed new rule.


Total hours:     71.8

| Principal Tasks | Dates | T. Belz | M. Belz | C. Esbeck | Totals |
|---|---|---|---|---|---|
| **District Court** | | | | | |
| Complaint, joinder, etc. | 7.9.12 to 11.19.13 | 40.2 | 21.9 | 4.8 | 66.9 |
| Prel. inj. brief, reply, oral argument, etc. | 11.21.13 to 12.25.13 | 69.3 | 76.2 | 0 | 145.5 |
| Supp. authorities | 12.26.13 to 12.27.13 | 1.9 | 0.5 | 0 | 2.4 |
| **Total:** | | **111.4** | **98.6** | **4.8** | **214.8** |
| | | | | | |
| **Eighth Circuit Prior To Supreme Court** | | | | | |
| Initial correspondence and briefing | 3.25.14 to 8.6.14 | 149.3 | 88.7 | 13.8 | 251.8 |
| Supplemental briefing | 8.14.14 to 11.3.14 | 47.7 | 43.5 | 2.7 | 93.9 |
| Oral argument, moot, preparation, etc. | 11.7.14 to 12.10.14 | 58.8 | 31.5 | 12.6 | 102.9 |
| 28(j) Letters, 8th Cir. Decision, etc. | 1.23.15 to 11.3.15 | 62.7 | 41.1 | 19.5 | 123.3 |
| **Total:** | | **318.5** | **204.8** | **48.6** | **571.9** |
| | | | | | |
| **U.S. Supreme Court** | | | | | |
| Zubik Amicus | 11.10.15 to 1.8.16 | 41.2 | 22.6 | 0 | 63.8 |
| Response Cert Petition | 1.12.16 to 1.28.16 | 19.8 | 14.5 | 9.3 | 43.6 |
| **Total:** | | **61** | **37.1** | **9.3** | **107.4** |
| | | | | | |
| **Eighth Circuit After Remand** | | | | | |
| Correspondence, research, etc. | 2.15.16 to 8.3.16 | 37.6 | 0 | 0 | 37.6 |
| RFI Response | 9.13.16 to 9.20.16 | 13.5 | 5.1 | 0 | 18.6 |
| Status report work, etc. | 10.3.16 to 6.30.17 | 31.8 | 7.1 | 9.1 | 48 |
| Fee petition and settlement work, etc. | 8.29.17 to 11.6.17 | 51.7 | 24.6 | 0 | 76.3 |
| **Total:** | | **134.6** | **36.8** | **9.1** | **180.5** |
| | | | | | |
| | **Total hours:** | **625.5** | **377.3** | **71.8** | **1074.6** |
| | Rate: | $450.00 | $250.00 | $450.00 | |
| | **Total fees:** | **$281,475.00** | **$94,325.00** | **$32,310.00** | **$408,110.00** |

**Exhibit 2**

No. 15-775

# In the Supreme Court of the United States

---

DEPARTMENT OF HEALTH AND
HUMAN SERVICES, *et al.*,

*Petitioners*,

v.

CNS INTERNATIONAL MINISTRIES, INC. AND
HEARTLAND CHRISTIAN COLLEGE,

*Respondents*.

---

*On Petition for Writ of Certiorari to the
United States Court of Appeals for the Eighth Circuit*

---

## BRIEF FOR THE RESPONDENTS

---

DAVID R. MELTON
General Counsel for CNS
 International Ministries, Inc.
 and Heartland Christian
 College
500 E. Ninth Street
Kansas City, Missouri 64106
(816) 842-6300

TIMOTHY BELZ
 *Counsel of Record*
J. MATTHEW BELZ
Ottsen, Leggat & Belz, L.C.
112 S. Hanley Road
Suite 200
St. Louis, Missouri 63105
(314) 726-2800
tbelz@olblaw.com
jmbelz@olblaw.com

*Counsel for Respondents*

---

**Exhibit 3**

i

## QUESTIONS PRESENTED

1.  Does it substantially burden the Respondents' exercise of religion when the Government forces Respondents, over their sincerely held religious objection, to play an integral role in the provision of health insurance coverage for abortifacient drugs and devices to Respondents' employees?

2. Has the Government met its burden of demonstrating that the so-called "accommodation" for religious nonprofit employers is the least restrictive means of satisfying a compelling governmental interest?

ii

## CORPORATE DISCLOSURE STATEMENT

Both CNS International Ministries, Inc. and Heartland Christian College are religious nonprofit corporations that have no parent corporations. Neither is subject to ownership of any kind by any other corporation.

iii

# TABLE OF CONTENTS

QUESTIONS PRESENTED  . . . . . . . . . . . . . . . . . . .  i

CORPORATE DISCLOSURE STATEMENT  . . . . .  ii

TABLE OF AUTHORITIES  . . . . . . . . . . . . . . . . . .  iv

PROCEEDINGS BELOW  . . . . . . . . . . . . . . . . . . . . .  1

ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

I.   The so-called accommodation is not an
     "opt-out."  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

II.  HCC and CNS ask not to prevent "third parties"
     from   providing   contraceptive   coverage   to
     employees, but that they themselves be left out
     of the Government's scheme  . . . . . . . . . . . . . . . .  8

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

iv

# TABLE OF AUTHORITIES

## CASES

*Berkey v. Third Ave. Ry. Co.*,
  244 N.Y. 84 (1926) . . . . . . . . . . . . . . . . . . . . . . . 4

*Burwell v. Hobby Lobby Stores, Inc.*,
  134 S. Ct. 2751 (2014) . . . . . . . . . . . . . . 2, 6, 8, 10

*Catholic Health Care Sys. v. Burwell*,
  796 F.3d 207 (2d Cir. 2015) . . . . . . . . . . . . . . . . 3

*East Tex. Baptist Univ. v. Burwell*,
  793 F.3d 449 (5th Cir.), *cert. granted*,
  No. 15-35 (Nov. 6, 2015) . . . . . . . . . . . . . . . . . . . 3

*Grace Schools v. Burwell*,
  801 F.3d 788 (7th Cir. 2015) . . . . . . . . . . . . . . . . 3

*Little Sisters of the Poor Home for the Aged v.
  Burwell*, 794 F.3d 1151 (10th Cir.), *cert. granted*,
  Nos. 15-105 and 15-119 (Nov. 6, 2015) . . . . . . . . 3

*McCollum v. Board of Education*,
  333 U.S. 203 (1948) . . . . . . . . . . . . . . . . . . . . . . 4

*Michigan Catholic Conference & Catholic Family
  Servs. v. Burwell*,
  807 F.3d 738 (6th Cir. 2015) . . . . . . . . . . . . . . . . 3

*Priests for Life v. HHS*,
  772 F.3d 229 (D.C. Cir. 2014), *cert. granted*,
  Nos. 14-1453 and 14-1505 (Nov. 6, 2015) . . . . . . 3

*Sharpe Holdings, Inc. v. U.S. Dept. of Health &
  Human Services*, 2:12 CV 92 DDN, 2013 WL
  6858588 (E.D. Mo. Dec. 30, 2013), *aff'd*, 801 F.3d
  927 (8th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . 5

v

*Sharpe Holdings, Inc. v. U.S. Dept. of Health &
      Human Services*,
      801 F.3d 927 (8th Cir. 2015) . . . . . . . . . . . *passim*

*Thomas v. Review Bd. of Ind. Emp't Sec. Div.*,
      450 U.S. 707 (1981) . . . . . . . . . . . . . . . . . . 6, 10

*Tiller v. Atl. Coast Line R. Co.*,
      318 U.S. 54 (1943) . . . . . . . . . . . . . . . . . . . . . 4

*University of Notre Dame v. Burwell*,
      786 F.3d 606 (7th Cir. 2015) . . . . . . . . . . . . . . . 3

*Wheaton College v. Burwell*,
      134 S. Ct. 2806 (2014) . . . . . . . . . . . . . . . . . . 6

*Wheaton College v. Burwell*,
      791 F.3d 792 (7th Cir. 2015) . . . . . . . . . . . . . . . 3

*Zubik v. Burwell*, 778 F.3d 422 (3d Cir.),
      *cert. granted*, Nos. 14-1418 and 15-191
      (Nov. 6, 2015) . . . . . . . . . . . . . . . . . . . . . . 3, 4, 10

**STATUTES AND REGULATIONS**

Religious Freedom Restoration Act of 1993,
      42 U.S.C. 2000bb-2000bb–4 . . . . . . . . . . . . . 1, 2

29 C.F.R. 2590.715-2713A(b)(2) . . . . . . . . . . . . . . 6

45 C.F.R. 147.131(a) . . . . . . . . . . . . . . . . . . . . . . . . 5

**MISCELLANEOUS**

79 Fed. Reg. 51092 (Aug. 27, 2014) . . . . . . . . . . . . 5

*East Tex. Baptist Univ. v. Burwell*, No. 15-35, Govt.
      Brief in Opposition (Sept. 2015) . . . . . . . . . . . . 2

vi

Healthcare.gov, "Why bother with health
    insurance?" https://www.healthcare.gov/young-
    adults/ready-to-apply/ . . . . . . . . . . . . . . . . . . . . . 8

Transcript of Motions Hearing, Dkt. 54, *Roman
    Catholic Archbishop of Wash. v. Sebelius*,
    No. 13-1441 (D.D.C. Nov. 22, 2013) . . . . . . . . . 7

1

## PROCEEDINGS BELOW

Respondents CNS International Ministries, Inc. (CNS) and Heartland Christian College (HCC) are nonprofit religious organizations that offer healthcare coverage to employees through a self-insured plan. *Sharpe Holdings, Inc. v. U.S. Dept. of Health & Human Services*, 801 F.3d 927, 932 (8th Cir. 2015). CNS, which has more than fifty employees, provides full-time residential services to men, women, and children with behavioral problems or who suffer from alcohol or drug dependencies. *Id.* CNS also operates a school that serves the children of individuals in its recovery program, as well as its employees' children. *Id.* at 933. HCC, which has fewer than fifty employees, provides post-secondary higher education to employees and residents of CNS and their dependents. *Id.* Respondents are located in northeast Missouri.

In accordance with their sincerely held religious beliefs, CNS and HCC oppose the use, funding, provision, or support of elective abortions, and they believe that certain contraceptives required under the contraceptive mandate—Plan B, ella, and copper IUDs—can and do provide elective abortions. *Id.* at 935-36. CNS and HCC brought suit alleging that the Government is coercing them to violate their religious beliefs by threatening to impose severe monetary penalties unless they either directly provide coverage for abortifacients through their group health plan or facilitate that objectionable coverage through the "accommodation" process. *Id.* at 936.

The district court for the Eastern District of Missouri granted injunctive relief in favor of CNS and HCC, citing the Religious Freedom Restoration Act of

2

1993 (RFRA), 42 U.S.C. 2000bb to 2000bb–4. 801 F.3d at 936. The Government appealed to the Eighth Circuit but, after filing its notice of appeal, revised the "accommodation" that was in place to permit religious organizations to self-certify using a written instrument to HHS as an alternative to using Form 700. *Sharpe Holdings,* 801 F.3d at 936. The Government called this the "augmented accommodation." *East Tex. Baptist Univ. v. Burwell*, No. 15-35, Govt. Brief in Opposition (Sept. 2015), at 18. CNS and HCC argued that the new rule does "nothing more than coerce [them] into another avenue that violates their religion." *Sharpe Holdings,* 801 F.3d at 936.

The Court of Appeals observed that the Government would impose substantial financial penalties to pressure plaintiffs to commit acts contrary to their religious consciences. *Id.* at 937-38. Following the analysis dictated by this Court in *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014), the court concluded that the Government was substantially burdening the plaintiffs' religious exercise. *Sharpe Holdings*, 801 F.3d at 937-43. The Court of Appeals deferred to the plaintiffs' theological assessment of the morality of complying with the mandate, refusing to second-guess their religious beliefs concerning complicity in sin. *Id*. at 938-39. The Court of Appeals rejected the Government's false contention that the plaintiffs were merely objecting to the acts of third parties, observing that the plaintiffs could not, consistent with their consciences, do what the Government was requiring *them* to do. *Id.* at 942.

The Court of Appeals also held that the Government failed to prove that imposing the mandate upon the

3

plaintiffs was the least restrictive means of advancing a compelling governmental interest. *Id*. at 943-45. The court observed that the plaintiffs had identified various other, less restrictive ways the Government might pursue its interests, and that the Government had failed to prove the inadequacy of these alternatives. *Id*. at 945.

The decision of the Court of Appeals in favor of CNS and HCC created a split among the federal circuits, which had previously only ruled in favor of the Government in similar cases. *See Michigan Catholic Conference & Catholic Family Servs. v. Burwell*, 807 F.3d 738 (6th Cir. 2015); *Grace Schools v. Burwell*, 801 F.3d 788 (7th Cir. 2015); *Catholic Health Care Sys. v. Burwell*, 796 F.3d 207 (2d Cir. 2015); *Little Sisters of the Poor Home for the Aged v. Burwell*, 794 F.3d 1151 (10th Cir.), *cert. granted*, Nos. 15-105 and 15-119 (Nov. 6, 2015); *East Tex. Baptist Univ. v. Burwell*, 793 F.3d 449 (5th Cir.), *cert. granted*, No. 15-35 (Nov. 6, 2015); *Wheaton College v. Burwell*, 791 F.3d 792 (7th Cir. 2015); *University of Notre Dame v. Burwell*, 786 F.3d 606 (7th Cir. 2015); *Zubik v. Burwell*, 778 F.3d 422 (3d Cir.), *cert. granted*, Nos. 14-1418 and 15-191 (Nov. 6, 2015); *Priests for Life v. HHS*, 772 F.3d 229 (D.C. Cir. 2014), *cert. granted*, Nos. 14-1453 and 14-1505 (Nov. 6, 2015).

## ARGUMENT

CNS International Ministries, Inc. and Heartland Christian College do not oppose the Government's request that the Court dispose of their petition in accordance with the forthcoming decision in *Zubik v. Burwell*, 778 F.3d 422, *cert. granted*, No. 14-1418 (Nov.

4

6, 2015), and the consolidated cases.[1] However, the persistent mischaracterizations in the Government's petition—of how the alternative compliance mechanism works and of the Respondents' arguments—warrant a brief response.

The Government repeatedly and incorrectly characterizes the accommodation as an "opt-out" and describes the objections of CNS and HCC as bearing on the actions of "third parties" and not their own. These characterizations must be nipped in the bud: "A phrase begins life as a literary expression; its felicity leads to its lazy repetition; and repetition soon establishes it as a legal formula, undiscriminatingly used to express different and sometimes contradictory ideas." *Tiller v. Atl. Coast Line R. Co.*, 318 U.S. 54, 68 (1943). "Metaphors in law are to be narrowly watched," Justice Cardozo warned in *Berkey v. Third Ave. Ry. Co.*, 244 N.Y. 84, 94 (1926), and "[a] rule of law should not be drawn from a figure of speech." *McCollum v. Board of Education*, 333 U.S. 203, 247 (1948) (Reed, J., dissenting).

---

[1] The Eighth Circuit Court of Appeals issued its opinion on September 17, 2015. This Court granted certiorari in the cases from the other circuits on November 6, 2015. The Government then waited until the 89th day (December 15, 2015) after the Eighth Circuit's decision in this case to file its petition for a writ of certiorari, making consolidation with the existing cases unlikely and effectively thwarting any possibility that CNS and HCC would be able to defend the Court of Appeals decision in their favor before this Court.

5

## I. The so-called accommodation is not an "opt-out."

The Government, over and over, characterizes the accommodation as an "opt-out." Pet. for Cert., pp. I, 5, 7, 8, 9, 10. This is not by convenience but as a form of argument: how can the Respondents object to merely saying they object?

The accommodation is not an opt-out, however, and neither the district court nor the Eighth Circuit Court of Appeals ever characterized it that way. *Sharpe Holdings, Inc. v. U.S. Dept. of Health & Human Services*, 2:12 CV 92 DDN, 2013 WL 6858588 (E.D. Mo. Dec. 30, 2013), *aff'd*, 801 F.3d 927 (8th Cir. 2015). The Government's sleight of hand results in confounding rather than enlightening the issues presented.

The accommodation's true nature is revealed when it is analyzed next to the Government's offer of exemption for objecting churches. The church exemption requires nothing—objecting churches and their integrated auxiliaries simply do not have to comply with the contraceptive mandate. 45 C.F.R. 147.131(a). This is an opt-out.

The accommodation requires much more, in at least three related ways. First, to invoke the accommodation, HCC and CNS must inform either their Third-Party Administrator (TPA) or the Government that they are availing themselves of the accommodation. 79 Fed. Reg. 51092, 51094-95 (Aug. 27, 2014). Second, if HCC and CNS are availing themselves of the supposedly less restrictive written instrument that goes straight to the Government, they must identify their TPA therein. *Id*. Third, tying everything together, the Government then

6

requires that the TPA provide or arrange for abortifacient coverage to employees of HCC and CNS. 29 C.F.R. 2590.715–2713A(b)(2); *Wheaton College v. Burwell*, 134 S. Ct. 2806, 2814 n.6 (2014) (Sotomayor, J., dissenting) ("Wheaton's third-party administrator bears the legal obligation to provide contraceptive coverage only upon receipt of a valid self-certification."). This is all of one package despite the Government's attempt to claim otherwise.

This scheme creates a mirage of attenuation from the immoral act, but in the end the evildoing remains entirely dependent upon the actions of HCC and CNS.[2] The moment HCC or CNS hires an employee, abortifacient coverage is guaranteed for that person whether the accommodation is utilized or not. And when the employment ends, the abortifacient coverage terminates with the rest of the insurance coverage.

The abortifacient coverage thus attaches as a parasite to the plan offered by CNS and HCC. Part of the employee compensation package—intended as a beneficence for the well-being of employees—is

---

[2] *Hobby Lobby* forecloses the attenuation argument entirely. As the Court explained, this argument "implicates a difficult and important question of religion and moral philosophy, namely, the circumstances under which it is wrong for a person to perform an act that is innocent in itself but that has the effect of enabling or facilitating the commission of an immoral act by another." 134 S. Ct. at 2778. After a plaintiff draws a line between religiously permissible and impermissible conduct, "'it is not for [courts] to say that the line [is] an unreasonable one.'" *Id.* (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 715 (1981)); *see also Sharpe Holdings*, 801 F.3d at 942 (rejecting attenuation argument).

7

appropriated by the Government and turned into an act the Respondents believe is *malum in se*. The objectionable abortifacient coverage is actuated when individual employees are hired and is coterminous with their employment. The health plan of HCC and CNS is thus the integral *sine qua non* foundation of the Government's mandate. This is exactly the facilitation of evil that the Respondents object to as a matter of sincerely held religious belief.

The Government has previously admitted in a similar challenge that the objectionable coverage is part of the objector's health plan. *See* Transcript of Motions Hearing at 18, Dkt. 54, *Roman Catholic Archbishop of Wash. v. Sebelius*, No. 13-1441 (D.D.C. Nov. 22, 2013) (admitting that "technically, the [coverage] is part of [the religious objector's] plan"); *see also Id*. at 16-17 (admitting that "services become available to the employees by virtue of their participation in the religious [objector's] plan"); *Sharpe Holdings*, 801 F.3d at 942 ("Here, the third parties are TPAs, who will provide the objectionable coverage to CNS and HCC's employees *through the group health plan*.") (emphasis added).

The Government's characterization of the accommodation as an opt-out is an attempt to frame this case as HCC and CNS taking an unreasonable position despite conciliatory efforts by the Government. This is not what has happened. Religious objectors like Respondents have asked to be left out of the provision of contraceptives (here, abortifacients) to their employees, and the Government's only response has been to add another link in the causal chain between

8

religious entities and the provision of contraceptives to employees.

## II. HCC and CNS ask not to prevent "third parties" from providing contraceptive coverage to employees, but that they themselves be left out of the Government's scheme.

CNS and HCC have never sought "to prevent the government from arranging for third parties to provide separate coverage to [employees]." Pet. for Cert., pp. I, 10. But they do ask the courts to recognize that RFRA provides refuge from laws that dragoon them into participating, collaborating, and serving as an integral mechanism in the provision of coverage to their employees for abortifacient products, against religious conscience.

CNS and HCC have pointed often to the Government's "most straightforward" way of achieving its goals—just providing contraceptives itself through such mechanisms as Title X or tax incentives. *Hobby Lobby*, at 2780. Alternatively, CNS and HCC have argued that the Government could allow employees of religious objectors to obtain subsidized coverage from *true* third-parties on the Government's own exchanges. The Government has assured the Nation's young adults that using the exchanges "can be easy and fast" and "[doesn't] take much time at all." Healthcare.gov, "Why bother with health insurance?" https://www.healthcare.gov/young-adults/ready-to-apply/ (last visited Jan. 21, 2016).

Instead of these approaches, the Government continues to insist that the only way the United States

9

can satisfactorily distribute abortifacients is with the forced participation of CNS and HCC, their employee health insurance plan, and their TPA. The Government seeks to coerce CNS and HCC to participate by providing information about their plan and TPA, which the Government then exploits to coerce Respondents' TPA to take action contrary to the terms of the plan and religious beliefs of CNS and HCC.

These TPAs are the "third parties" the Government refers to, as if they were autonomous from their relationship with Respondents and the health plans they, the TPAs, administer. In reality, the TPAs are agents of those that pay for the health plans, and entities such as CNS and HCC have established contractual relationships with their TPAs. *Sharpe Holdings,* 801 F.3d at 942 ("Here, the third parties are TPAs, who will provide the objectionable coverage to CNS and HCC's employees *through the group health plan*.") (emphasis added).

The objection of CNS and HCC is not to "third parties" or even the Government itself providing abortifacient coverage to affected women. Their objection is rather that, even under the augmented accommodation, any health plan of CNS and HCC must serve as a conduit or platform for the delivery of objectionable products and services to their plan beneficiaries. The TPA for CNS and HCC will provide the objectionable coverage to CNS and HCC employees only by virtue of their enrollment in the CNS and HCC plan and only so long as they are enrolled in that plan.

This is the facilitation, participation and complicity that Respondents object to as a matter of sincerely held religious beliefs, and those beliefs cannot be gainsaid

10

by civil officials. *Hobby Lobby*, 134 S. Ct. at 2778 (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 715 (1981)).

## CONCLUSION

This Court should hold the petition for a writ of certiorari in this case pending the decision in *Zubik v. Burwell*, No. 14-1418, and the consolidated cases, and then dispose of the petition as appropriate in light of the Court's decision in those cases.

Respectfully submitted.

TIMOTHY BELZ
 *Counsel of Record*
J. MATTHEW BELZ
Ottsen, Leggat & Belz, L.C.
112 S. Hanley Road, Suite 200
St. Louis, Missouri 63105
(314) 726-2800
tbelz@olblaw.com
jmbelz@olblaw.com

DAVID R. MELTON
General Counsel for CNS
 International Ministries, Inc. and
 Heartland Christian College
500 E. Ninth Street
Kansas City, Missouri 64106
(816) 842-6300

*Counsel for Respondents*

JANUARY 2016

Nos. 14-1418, 14-1453, 14-1505,
15-35, 15-105, 15-119, & 15-191

In The
# Supreme Court of the United States

———— ◆ ————

DAVID A. ZUBIK, ET AL.,

*Petitioners,*

v.

SYLVIA BURWELL, SECRETARY OF HEALTH
AND HUMAN SERVICES, ET AL.,

*Respondents.*

———— ◆ ————

**On Writs Of Certiorari To The
United States Courts Of Appeals
For The Third, Fifth, Tenth, And
District Of Columbia Circuits**

———— ◆ ————

**BRIEF OF CNS INTERNATIONAL MINISTRIES,
INC. AND HEARTLAND CHRISTIAN COLLEGE
AS *AMICI CURIAE* IN SUPPORT OF PETITIONERS**

———— ◆ ————

TIMOTHY BELZ
    *Counsel of Record*
J. MATTHEW BELZ
OTTSEN, LEGGAT & BELZ, L.C.
112 S. Hanley Road, Suite 200
St. Louis, Missouri 63105
(314) 726-2800
tbelz@olblaw.com
jmbelz@olblaw.com

DAVID R. MELTON
General Counsel for CNS
    International Ministries, Inc.
    and Heartland Christian College
500 E. Ninth Street
Kansas City, Missouri 64106
(816) 842-6300

*Counsel for Amici Curiae*

**Exhibit 4**

i

**CORPORATE DISCLOSURE STATEMENT**

Both CNS International Ministries, Inc. and Heartland Christian College are religious nonprofit corporations that have no parent corporations. Neither is subject to ownership of any kind by any other corporation.

## TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT.......   i

TABLE OF AUTHORITIES .................................   iii

INTEREST OF THE *AMICI CURIAE* .................   1

SUMMARY OF THE ARGUMENT......................   2

ARGUMENT.........................................................   4

    THE GOVERNMENT HAS EIGHT TIMES
CLAIMED THAT ITS THEN-CURRENT
VERSION OF THE MANDATE WAS THE
LEAST RESTRICTIVE MEANS AND EACH
TIME THEREAFTER ADMITTED THAT
LESS RESTRICTIVE MEANS EXIST.............   4

  I.  The Religious Employer (Church) Ex-
emption and Its Revisions .........................   4

  II.  The Temporary Enforcement Safe Harbor ...   7

 III.  The "Accommodation"................................   11

 IV.  The Augmented "Accommodation" ...........   14

  V.  The "Accommodation" for For-Profit En-
tities..........................................................   15

CONCLUSION....................................................   16

iii

TABLE OF AUTHORITIES

Page

CASES:

*Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014)......................................11, 13, 15, 16, 17

*Little Sisters of the Poor v. Sebelius*, 134 S. Ct. 1022 (2014)............................................................13

*Sharpe Holdings, Inc. v. U.S. Dept. of Health & Human Services*, 2:12 CV 92 DDN, 2013 WL 6858588 (E.D. Mo. Dec. 30, 2013), *aff'd*, 801 F.3d 927 (8th Cir. 2015) .......................................1, 2

*Wheaton Coll. v. Burwell*, 134 S. Ct. 2806 (2014)......................................................................13


STATUTES AND REGULATIONS:

Health Care and Education Reconciliation Act of 2010, Public Law 111-152 .......................................2

Patient Protection and Affordable Care Act, Public Law 111-148 ................................................2

26 C.F.R. 54.9815-2713A .......................................12, 14

26 U.S.C. 6033 ....................................................5, 6, 7

29 C.F.R. 2590.715-2713A ..........................................12

42 U.S.C. 2000bb-1 ................................................2

42 U.S.C. 2000bb-3 ................................................4

45 C.F.R. 147.131................................................7, 12

iv

TABLE OF AUTHORITIES – Continued

Page

MISCELLANEOUS:

75 Fed. Reg. 41726 (July 19, 2010) ..............................5

76 Fed. Reg. 46621 (Aug. 3, 2011) ...............................5

77 Fed. Reg. 8725 (Feb. 15, 2012) ...........................6, 8

78 Fed. Reg. 39870 (July 2, 2013) ...................7, 11, 12

79 Fed. Reg. 51092 (Aug. 27, 2014) ..........................14

79 Fed. Reg. 51118 (Aug. 27, 2014) ...........................15

Advance Notice Of Proposed Rulemaking
    (Anprm) (March, 21, 2012), https://www.
    federalregister.gov/articles/2012/03/21/2012-
    6689/certain-preventive-services-under-the-
    affordable-care-act ......................................................9

Alden J. Bianchi, "HHS/CCIIO Revises Tem-
    porary Enforcement Safe Harbor on Con-
    traceptive Coverage Offered by Religiously
    Affiliated Tax-Exempt Entities," https://www.
    mintz.com/newsletter/2012/Advisories/2194-
    0812-NAT-ELB/index.html ...............................10, 11

Guidance on the Temporary Enforcement Safe
    Harbor, Feb. 10, 2012, http://www.nacua.org/
    documents/HHS_HealthInsurance_Guidance.
    pdf.............................................................................9

Guidance on the Temporary Enforcement Safe
    Harbor, June 28, 2013, https://www.cms.gov/
    CCIIO/Resources/Regulations-and-Guidance/
    Downloads/preventive-services-guidance-6-28-
    2013.pdf..................................................................11

TABLE OF AUTHORITIES – Continued

Page

Healthcare.gov, "Why bother with health
insurance?" https://www.healthcare.gov/young-
adults/ready-to-apply/..............................................17

Edward Whelan, *The HHS Contraception Man-
date vs. The Religious Freedom Restoration
Act*, 87 Notre Dame L. Rev. 2179 (2012) .................6

Women's Preventive Services Coverage and
Non-Profit Religious Organizations, https://
www.cms.gov/cciio/resources/fact-sheets-and-
faqs/womens-preven-02012013.html......................15

## INTEREST OF THE *AMICI CURIAE*[1]

CNS International Ministries, Inc. (CNS Ministries) and Heartland Christian College (HCC) are nonprofit religious organizations that offer healthcare coverage to employees through a self-insured plan. CNS Ministries and HCC, in accordance with their sincerely held religious beliefs, oppose the use, funding, provision, or support of abortion on demand, and they believe that certain contraceptives required under the contraceptive mandate – Plan B, ella, and copper IUDs – can and do cause abortions on demand.

CNS Ministries and HCC challenged the mandate and the so-called "accommodation" for religious nonprofits in the District Court for the Eastern District of Missouri, and obtained an injunction against enforcement of the mandate against them. *Sharpe Holdings, Inc. v. U.S. Dept. of Health & Human Services*, 2:12 CV 92 DDN, 2013 WL 6858588, at *3 (E.D. Mo. Dec. 30, 2013), *aff'd*, 801 F.3d 927 (8th Cir. 2015). The Government appealed to the Eighth Circuit Court of Appeals, which affirmed the district court's decision, including ruling in favor of CNS Ministries and HCC as to the "accommodation"

---

[1] The parties consented to this filing. Their letters of consent are on file with the Clerk. In accordance with Rule 37.6, *amici* state that no counsel for any party authored this brief in whole or in part, and that no person or entity, other than the *amici* and their counsel, has contributed monetarily to the brief's preparation or submission.

2

as it had been augmented in 2014. *Id*. The Government filed a petition for a writ of certiorari in the Supreme Court, No. 15-775 (Dec. 15, 2014), and asked the Court to hold it pending the Court's decision in *Zubik v. Burwell* and the consolidated cases. The Government's delay in filing its petition until 89 days after the decision of the Court of Appeals made consolidation with the existing cases unlikely and effectively thwarted any possibility that CNS Ministries and HCC would be able to defend the Eighth Circuit's decision in their favor before this Court.

The interest of the *amici curiae* is in the preservation of their injunction as affirmed by the Court of Appeals.

————————◆————————

## SUMMARY OF THE ARGUMENT

The Religious Freedom Restoration Act (RFRA) requires the Government to show that the contraceptive mandate is "the least restrictive means of furthering [its] compelling governmental interest." 42 U.S.C. 2000bb-1(b)(2).

Since the Patient Protection and Affordable Care Act (ACA)[2] was enacted in March of 2010, the means by which the Government enforces its regulatory

---

[2] The ACA consists of the Patient Protection and Affordable Care Act, Public Law 111-148, and the Health Care and Education Reconciliation Act of 2010, Public Law 111-152.

contraceptive mandate has been altered at least eight times. Each time, prior to amendment, the Government had insisted that it was already employing the least restrictive means of furthering its interests.

At first, opposition from individual and corporate religious objectors forced the Government to back off. At each of the remaining stages of the Government's regulatory retreat, courts, high and low, have found the Government's least-restrictive-means iterations to come up short.

Each time the contraceptive mandate has been altered to address religious concerns, detailed *infra*, the Government's prior claim that it was employing the least restrictive means has been proven wrong. The Government has again and again backed off, but only as little as possible each time. The Government has not taken RFRA's *least* restrictive means requirement seriously but instead has repeatedly tried to use the *most* restrictive means it can get away with.

The Government now claims that, after eight stingy, parsimonius backward steps, it has again identified the absolutely irreducible least restrictive means of enforcing its regulatory contraceptive mandate. Given the panoply of alternative means still available to and untried by the Government, its current version is no more credible than those rejected in the past.

———————◆———————

## ARGUMENT

**THE GOVERNMENT HAS EIGHT TIMES CLAIMED THAT ITS THEN-CURRENT VERSION OF THE MANDATE WAS THE LEAST RESTRICTIVE MEANS AND EACH TIME THEREAFTER ADMITTED THAT LESS RESTRICTIVE MEANS EXIST.**

Since 2010, the Government has successively claimed, at least eight times, that the then-current version of the contraceptive mandate was the least restrictive means of furthering governmental interests. These claims have been followed by public outcries and court cases, which in turn have been followed by the Government successively admitting that less restrictive means indeed exist and would be utilized. This history, detailed *infra*, undermines any claim by the Government today that it has presented objecting religious claimants or the Court with the least restrictive means.

## I.   The Religious Employer (Church) Exemption and Its Revisions

Presumably, the contraceptive mandate, as originally promulgated in 2010, was considered by the Government to be the least restrictive means of achieving its interests. RFRA and its least restrictive means test, "appl[y] to all Federal law, and the implementation of that law, whether statutory or otherwise . . . " 42 U.S.C. 2000bb-3. Accordingly, the Government was obligated to employ the least restrictive means in its enforcement of the contraceptive

5

mandate from the beginning, and citizens have had a right since the interim final rules establishing the mandate were published, in July 2010 (75 Fed. Reg. 41726), to expect the Government to do so.

In August 2011, however, the Government acknowledged that the contraceptive mandate burdens religious exercise, and it announced a narrow exemption for houses of worship. This appears to be the result of "considerable feedback" from commenters, including from "religious employers." 76 Fed. Reg. 46621, 46623 (Aug. 3, 2011). "In the Departments' view, it is appropriate that HRSA [Health Resources and Services Administration], in issuing these Guidelines, takes into account the effect on the religious beliefs of certain religious employers if coverage of contraceptive services were required in the group health plans in which employees in certain religious positions participate." *Id*.

The amended interim final regulations specified that, for purposes of this exemption, a religious employer is one that: (1) Has the inculcation of religious values as its purpose; (2) primarily employs persons who share its religious tenets; (3) primarily serves persons who share its religious tenets; and (4) is a nonprofit organization described in section 6033(a)(1) and section 6033(a)(3)(A)(i) or (iii) of the U.S. Code. Section 6033(a)(3)(A)(i) and (iii) of the Code refer to churches, their integrated auxiliaries, and conventions or associations of churches, as well as to the exclusively religious activities of any

religious order. 26 U.S.C. 6033(a)(3)(A)(i), (iii); 77 Fed. Reg. 8725, 8726 (Feb. 15, 2012).

The Government specifically stated that RFRA and the least restrictive means test were satisfied by the religious employer exemption:

> Likewise, this approach complies with the Religious Freedom Restoration Act, which generally requires a federal law to not substantially burden religious exercise, or, if it does substantially burden religious exercise, to be the least restrictive means to further a compelling government interest.

*Id.* at 8729. The Government assumed the religious exemption would take care of any religious concerns. The Government claimed, after its false start in 2010, to have determined the least restrictive means for furthering its interests.

But the exemption was soon shown to be far too narrow. As the head of Catholic Charities USA observed, "the ministry of Jesus Christ himself" would not qualify for the exemption given that he did not confine his ministry to co-religionists.[3]

In response to complaints such as these, the Government found in July 2013 that *it did* have a less restrictive means for accomplishing its interest,

---

[3] Edward Whelan, *The HHS Contraception Mandate vs. The Religious Freedom Restoration Act*, 87 Notre Dame L. Rev. 2179, 2180 (2012).

and it broadened the religious exemption to include, essentially, just the fourth prong of the original test: "a 'religious employer' is an organization that is organized and operates as a nonprofit entity and is referred to in section 6033(a)(3)(A)(i) or (iii) of the Internal Revenue Code of 1986, as amended." 45 C.F.R. 147.131. This means the exemption applied to churches and their integrated auxiliaries, without further inquiry.

Previously, churches that ran schools and soup kitchens would not have qualified for the exemption, as their charity was not limited to serving people of their own faith. "Specifically," the Government states in the Federal Registry, "[these changes] were intended to ensure that an otherwise exempt plan is not disqualified because the employer's purposes extend beyond the inculcation of religious values or because the employer hires or serves people of different religious faiths." 78 Fed. Reg. 39870, 39874 (July 2, 2013).

## II.   The Temporary Enforcement Safe Harbor

The religious exemption, even as broadened, left the vast majority of religious nonprofits unprotected against the mandate. A religiously-oriented food bank, for instance, was not a church and therefore was subject to the mandate unless another exemption applied.

Before broadening the religious employer (church) exemption in 2013 (*see* Section I *supra*), the Government had altered its course another way and

instituted a "temporary enforcement safe harbor" for certain religious nonprofits. 77 Fed. Reg. 8725, 8729 (Feb. 15, 2012). With the "temporary safe harbor," the Government promised not to enforce the mandate against religious nonprofits for at least 18 months. The safe harbor was made available to entities that satisfied all of the following criteria:

1.  The organization is organized and operates as a nonprofit entity.

2.  From February 10, 2012 onward, contraceptive coverage has not been provided at any point by the group health plan established or maintained by the organization, consistent with any applicable State law, because of the religious beliefs of the organization.

3.  The group health plan established or maintained by the organization (or another entity on behalf of the plan, such as a health insurance issuer or third-party administrator) must provide to participants a notice which states that contraceptive coverage will not be provided under the plan for the first plan year beginning on or after August 1, 2012.

4.  The organization self-certifies that it satisfies criteria 1-3 above, and documents

9

its self-certification in accordance with the procedures detailed herein.[4]

During this safe harbor period, on March 21, 2012, the Government proposed a permanent "accommodation" for certain religious nonprofits.[5] The proposed accommodation would require health insurance issuers of objecting nonprofits to provide contraceptive coverage directly to the participants and beneficiaries covered under the organization's plan with no cost sharing.[6]

On August 15, 2012, the Government admitted, in response to lawsuits, that the safe harbor was too narrow, and so it again found less restrictive means for achieving its interests and broadened the safe harbor to include additional organizations. The Government "clarified" three points:

1. That the "safe harbor is also available to nonprofit organizations with religious objections to some but not all contraceptive coverage . . . "

2. That "group health plans that took some action to try to exclude or limit

_____

[4] Guidance on the Temporary Enforcement Safe Harbor, Feb. 10, 2012, http://www.nacua.org/documents/HHS_HealthInsurance_Guidance.pdf (last visited Jan. 3, 2016).

[5] Advance Notice Of Proposed Rulemaking (Anprm) (March 21, 2012), https://www.federalregister.gov/articles/2012/03/21/2012-6689/certain-preventive-services-under-the-affordable-care-act (last visited Jan. 4, 2016).

[6] Id.

contraceptive coverage that was not suc-
cessful as of February 10, 2012, are not
for that reason precluded from eligibility
for the safe harbor . . . "

3. That the "safe harbor may be invoked
without prejudice by nonprofit organ-
izations that are uncertain whether
they qualify for the religious employer
[church] exemption . . . "[7]

Although billed as a clarification, the changes were
significant. The first bullet point expanded the safe
harbor to entities that did not object to *all* "contracep-
tives," such as the many Protestant organizations
that do not religiously oppose birth control pills but
do oppose the morning after pill. The change offered
in the second bullet point is also important, as the
clarification to which it refers reads as follows:

> With respect to the second criterion above,
> the following exception applies. A group
> health plan will be considered not to have
> provided all or the same subset of the contra-
> ceptive coverage otherwise required if it took
> some action to try to exclude or limit such
> coverage that was not successful as of
> February 10, 2012. Accordingly, such cover-
> age will not disqualify an employer, a group

---

[7] Alden J. Bianchi, "HHS/CCIIO Revises Temporary En-
forcement Safe Harbor on Contraceptive Coverage Offered by
Religiously Affiliated Tax-Exempt Entities," https://www.mintz.
com/newsletter/2012/Advisories/2194-0812-NAT-ELB/index.html (last
visited Jan. 3, 2015).

health plan, or a group health insurance is-
suer from eligibility for the safe harbor."[8]

On June 28, 2013, with the safe harbor about to
expire, the Government admitted that the mandate
was still burdening nonprofit religious organizations,
so it extended the safe harbor for another six months
(now totaling two years).[9]

## III. The "Accommodation"

The same rules that extended the temporary
enforcement safe harbor also created the "accommo-
dation" for religious nonprofits, first officially pro-
posed in March 2012 (discussed *supra*).[10] Under the
"accommodation," an insurance issuer was required
to exclude contraceptive coverage from the employer's
plan and provide plan participants with coverage for
contraceptive services separately without imposing
any cost-sharing requirements on the employer, its
insurance plan, or its employee beneficiaries. *Burwell
v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2755
(2014).

To take advantage of the accommodation, the
religious nonprofit would have to self-certify, using a

---

[8] *Id.*

[9] Guidance on the Temporary Enforcement Safe Harbor,
June 28, 2013, https://www.cms.gov/CCIIO/Resources/Regulations-
and-Guidance/Downloads/preventive-services-guidance-6-28-2013.pdf
(last visited Jan. 3, 2015); 78 Fed. Reg. 39870 (July 2, 2013).

[10] *Id.*

form provided by the Government, that it was eligible for the accommodation and inform its insurance issuers and third-party administrator (TPA) about the objection. 45 C.F.R. 147.131(b); *see* 29 C.F.R. 2590.715-2713A(a); 26 C.F.R. 54.9815-2713A(a); 78 Fed. Reg. at 39874-75. According to the Government, "the accommodations for eligible organizations under these final regulations do not violate RFRA because they do not substantially burden religious exercise, and they serve compelling government interests and moreover are the least restrictive means to achieve those interests." 78 Fed. Reg. at 39886-87.

Nonprofits who opposed the mandate found no comfort in the "accommodation":

> [T]he government has fundamentally mis-construed the plaintiffs' religious objections: "Plaintiffs' religious objection is not only to the use of contraceptives, but also being required to actively participate in a scheme to provide such services." *Roman Catholic Archdiocese of N.Y.*, 2013 WL 6579764, at *14. The accommodation requires objectors themselves to sign a form that is, "in effect, a permission slip." *S. Nazarene Univ.*, 2013 WL 6804265, at *8. . . . [B]ecause Wheaton views completing the self-certification itself as forbidden complicity with the government's scheme, "regardless of the effect of plaintiffs' TPAs, the regulations still require plaintiffs to take actions they believe are contrary to their religion."

*Wheaton v. Burwell*, Emergency Application for Injunction, 13A1284 (U.S. June 29, 2014) at 31.

The Government responded that the accommodation, as effected by using the self-certification form and providing it to the insurance issuer or third-party administrator, was the least restrictive means of serving its interests. *Wheaton v. Burwell*, Memorandum in Opposition, 13A1284 (U.S. July 2, 2014) at 31.

On July 3, 2014, the Supreme Court entered its order regarding Wheaton College's application for an emergency injunction against enforcement of the mandate, including the accommodation. *Wheaton Coll. v. Burwell*, 134 S. Ct. 2806, 2807 (2014). "The Circuit Courts," the Court said, "have divided on whether to enjoin the requirement that religious nonprofit organizations use EBSA Form 700." The Court ruled that Wheaton College *did not* have to use the form, but could merely "inform[ ] the Secretary of Health and Human Services in writing that it is a nonprofit organization that holds itself out as religious and has religious objections to providing coverage for contraceptive services" and it would be entitled to an injunction against enforcement of the mandate, pending appeal. *Id.* at 2807.

After the Supreme Court order in *Wheaton College*, as well as those in *Little Sisters of the Poor v. Sebelius*, 134 S. Ct. 1022 (2014) and *Hobby Lobby*, 134 S. Ct. 2751 (2014), the Government admitted that the then-current accommodation needed to be

changed, and that it would issue new regulations to "augment" it.[11]

## IV.  The Augmented "Accommodation"

Under the augmented rules, published August 27, 2014, a religious objector whom the Government has chosen not to exempt need not notify its health insurer or TPA of its objection to the mandate; instead, if it does not follow that procedure, it "must" submit to the Government a form or notice identifying its religious objection, the name and type of its health plan, and – for the first time – "the name and contact information for any of the plan's [TPAs]." 79 Fed. Reg. 51092, 51094-95 (Aug. 27, 2014). The rules dictate that then the Government "will send a separate notification to" the religious organization's TPA creating the TPA's obligation to deliver emergency contraceptives to participants in the religious organization's health plan. *Id.* at 51095, 51098; *see* 26 C.F.R. 54.9815-2713A(b)(1)(ii)(B).

So Form 700, the centerpiece of the Government's previous attempt at satisfying the least restrictive means test, was now paired with an alternative – instead of sending the form to a health insurer or TPA and knowing that it would initiate contraceptive coverage, an objector could identify its insurer or TPA

---

[11] *Little Sisters of the Poor v. Burwell*, Supplemental Gov't Brief, Nos. 13-1540, 14-6026, 14-6028 (10th Cir. July 22, 2014) at 11.

to the Government knowing that the insurer or TPA would then be directed to initiate contraceptive coverage. The Government calls this an "additional notification option."[12]

This augmented accommodation is the latest offering by the Government to convince objectors and the courts that it is satisfying its obligations under the least restrictive means test.

## V.    The "Accommodation" for For-Profit Entities

The augmented accommodation has also been made available to closely-held for-profit entities that object to the mandate on religious grounds. 79 Fed. Reg. 51118, 51121 (Aug. 27, 2014). This accommodation was offered in the wake of the Supreme Court holding that the mandate did not pass the least restrictive means test. *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2780-83 (2014). The Government had argued for two years that the mandate as originally applied to for-profit entities was the least restrictive means of furthering governmental interests. *See, e.g.*, *Sharpe Holdings v. U.S. Dept. of Health & Human Services*, Gov't brief, Doc. 14 at 24-25 (E.D. Mo. Dec. 28, 2012); *Burwell v. Hobby Lobby*

---

[12] Women's Preventive Services Coverage and Non-Profit Religious Organizations, https://www.cms.gov/cciio/resources/fact-sheets-and-faqs/womens-preven-02012013.html (last visited Jan. 6, 2015).

*Stores, Inc.*, Govt. Cert. Pet. at 17 (U.S. Sept. 2013); *Burwell v. Hobby Lobby Stores, Inc.*, 13-354, Govt. Brief at 57-58 (U.S. Sept. 2013); *Conestoga Wood Specialties v. Burwell*, Petitioners' Brief, No. 13-356, at 55-57 (U.S. Feb. 2014).

————————◆————————

## CONCLUSION

The Government continues its retreat from the original means by which it sought to further its interests. After at least eight modifications, it now claims that the least restrictive means is the augmented accommodation. This results from the Government's clinging to language in *Hobby Lobby* that the accommodation was a *less* restrictive means than the mandate in effect at the time against for-profit businesses. But "less" is not "least." Indeed, the Court found that the "most straightforward way of doing this would be for the Government to assume the cost of providing the four contraceptives at issue to any women who are unable to obtain them under their health-insurance policies due to their employers' religious objections." *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2780 (2014).

This "most straightforward way" could easily be implemented by using the "established framework" (*Id.* at 2786 (Kennedy, J., concurring)) of ACA health insurance exchanges. This would not impose a "whole new program" on the Government. *Id.* The Government has assured the Nation's young adults that using the

exchanges "can be easy and fast" and "[doesn't] take much time at all."[13]

The Government has eschewed this option,[14] without any explanation, establishing instead a stubborn and persistent record of avoiding the least restrictive means and instead employing the *most* restrictive means it can get away with.

The decisions of the courts below in favor of the Government should be reversed.

Respectfully submitted.

TIMOTHY BELZ
 *Counsel of Record*
J. MATTHEW BELZ
OTTSEN, LEGGAT & BELZ, L.C.
112 S. Hanley Road, Suite 200
St. Louis, Missouri 63105
(314) 726-2800
tbelz@olblaw.com
jmbelz@olblaw.com

---

[13] Healthcare.gov, "Why bother with health insurance?" https://www.healthcare.gov/young-adults/ready-to-apply/ (last visited Jan. 6, 2015).

[14] Other options that would not require the Government to go outside an "established framework" or start a "whole new program" (134 S. Ct. at 2786 (Kennedy, J., concurring)) include, for instance, expansion of Title X, Medicaid or tax incentives.

DAVID R. MELTON
General Counsel for CNS
    International Ministries, Inc.
    and Heartland Christian College
500 E. Ninth Street
Kansas City, Missouri 64106
(816) 842-6300

*Counsel for Amici Curiae*

JANUARY 2016

## USAO ATTORNEY'S FEES MATRIX – 2015 – 2017

*Revised Methodology starting with 2015-2016 Year*

Years (Hourly Rate for June 1 – May 31, based on change in PPI-OL since January 2011)

| Experience | 2015-16 | 2016-17 |
|---|---|---|
| 31+ years | 568 | 581 |
| 21-30 years | 530 | 543 |
| 16-20 years | 504 | 516 |
| 11-15 years | 455 | 465 |
| 8-10 years | 386 | 395 |
| 6-7 years | 332 | 339 |
| 4-5 years | 325 | 332 |
| 2-3 years | 315 | 322 |
| Less than 2 years | 284 | 291 |
| Paralegals & Law Clerks | 154 | 157 |

*Explanatory Notes*

1.  This matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks has been prepared by the Civil Division of the United States Attorney's Office for the District of Columbia (USAO) to evaluate requests for attorney's fees in civil cases in District of Columbia courts.  The matrix is intended for use in cases in which a fee-shifting statute permits the prevailing party to recover "reasonable" attorney's fees.  *See, e.g.,* 42 U.S.C. § 2000e-5(k) (Title VII of the 1964 Civil Rights Act); 5 U.S.C. § 552(a)(4)(E) (Freedom of Information Act); 28 U.S.C. § 2412(b) (Equal Access to Justice Act).  The matrix has not been adopted by the Department of Justice generally for use outside the District of Columbia, or by other Department of Justice components, or in other kinds of cases.  The matrix does **not** apply to cases in which the hourly rate is limited by statute.  *See* 28 U.S.C. § 2412(d).

2.  A "reasonable fee" is a fee that is sufficient to attract an adequate supply of capable counsel for meritorious cases.  *See, e.g., Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 552 (2010).  Consistent with that definition, the hourly rates in the above matrix were calculated from average hourly rates reported in 2011 survey data for the D.C. metropolitan area, which rates were adjusted for inflation with the Producer Price Index-Office of Lawyers (PPI-OL) index.  The survey data comes from ALM Legal Intelligence's 2010 & 2011 Survey of Law Firm Economics.  The PPI-OL index is available at http://www.bls.gov/ppi.  On that page, under "PPI Databases," and "Industry Data (Producer Price Index - PPI)," select either "one screen" or "multi-screen" and in the resulting window use "industry code" 541110 for "Offices of Lawyers" and "product code" 541110541110 for "Offices of Lawyers."  The average hourly rates from the 2011 survey data are multiplied by the PPI-OL index for May in the year of  the update, divided by 176.6, which is the PPI-OL index for January 2011, the month of the survey data, and then rounding to the nearest whole dollar (up if remainder is 50¢ or more).

3.  The PPI-OL index has been adopted as the inflator for hourly rates because it better reflects the mix of legal services that law firms collectively offer, as opposed to the legal services that typical consumers use, which is what the CPI-

**Exhibit 5**

Legal Services index measures. Although it is a national index, and not a local one, *cf. Eley v. District of Columbia*, 793 F.3d 97, 102 (D.C. Cir. 2015) (noting criticism of national inflation index), the PPI-OL index has historically been generous relative to other possibly applicable inflation indexes, and so its use should minimize disputes about whether the inflator is sufficient.

4.    The methodology used to compute the rates in this matrix replaces that used prior to 2015, which started with the matrix of hourly rates developed in *Laffey v. Northwest Airlines, Inc.* 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985), and then adjusted those rates based on the Consumer Price Index for All Urban Consumers (CPI-U) for the Washington-Baltimore (DC-MD-VA-WV) area. Because the USAO rates for the years 2014-15 and earlier have been generally accepted as reasonable by courts in the District of Columbia, see note 9 below, the USAO rates for those years will remain the same as previously published on the USAO's public website. That is, the USAO rates for years prior to and including 2014-15 remain based on the prior methodology, *i.e.*, the original *Laffey* Matrix updated by the CPI-U for the Washington-Baltimore area. *See Citizens for Responsibility & Ethics in Washington v. Dep't of Justice*, --- F. Supp. 3d ---, 2015 WL 6529371 (D.D.C. 2015) and Declaration of Dr. Laura A. Malowane filed therein on Sept. 22, 2015 (Civ. Action No. 12-1491, ECF No. 46-1) (confirming that the USAO rates for 2014-15 computed using prior methodology are reasonable).

5.    Although the USAO will not issue recalculated *Laffey* Matrices for past years using the new methodology, it will not oppose the use of that methodology (if properly applied) to calculate reasonable attorney's fees under applicable fee-shifting statutes for periods prior to June 2015, provided that methodology is used consistently to calculate the entire fee amount. Similarly, although the USAO will no longer issue an updated *Laffey* Matrix computed using the prior methodology, it will not oppose the use of the prior methodology (if properly applied) to calculate reasonable attorney's fees under applicable fee-shifting statutes for periods after May 2015, provided that methodology is used consistently to calculate the entire fee amount.

6.    The various "brackets" in the column headed "Experience" refer to the attorney's years of experience practicing law. Normally, an attorney's experience will be calculated starting from the attorney's graduation from law school. Thus, the "Less than 2 years" bracket is generally applicable to attorneys in their first and second years after graduation from law school, and the "2-3 years" bracket generally becomes applicable on the second anniversary of the attorney's graduation (*i.e.*, at the beginning of the third year following law school). *See Laffey*, 572 F. Supp. at 371. An adjustment may be necessary, however, if the attorney's admission to the bar was significantly delayed or the attorney did not otherwise follow a typical career progression. *See, e.g., EPIC v. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61, 70-71 (D.D.C. 2013) (attorney not admitted to bar compensated at "Paralegals & Law Clerks" rate); *EPIC v. Dep't of Homeland Sec.*, 982 F. Supp. 2d 56, 60-61 (D.D.C. 2013) (same). The various experience levels were selected by relying on the levels in the ALM Legal Intelligence 2011 survey data. Although finer gradations in experience level might yield different estimates of market rates, it is important to have statistically sufficient sample sizes for each experience level. The experience categories in the current USAO Matrix are based on statistically significant sample sizes for each experience level.

7.    ALM Legal Intelligence's 2011 survey data does not include rates for paralegals and law clerks. Unless and until reliable survey data about actual paralegal/law clerk rates in the D.C. metropolitan area become available, the USAO will compute the hourly rate for Paralegals & Law Clerks using the most recent historical rate from the USAO's former *Laffey* Matrix (*i.e.*, $150 for 2014-15) updated with the PPI-OL index. The formula is $150 multiplied by the PPI-OL index for May in the year of the update, divided by 194.3 (the PPI-OL index for May 2014), and then rounding to the nearest whole dollar (up if remainder is 50¢ or more).

8.    The USAO anticipates periodically revising the above matrix if more recent reliable survey data becomes available, especially data specific to the D.C. market, and in the interim years updating the most recent survey data with the PPI-OL index, or a comparable index for the District of Columbia if such a locality-specific index becomes available.

9.    Use of an updated *Laffey* Matrix was implicitly endorsed by the Court of Appeals in *Save Our Cumberland Mountains v. Hodel*, 857 F.2d 1516, 1525 (D.C. Cir. 1988) (en banc). The Court of Appeals subsequently stated that parties may rely on the updated *Laffey* Matrix prepared by the USAO as evidence of prevailing market rates for litigation counsel in the Washington, D.C. area. *See Covington v. District of Columbia*, 57 F.3d 1101, 1105 & n.14, 1109 (D.C. Cir. 1995), *cert. denied*, 516 U.S. 1115 (1996). Most lower federal courts in the District of Columbia

have relied on the USAO Matrix, rather than the so-called "*Salazar* Matrix" (also known as the "LSI Matrix" or the "Enhanced *Laffey* Matrix"), as the "benchmark for reasonable fees" in this jurisdiction.  *Miller v. Holzmann*, 575 F. Supp. 2d 2, 18 n.29 (D.D.C. 2008) (quoting *Pleasants v. Ridge*, 424 F. Supp. 2d 67, 71 n.2 (D.D.C. 2006)); *see, e.g., Joaquin v. Friendship Pub. Charter Sch.*, --- F. Supp. 3d ---, 2016 WL 3034151 (D.D.C. 2016); *Prunty v. Vivendi*, --- F. Supp. 3d ---, 2016 WL 3659889 (D.D.C. 2016); *CREW v. U.S. Dep't of Justice*, --- F. Supp. 3d ---, 2015 WL 6529371 (D.D.C. 2015); *McAllister v. District of Columbia*, 21 F. Supp. 3d 94 (D.D.C. 2014); *Embassy of Fed. Republic of Nigeria v. Ugwuonye*, 297 F.R.D. 4, 15 (D.D.C. 2013); *Berke v. Bureau of Prisons*, 942 F. Supp. 2d 71, 77 (D.D.C. 2013); *Fisher v. Friendship Pub. Charter Sch.*, 880 F. Supp. 2d 149, 154-55 (D.D.C. 2012); *Sykes v. District of Columbia*, 870 F. Supp. 2d 86, 93-96 (D.D.C. 2012); *Heller v. District of Columbia*, 832 F. Supp. 2d 32, 40-49 (D.D.C. 2011); *Hayes v. D.C. Public Schools*, 815 F. Supp. 2d 134, 142-43 (D.D.C. 2011); *Queen Anne's Conservation Ass'n v. Dep't of State*, 800 F. Supp. 2d 195, 200-01 (D.D.C. 2011); *Woodland v. Viacom, Inc.*, 255 F.R.D. 278, 279-80 (D.D.C. 2008); *American Lands Alliance v. Norton*, 525 F. Supp. 2d 135, 148-50 (D.D.C. 2007). *But see, e.g., Salazar v. District of Columbia*, 123 F. Supp. 2d 8, 13-15 (D.D.C. 2000).  The USAO contends that the *Salazar* Matrix is fundamentally flawed, does not use the *Salazar* Matrix to determine whether fee awards under fee-shifting statutes are reasonable, and will not consent to pay hourly rates calculated with the methodology on which that matrix is based.

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

_____

SHARPE HOLDINGS, INC., *et al.*,

      Plaintiffs-Appellees,

   v.                No. 14-1507

UNITED STATES DEPARTMENT
OF HEALTH AND HUMAN
SERVICES, *et al.*,

      Defendants-Appellants.

_____

## DECLARATION OF TIMOTHY BELZ

I, Timothy Belz, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.     I am a principal in the law firm of Ottsen, Leggat & Belz, L.C. in Clayton, Missouri.  My current *curriculum vitae* is attached hereto and incorporated herein.

2.     I have been admitted to the Missouri bar and the U.S. District Court for the Eastern District of Missouri since 1982.  I have been admitted to the Eighth Circuit Court of Appeals since 1983 and the U.S. Supreme Court since 1985.

3.     A central concentration of my practice since 1982 has been in constitutional law. Since then, I have been responsible for major civil rights cases under 42 U.S.C. 1983 in federal district court in Missouri and Illinois, and in other

**Exhibit 6**

federal and state cases that involved the constitutional rights of individuals. Some of those cases which have been officially reported are listed in the attached *curriculum vitae.*

4.      I am generally familiar with the rates charged by Missouri and St. Louis lawyers in litigation, including constitutional and civil rights cases wherein attorney fees awards are applicable pursuant to 42 U.S.C. 1988.

5.      As the *curricula vitae* of Professor Carl Esbeck and mine show, we each have more than 30 years experience in constitutional law, with a particular emphasis on religious liberty. He and I both have national reputations in this area of the law. J. Matthew Belz, a partner of mine, has authored dozens of substantive briefs in civil rights cases, including those dealing especially with religious liberty.

6.      Based on my experience and knowledge of the St. Louis legal marketplace, hourly rates of $450.00 for Carl Esbeck and me and $250.00 for Matthew Belz are at or below market norms for prevailing rates charged in constitutional civil rights cases for lawyers of our skill and experience. This is particularly so with respect to a case involving religious liberties and brought under the Religious Freedom Restoration Act ("RFRA"), which is similar to, if not for all practical purposes the equivalent of, a Section 1983 civil rights case. In either case, fees and expenses are awarded under 42 U.S.C. 1988.

2

7.     In the case at bar, the hours I report in the invoices submitted to the

Court represent substantially fewer hours than I actually spent on this matter.

## VERIFICATION

Declaration of Timothy Belz in Lieu of Affidavit pursuant to 28 U.S.C. § 1746:

I declare under penalty of perjury under the laws of the United States that the
foregoing statements are true and correct.

Executed November 3, 2017.

/s/ *Timothy Belz*
Timothy Belz

TIMOTHY BELZ, ESQ.
OTTSEN, LEGGAT & BELZ, L.C.
112 SOUTH HANLEY
ST. LOUIS, MISSOURI 63105
314/726-2800
FAX 314/863-3821
tbelz@olblaw.com

**EMPLOYMENT**

**Ottsen, Leggat & Belz, L.C.**                                      St. Louis, Missouri
**(formerly Ottsen, Mauzé, Leggat & Belz, L.C.)**
1995-present

A partner, specializing in litigation, including appeals, since July 1995.  Have handled a
variety of commercial, probate dispute and constitutional cases.

**Belz Jones & Hickel P.C. (and predecessor firms)**           St. Louis, Missouri
1982-1995

Specialized in litigation, including appeals, for this firm and its predecessors, handling a wide
variety of commercial, constitutional and probate dispute cases.

**Antitrust Division, U.S. Department of Justice**              Atlanta, Georgia
Trial Attorney, 1977-1981

Recipient of Special Achievement Award, awarded by Attorney General Benjamin Civiletti in
1980.

Was part of 10-15 lawyer field office of the Antitrust Division with responsibility for
prosecuting price-fixing and bid-rigging cases in Southeastern United States.  Was
actively involved in investigating and trying a variety of such cases, including but not
limited to gasoline price fixing, contract hardware bid rigging, highway construction
bid rigging and customer allocation, and other *per se* violations of the Sherman Act.

**EDUCATION**

**University of Iowa College of Law**                          Iowa City, Iowa
J.D., 1976

Order of the Coif
Graduated *with high distinction*
Top ten percent

**BAR MEMBERSHIP, PROFESSIONAL AFFILIATIONS, PROFESSIONAL RECOGNITION, ETC.**

Admitted to Practice in Missouri, Georgia and Iowa, United States District Court for the Eastern District of Missouri, Eighth Circuit Court of Appeals, United States Supreme Court

Martindale-Hubbell Peer Review Rated AV Preeminent 5.0 out of 5 (highest rating possible for competence and ethics)

Influential Appellate Advocate Award, 2017, *Missouri Lawyers Weekly*, for representing CNS Int'l Ministries, Inc. and Heartland Christian College in the Eighth Circuit Court of Appeals in 2015.

Missouri Attorney of the Year (one of ten), 2004, *Missouri Lawyers Weekly*

Missouri & Kansas Super Lawyers 2005 (Clayton, Missouri)

Board Member, Christian Legal Society, Springfield, Virginia, 2001-2010

Committee Member, Center for Law and Religious Freedom, Christian Legal Society, Springfield, Virginia, 1999-present

**REPRESENTATIVE CASES (NOT EXHAUSTIVE):**

*Wieland v. U.S. Dept. of Health and Human Serv.,* 793 F.3d 949 (8th Cir. 2015). Lead counsel in case establishing that individual Missouri state employees have standing to challenge the contraceptive mandate contained in the Affordable Care Act and implementing regulations.

*Heartland Academy Community Church v. Waddle,* 595 F.3d 798 (8th Cir. 2010). Lead counsel on appeal in damage case denying immunity to Missouri juvenile officers and social workers accused of violating the constitutional rights of private religious school, its students and their parents.

*Heartland Academy Community Church v. Waddle,* 427 F.3d 525 (8th Cir. 2005). Lead counsel on appeal, successfully defending permanent injunction of district court (317 F.Supp.2d 984 (E.D.Mo. 2004)) against state juvenile officer who had violated constitutional rights of private religious school, its students and their parents. Obtained $775,000 payment by State of Missouri for legal fees and expenses related to securing the injunction.

*Heartland Academy Community Church v. Waddle,* 335 F.3d 684 (8th Cir. 2003). Lead counsel on appeal, successfully defending preliminary injunction of district court against state juvenile officer for violation of constitutional rights of private religious school, its students and their parents.

*Good News/Good Sports Club v. School Dist. Of the City of Ladue,* 28 F.3d 1501 (8th Cir. 1994), *cert. denied,* 515 U.S. 1173 (1995). Lead counsel at trial and active co-counsel on

- 2 -

successful appeal of case establishing rights of student to meet in public school facilities.   Section 1983 case involving complex free speech and other First Amendment issues.  Also succeeded in obtaining more than $275,000.00 in court-ordered attorney fees and expenses.

*Eva Hummel-Jones, et ux. v. Strope, et al.,* 25 F.3d 647 (8th Cir. 1994).  Active co-counsel (wrote brief) on successful appeal of Section 1983 case between Missouri family and law enforcement officials involving complex Fourth Amendment issues.

*U.S. v. Cargo Service Stations,* 657 F.2d 676 (5th Cir. Unit B 1981), *cert. denied,* 455 U.S. 1017 (1982).  Active co-counsel in investigating and trying this statewide (Florida) price-fixing case.

*Jamison v. Missouri Dept. of Soc. Serv.,* 218 S.W.3d 399 (Mo. banc 2007).  Lead counsel on appeal in case in which he successfully argued before the Missouri Supreme Court that teachers and child-care workers should not be blacklisted by the state prior to a meaningful due process hearing, thus striking down substantial portions of Missouri law as unconstitutional.

*Presbytery of Elijah Parish Lovejoy v. Jaeggi,* 682 S.W.2d 465 (Mo. banc), *cert. denied,* 471 U.S. 1117 (1985).  Lead counsel in church property case involving complex First Amendment issues.  Convinced Missouri Supreme Court to substantially change, if not reverse, approach it had taken in such cases since 1914.

*Gibson v. Brewer,* 952 S.W.2d 239 (Mo. banc 1997).  Was active co-counsel on *amicus curiae* brief that was followed by Missouri Supreme Court in restricting supervisor liability (legal responsibility of supervising bishop, etc.) in child molestation cases by parish priests.

*State v. Eisenhouer,* 40 S.W.3d 916 (Mo. banc 2001).   Filed amicus brief addressing the constitutional rights of elders of church who had been subpoenaed to give testimony against parishioner before grand jury.

*Conservatorship Estate of Moehlenpah,* 763 S.W.2d 249 (Mo. App. E.D. 1988).  Lead counsel for respondents in intra-family probate dispute involving competency.

*Pasta House Co. v. Williams, et al.,* 833 S.W.2d 460 (Mo. App. E.D. 1992).  Lead counsel for respondent in case involving duties of professional surveyor.

*State ex rel. Pini v. Moreland,* 686 S.W.2d 499 (Mo. App. E.D. 1984).  Lead counsel in *pro bono* case in which appeals court reversed criminal contempt convictions of protestors.

*NOW, et al. v. Scheidler, et al.,* 968 F.2d 612 (7th Cir. 1992), *affirming* 765 F. Supp. 937 (N.D. Ill. 1991).   Active co-counsel in *pro bono* case establishing that federal antitrust statutes cannot be used against social protestors who lack economic motivation.

*Webster, et al., v. RHS, et al.,* 492 U.S. 490 (1989).  Lead counsel in preparation and filing of *amici curiae* brief filed on behalf of 127 members of the Missouri legislature.

- 3 -

Have been lead counsel in numerous other cases involving civil liberties, Uniform Commercial Code and other commercial disputes, insurance coverage questions, probate disputes, constitutional questions, etc., which have not resulted in reported cases.

- 4 -

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

_____

SHARPE HOLDINGS, INC., *et al.*,

      Plaintiffs-Appellees,

   v.                       No. 14-1507

UNITED STATES DEPARTMENT
OF HEALTH AND HUMAN
SERVICES, *et al.*,

      Defendants-Appellants.

_____

### DECLARATION OF CARL H. ESBECK

I, Carl H. Esbeck, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am the *R.B. Price* Professor and *Isabella Wade & Paul C. Lyda*

Professor of Law Emeritus at the School of Law, University of Missouri. My

current *curriculum vitae* is attached hereto and incorporated herein.

2.      I was admitted to the bar of the State of New Mexico in 1974 and to

the bar of the State of Missouri in 1983.

3.      When I was in the private practice of law from 1975 to 1981, about

half of my practice involved federal civil rights and constitutional law litigation. I

left private practice as an equity partner in my law firm. I joined the faculty at the

University of Missouri in the fall of 1981. I have taught the Law School's courses

**Exhibit 7**

on Federal Constitutional Law, Federal Civil Rights Litigation, Civil Procedure, and Religious Liberty & Church-State Relations. I have been a consultant for major civil rights cases that sought a remedy per 42 U.S.C. 1983 in federal district courts in Missouri, Colorado, and Illinois. I also have written scores of briefs amicus curiae in federal and state cases that involved the constitutional rights of religious organizations and individuals.

4.      From March of 2001 to August of 2002, I worked in Washington, D.C. as Special Counsel to the Deputy Attorney General, U.S. Department of Justice. I was assigned to First Amendment matters and was the liaison to the White House Office of Faith-Based & Community Initiatives.

5.      I am generally familiar with the rates charged by Missouri and St. Louis lawyers in litigation, including constitutional and civil rights cases wherein attorney fees awards are available to prevailing parties pursuant to 42 U.S.C. 1988.

6.      As the *curricula vitae* of Timothy Belz and mine show, he has more than 30 years' and I more than 40 years' experience in constitutional litigation, with a particular emphasis on the statutory and constitutional rights bearing on religious freedom. He and I both have national reputations in this area of the law.

7.      Based on my experience and knowledge of the St. Louis legal marketplace, hourly rates of $450.00 for Timothy Belz and me are at or below market norms for prevailing rates charged in constitutional and civil rights

litigation by lawyers of our skill and experience. This is especially so with respect to a case brought under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. 2000bb et seq., which is similar to litigation under Section 1983. In both instances fees and expenses are awarded to prevailing parties under 42 U.S.C. 1988.

8.     In the case at bar, the hours I report in the invoices submitted to the Court represent fewer hours than I actually spent studying the growing controversy concerning the Affordable Care Act and its contraception mandate.

## VERIFICATION

Declaration of Carl H. Esbeck in Lieu of Affidavit pursuant to 28 U.S.C. § 1746:

I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct.

Executed November 3, 2017.

/s/ Carl H. Esbeck
Carl H. Esbeck

# CURRICULUM VITAE
## OF
# CARL H. ESBECK

I.      CONTACTS

Office:         Room 209, John K. Hulston Hall
                School of Law
                University of Missouri
                Columbia, Missouri  65211
                573-882-6543 (direct line with voice mailbox)
                573-882-6487 (switchboard)
                e-mail:  esbeckc@missouri.edu

Home:           3264 S. Country Woods Road
                Columbia, Missouri  65203

II.     EDUCATION

Cornell University School of Law, Ithaca, New York
 Juris Doctor, *magna cum laude*, 1974

Honors:
 Herbert R. Reif prize for the best law review student comment
 Board of Editors, *Cornell Law Review*
 The Order of the Coif
 Phi Kappa Phi (scholastic honorary)

Iowa State University of Science and Technology, Ames, Iowa
 Bachelor of Science, 1971, major in mechanical engineering

III.    EMPLOYMENT

2014 – present
        *R.B. Price* Professor and *Isabelle Wade & Paul C. Lyda* Professor of Law
        emeritus, University of Missouri.

2002 - 2014
        *R.B. Price* Professor and *Isabelle Wade & Paul C. Lyda* Professor of Law,
        University of Missouri.  Teaching assignments are Civil Rights, Constitutional
        Law, Religious Liberty, Civil Procedure I, and Civil Procedure II.  Publications
        are in the areas of church-state relations and federal civil rights litigation.

2001 - 2002

CURRICULUM VITAE - CARL H. ESBECK
Page 2

Senior Counsel to the Deputy Attorney General, U.S. Department of Justice, and Director of the Department of Justice's Task Force on Faith-Based and Community Initiatives.

1999 - 2001
Director, Center for Law & Religious Freedom, Springfield, Virginia.  The Center is a public interest law firm operating under the auspices of the Christian Legal Society.  The Center does litigation, governmental affairs, and public education.

1991 - 1999
*Isabelle Wade & Paul C. Lyda* Professor of Law, University of Missouri.

1985 - 1991
Professor of Law, University of Missouri.

1981-1985
Associate Professor of Law, University of Missouri.

1981 -
Director/Partner, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, New Mexico.

1975-1980
Associate, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, New Mexico.

My practice was principally in the areas of civil rights and commercial litigation in both the federal and state courts and at both the trial and appellate levels.  The civil rights cases largely centered on matters of academic freedom and tenure, restraints on freedom of speech and association, establishment and free exercise questions, procedural due process in order to protect property and liberty interests, public schools affording a free equivalent education to handicapped students under Sec. 504 of the Rehabilitation Act of 1973, and employment discrimination.  The commercial litigation cases focused on matters involving Articles 2 and 9 of the Uniform Commercial Code.  The firm of Rodey, Dickason, Sloan, Akin & Robb, P.A., has a general civil practice.  When I became a director it was the largest and oldest law firm in the State of New Mexico.

1974-1975
Judicial Law Clerk, The Honorable Howard C. Bratton, Chief Judge of United States District Court for the District of New Mexico, Albuquerque, New Mexico.

CURRICULUM VITAE - CARL H. ESBECK
Page 3

IV.        SELECTED HONORS

2014 Recipient of the *Lloyd E. Roberts Memorial Prize in the Administration of Justice* at the MU School of Law, awarded for *pro bono publico* work in defense of the first amendment.

2014 Recognition by Board of Directors, National Association of Evangelicals, for ten years of *pro bono publico* work on behalf of the association.

2012 Recipient of the *Shook Hardy & Bacon, Excellence in Research Award* at the MU School of Law, for excellence in faculty publications.

2010 Recipient of the *Husch Blackwell Distinguished Faculty Achievement Award* at the MU School of Law, for excellence in teaching.

2010 Selectee for Listing in *Marquis' Who's Who in America* (65th and later editions).

1999 Recipient of the *Shook Hardy & Bacon, Excellence in Research Award* at the MU School of Law, for excellence in faculty publications.

1995 Recipient of the *Defender of Religious Freedom* award presented by the Center for Law & Religious Freedom of the Christian Legal Society.

1995 Recipient of the *Blackwell Sanders Distinguished Faculty Achievement Award* at the MU School of Law, for excellence in teaching.

1992 Recipient of the *Lloyd E. Roberts Memorial Prize in the Administration of Justice* at the MU School of Law, awarded for my work on "charitable choice" and subsequent faith-based social service regulation and administration.

1987  Professor of the Year, selected by the students at the MU School of Law.

V.         PUBLICATIONS

**ACADEMIC JOURNALS**

*When Religious Exemptions Cause Third-Party Harms:  Is the Establishment Clause Violated?* 59 OXFORD J. OF CHURCH & ST. 357 (2016), https://academic.oup.com/jcs/article/59/3/357/2805473/When-Religious-Exemptions-Cause-ThirdParty-Harms?guestAccessKey=7d90ae8f-bdd2-4160-bd17-3fcfe8c54a6d.

CURRICULUM VITAE - CARL H. ESBECK
Page 4

*Federal Contractors, Title VII, and LGBT Employment Discrimination:  Can Religious Organizations Continue to Staff on a Religious Basis?* 4 OXFORD J. L. & RELIGION 368 (2015)

*Unwanted Exposure to Religious Expression by Government:  Standing and the Establishment Clause*, 7 CHARLESTON LAW REVIEW 607 (2013).

*Defining Religion Down*:  *Hosanna-Tabor, Martinez, and the U.S. Supreme Court*, 11 FIRST AMENDMENT LAW REVIEW 1 (2012).

*Uses and Abuses of Textualism and Originalism in Establishment Clause Interpretation*, 2011 UTAH LAW REVIEW 489 - 623 (2011).

*Religious Freedom, Church-State Separation, and the Ministerial Exception*, 106 NORTHWESTERN UNIVERSITY LAW REVIEW COLLOQUY 175 (2011) (w/ co-authors).

*Taxpayer Standing From* Flast *to* Hein, 80 SUPRA, THE ONLINE COMPANION TO THE MISSISSIPPI LAW JOURNAL 1 (2010).

*Protestant Dissent and the Virginia Disestablishment, 1776-1786*, 7 GEORGETOWN JOURNAL OF LAW & PUBLIC POLICY 51 (2009).

*What the* Hein *Decision Can Tell Us About the Roberts Court and the Establishment Clause*, 78 MISSISSIPPI LAW JOURNAL 199 (2008).

*The 60th Anniversary of the* Everson *Decision and America's Church-State Proposition*, 23 JOURNAL OF LAW AND RELIGION 15 (2007-2008).

*When Accommodations for Religion Violate the Establishment Clause: Regularizing the Supreme Court's Analysis*, 110 WEST VIRGINIA LAW REVIEW 357 (2007).

*"Play in the Joints Between the Religion Clauses" and Other Supreme Court Catachreses,* 34 HOFSTRA LAW REVIEW 1331 (2006).

*Governance and the Religion Question,* 48 JOURNAL OF CHURCH & STATE 303 (2006).

*Dissent and Disestablishment:  The Church-State Settlement of the New American Republic*, 2004 BYU LAW REVIEW 1385-1592 (2004).

*The Establishment Clause as a Structural Restraint:  Validations and Ramifications*, 18 JOURNAL OF LAW & POLITICS 445 (2002).

*Religion and the First Amendment:  Some Causes of the Recent Confusion*, 42 WM.

CURRICULUM VITAE - CARL H. ESBECK
Page 5

& MARY LAW REVIEW 883 (2000).

*Charitable Choice and the Critics*, 57 N.Y.U. ANN. SURVEY OF AM. LAW 17 (2000).

*Differentiating the Free Exercise and Establishment Clauses*, 42 JOURNAL OF CHURCH & STATE 311 (2000).

*Myths, Miscues and Misconceptions:  No-Aid Separationism and the Establishment Clause*, 13 NOTRE DAME J. OF LAW, ETHICS & PUBLIC POL'Y 285-319 (1999).

*The Establishment Clause as a Structural Restraint on Governmental Power*, 84 IOWA LAW REVIEW 1-113 (1998).

*A Constitutional Case for Governmental Cooperation with Faith-Based Social Service Providers*, 46 EMORY L. J. 1 (1997).

*A Restatement of the Supreme Court's Law of Religious Freedom:  Coherence, Conflict, or Chaos?*, 70 NOTRE DAME L. REV. 581 (1995).

*Government Regulation of Religiously Based Social Services:  The First Amendment Considerations*, 19 HASTINGS CONST. L.Q. 343 (1992).

*Concepts of Church Autonomy in the First Amendment*, 13 JURIS DOCTOR 72 (1990).

*The Lemon Test:  Should it be Retained, Reformulated or Rejected?*, 4 NOTRE DAME J. OF LAW, ETHICS & PUBLIC POL'Y 513-548 (1990).

*Tort Claims against Churches and Ecclesiastical Officers:  The First Amendment Considerations*, 89 W. VA. L. REV. 1 (1986).

*Five Views of Church-State Relations in Contemporary American Thought*, 1986 BYU L. REV. 371 (1986).

*The Use of Government Funding and Taxing Power to Regulate Religious Schools*, 14 J. OF LAW & EDUCATION 553 (1985) (w/ Kline Capps); reprinted in 41 REPORT FROM THE CAPITAL 10 (May 1986).

*Religion and a Neutral State:  Imperative or Impossibility?*, 15 CUMBERLAND L. REV. 701 (1984); reprinted in abridged form in 50 VITAL SPEECHES OF THE DAY 548 (July 1, 1984), and 39 REPORT FROM THE CAPITAL 4 (June 1984).

*Establishment Clause Limits On Governmental Interference With Religious Organizations*, 41 WASH. & LEE LAW REVIEW 347 (1984).

CURRICULUM VITAE - CARL H. ESBECK
Page 6

*State Regulation of Social Services Ministries of Religious Organizations*, 16 VALPARAISO LAW REVIEW 1 (1981).

Comment, Employment Practices and Sex Discrimination, 59 *Cornell Law Review* 133 (1973).

**BOOK CHAPTERS AND BOOK REVIEWS**

*Charity for the Autonomous Self, __* CAMBRIDGE J. OF L. & RELIGION __ (2016) (review of two new monographs on charity law).

*Religion During the American Revolution and the Early Republic*, *in* LAW AND RELIGION vol. 1, chap. 4 (Silvio Ferrari, ed., Ashgate Publishing, U.K.) (2013).

*The Formation of the First Amendment Prohibition on the Establishment of Religion*, in NO ESTABLISHMENT OF RELIGION: AMERICA'S ORIGINAL CONTRIBUTION TO RELIGIOUS LIBERTY (T. Jeremy Gunn & John Witte, Jr., eds., Oxford Univ. Press 2012).

*Regulation of Religious Organizations via Governmental Financial Assistance*, in RELIGIOUS ORGANIZATIONS IN THE UNITED STATES: A STUDY OF IDENTITY, LIBERTY, AND THE LAW (James A. Serritella ed., Carolina Academic Press 2006).

*The American System of Church-State Relations (And Its Bearing on Church Autonomy)*, in CHURCH AUTONOMY: A COMPARATIVE SURVEY (Gerhard Robbers ed., Peter Lang Publishers 2001).

*The Neutral Treatment of Religion and Faith-Based Social Service Providers: Charitable Choice and Its Critics,* in WELFARE REFORM AND FAITH-BASED ORGANIZATIONS 173-217 (Derek Davis & Barry Hankins eds., 1999).

*Equal Treatment:  Its Constitutional Status,* in EQUAL TREATMENT OF RELIGION IN A PLURALISTIC SOCIETY 9-29 (Stephen V. Monsma & J. Christopher Soper eds., Eerdmans Pub. Co. 1998).

*A Typology of Church-State Relations in Current American Thought*, in RELIGION, PUBLIC LIFE, AND THE AMERICAN POLITY (Luis E. Lugo ed., Univ. of Tenn. Press 1994).

*Book Review Essay of "First Freedom: Religion and the Bill of Rights,"* by James Wood ed., 1990), in 8 J. OF LAW & RELIGION 651 (1990).

*The Establishment Clause as a Limit on Governmental Regulation of Religious Schools*, in CIVIL RIGHTS AND PRIVATE EDUCATION (Neil Devins, ed., Stanford

CURRICULUM VITAE - CARL H. ESBECK
Page 7

University Series of Falmar Press 1989).

*The Establishment Clause:  Assuring the Independence of Churches and a Neutral State*, in GOVERNMENT INTERVENTION IN RELIGIOUS AFFAIRS (Dean Kelley, ed., Pilgrim Press 1986).

Book Review essay of *The Naked Public Square:  Religion and Democracy in America*, by Richard John Neuhaus, 50 MISSOURI LAW REVIEW 201 (1985).

**LEGAL ESSAYS, BLOGS, AND OP-EDS.**

*Two Decades of Bipartisan Cooperation on Government Funding and Religion . . . this can't possibly be about the U.S.*, at Cornerstone, blog of the Religious Freedom Institute at Georgetown University, [http://www.religiousfreedominstitute.org/cornerstone/2016/8/22/two-decades-of-bipartisan-cooperation-on-government-funding-and-religion-this-cant-possibly-be-about-the-us](http://www.religiousfreedominstitute.org/cornerstone/2016/8/22/two-decades-of-bipartisan-cooperation-on-government-funding-and-religion-this-cant-possibly-be-about-the-us) (August 22, 2016).

VITAL SPEECHES OF THE DAY, *A Post-Obergefell America: Is a Season of Legal and Civic Strife Inevitable?* (January 2016).

*North Carolina suit challenges constitutionality of religious exemption for conscientious objectors*, Mirror of Justice [http://mirrorofjustice.blogs.com/mirrorofjustice/2015/12/carl-esbeck-on-a-north-carolina-case-involving-religious-accommodations-after-obergefell.html](http://mirrorofjustice.blogs.com/mirrorofjustice/2015/12/carl-esbeck-on-a-north-carolina-case-involving-religious-accommodations-after-obergefell.html) (Dec. 17, 2015).

*Third-Party Burdens, Congressional Accommodations for Religion, and the Establishment Clause*, Hearing on Oversight of the Religious Freedom Restoration Act and the Religious Land Use and Institutionalized Persons Act, before the Judiciary Committee of the U.S. House of Representatives, Subcommittee on the Constitution and Civil Justice (February 13, 2015) [http://www.irfalliance.org/wp-content/uploads/2015/02/2015-02-11-Esbeck-testimony-RFRA-RLUIPA-third-party-harms.pdf?utm_source=IRFA+e-News+Feb+26&utm_campaign=eNews+Feb+26+2015&utm_medium=email](http://www.irfalliance.org/wp-content/uploads/2015/02/2015-02-11-Esbeck-testimony-RFRA-RLUIPA-third-party-harms.pdf?utm_source=IRFA+e-News+Feb+26&utm_campaign=eNews+Feb+26+2015&utm_medium=email)

*Freedom of the Church*, a posting at the blog Cornerstone, The Berkeley Center at Georgetown University, June 3, 2014.

*Watch What You Pray For*, Christianity Today (February 2014) [http://www.christianitytoday.com/ct/2014/may-web-only/carl-esbeck-supreme-court-prayer-greece-galloway.html](http://www.christianitytoday.com/ct/2014/may-web-only/carl-esbeck-supreme-court-prayer-greece-galloway.html).

Town of Greece Symposium: *Can Government Actively Favor a Religious*

CURRICULUM VITAE - CARL H. ESBECK
Page 8

*Practice?*, (Sept. 23, 2013). http://www.scotusblog.com/2013/09/town-of-greece-symposium-can-government-actively-favor-a-religious-practice/

*A Religious Organization's Autonomy in Matters of Self-Governance:  Hosanna-Tabor and the Frist Amendment*, 13 ENGAGE 168 (2012).

*Why the Supreme Court Has Fashioned Rules of Standing Unique to the Establishment Clause*, 10 ENGAGE 83 (2009).

*The Application of RFRA to Override Employment Nondiscrimination Clauses Embedded in Federal Social Services Programs*, 9 ENGAGE 140 (2008).

*Conservatives, Evangelicals not in Lock-Step,* op-ed appearing in the LANCASTER INTELLIGENCER JOURNAL on September 21, 2006, http://local.lancasteronline.it/4/26020

*Church-State Relations in America:  What's At Stake and What's Not?*, 100 LIBERTY MAGAZINE 3 (May/June 2005).

*On Rights and Restraints,* 94 LIBERTY MAGAZINE 22-29 (March/April 1999).

*Pluralism Without a Center?  The Emergence of Many Cultures in American Society and Why It's Good*, 90 LIBERTY MAGAZINE 20 (May/June 1995).

*The Bicentennial of the U.S. Bill of Rights*, 32 DECISION MAGAZINE 16 (January 1991).

*A Case for Disestablishment of the Church of England*, 45 REPORT FROM THE CAPITAL 6 (March 1990).

*Current Practice Under 42 U.S.C. Sections 1981 and 1982*, 12 BARRISTER MAGAZINE 31 (ABA Spring 1985) (w/ Mike Shipley).

*Current Practice Under 42 U.S.C. Sections 1985 and 1986*, 11 BARRISTER MAGAZINE 34 (ABA Fall 1984) (w/ Larry Schumaker).

*Current Practice Under 42 U.S.C. Section 1983*, 10 BARRISTER MAGAZINE 31 (ABA Fall 1983).

*Back to Basics:  God, Caesar and the American Experience*, 36 CHURCH & STATE MAGAZINE 20 (April 1983).

**MONOGRAPHS**

CURRICULUM VITAE - CARL H. ESBECK
Page 9

THE FREEDOM OF FAITH-BASED ORGANIZATIONS TO STAFF ON A RELIGIOUS BASIS (Center for Public Justice, 2004) (w/ Stanley W. Carlson-Thies and Ronald J. Sider). ISBN: 0-936456-04-3

A GUIDE TO CHARITABLE CHOICE: THE RULES OF SECTION 104 OF THE 1996 FEDERAL WELFARE LAW GOVERNING STATE COOPERATION WITH FAITH-BASED SOCIAL-SERVICE PROVIDERS, (Center for Public Justice and the Christian Legal Society, 1997) (w/ Stanley Carlson-Thies).

THE REGULATION OF RELIGIOUS ORGANIZATIONS AS RECIPIENTS OF GOVERNMENTAL FINANCIAL ASSISTANCE (Center for Public Justice, 1996). ISBN: 0-936456-03-5.

**ENCYCLOPEDIA ENTRIES AND OTHER COLLECTED WORKS**

ENCYCLOPEDIA OF CHRISTIANITY IN THE UNITED STATES (Mark A. Lamport, ed., Rowman & Littlefield Publishers forthcoming 2016) (entries for *Religious Freedom Restoration Act*, *Religious Land Use & Institutionalized Persons Act*, *United States v. Ballard*, and *Everson v. Board of Education*).

ENCYCLOPEDIA OF AMERICAN CIVIL LIBERTIES (Paul Finkelman, ed., Taylor & Francis Publishers 2006) (entries of *Charitable Choice* and *Tilton v. Richardson*).

*A Retrospective on the Bush Initiative, 2001-04; and Turning Obstacles into Opportunities, 2005-08*, paper presented at the Federalist Society Conference on the Faith-Based Initiative: What's in Store for the Second Term? (Feb. 10, 2005)*, a*vailable on line at www.fed-soc.org/Publications/Transcripts/faithbased/pdf.

*Statement Before the United States House of Representatives Concerning Charitable Choice and the Community Solutions Act*, reprinted in 16 NOTRE DAME J. OF LAW, ETHICS & PUBLIC POL'Y 567 (2002).

*First Amendment Considerations and Remarks on Proceedings*, in THE ROLE OF RELIGION IN POLITICS AND SOCIETY 115-30 (Harold Heie, A. James Rudin & Marvin R. Wilson, eds., Center For Christian Studies at Gordon College and Interreligious Affairs Department of the American Jewish Committee 1998).

*American Religion and Politics: Do We Really Have a Shared Vision?,* in THE ROLE OF RELIGION IN SOCIETY 30 (American Jewish Committee 1997).

*Table of U.S. Supreme Court Decisions Relating to Religious Liberty,* 10 J. OF LAW & RELIGION 573 (1994).

*1993 Survey of Trends and Developments on Religious Liberty in the Courts*, 10 J. OF LAW & RELIGION 543 (1994).

CURRICULUM VITAE - CARL H. ESBECK
Page 10

*A Topology of Church-State Relations in Current American Thought*, 8 J. OF FAITH AND MISSION 3 (1990).

*Ecclesiastical Disciplinary Law* and *The Law of Church Employees*, a seven volume work entitled EVANGELISCHES KIRCHENLEXICON (West Germany, 1990) (encyclopedia entries describing the law of the U.S.).

*Concepts of Church Autonomy in the First Amendment*, in PROCEEDINGS OF THE ABA NATIONAL INSTITUTE ON TORT AND RELIGION (May 1989).

*A Topology of Church-State Relations in American Thought*, in 15 RELIGION AND PUBLIC EDUCATION 43 (Winter 1988) (reprint).

*1987 Survey of Trends and Developments on Religious Liberty and the Courts*, in 5 J. OF LAW & RELIGION (1988).

*Religion and a Neutral State:  Imperative or Impossibility?*, in RELIGION IN AMERICAN LIFE (Podell ed., H.W. Wilson Co. 1987) (reprint).

*1986 Survey of Trends and Developments On Religious Liberty in the Courts*, 4 J. OF LAW & RELIGION 431 (1987).

*Religious Beliefs, Human Rights and the Moral Foundation of Western Democracy*, in *1986* PAINE LECTURES IN RELIGION (C. Esbeck ed., 1986).

*1985 Survey of Trends and Developments on Religious Liberty in the Courts*, 3 J. OF LAW & RELIGION 211 (1986).

*Toward a General Theory of Church-State Relations and the First Amendment*, 4 PUBLIC LAW FORUM 325 (1985).

*The Limits on Law in Directing Moral Choice*, 34 ETERNITY MAGAZINE 64 (September 1983); reprinted in 4 CLS QUARTERLY 26 (Fall 1983).

*A Primer on Religious Liberty and the First Amendment*, 3 CLS QUARTERLY 1A (Summer 1982).

VI.      ACADEMIC & PROFESSIONAL ACTIVITIES

    I have published widely in the area of religious liberty and church-state relations. I took the lead in recognizing that the modern U.S. Supreme Court has applied the establishment clause not as an individual right, but as a structural limit on the government's authority in explicitly religious matters.  This paradigm shift has

CURRICULUM VITAE - CARL H. ESBECK
Page 11

led a movement that better explains the Court special rules on standing with respect to claims under the establishment clause, and is helping to recover notions of church autonomy in an otherwise growing regulatory environment.

I am recognized as the progenitor of "charitable choice," an integral part of the 1996 Federal Welfare Reform Act (*see* 42 U.S.C. § 604a). That legislation was later made a part of three additional federal welfare programs during the Clinton Administration. I followed up that effort by assisting in the promulgation of equal-treatment regulations during the Bush Administration. I continue to work on President Obama's Office of Faith-Based and Neighborhood Partnerships concerning such matters as the right of social-service providers to employ person of like-minded faith.

While on leave from 1999 to 2002, I directed the Center for Law & Religious Freedom and then served as Senior Counsel to the Deputy Attorney General at the U.S. Department of Justice. While directing the Center, I was part of a small advocacy team at the Senate which led to passage of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA). While at the Department of Justice I worked on first amendment matters generally. Additionally, one of my duties was to direct a task force to remove barriers to the equal-treatment of faith-based organizations applying for social-service grants.

In addition to traditional scholarship, I provide pro bono legal advice to the National Association of Evangelicals, the Center for Law & Religious Freedom, and each year author or coauthor four to six briefs *amicus curiae* on various first amendment matters in the federal and state courts.

VII.        SERVICE TO THE SCHOOL OF LAW

Over multiple years I have served as a member or chair of various committees at the MU School of Law, including the following: Tenure & Promotion Committee, Reaccreditation Self-Study Committee, Faculty Appointments, Honor Code Committee, Judicial Clerkship Committee, Standards & Readmissions Committee, Tenure & Promotion Committee, Search Committee for the Campbell Missouri Endowed Chair, and the *ad hoc* Planning Committee.

VIII.       PROFESSIONAL LICENSES & AFFILIATIONS

Bar Admissions: 1974 State of New Mexico; 1974 United States District Court for the District of New Mexico; 1976 United States Court of Appeals for the Tenth Circuit; 1982 State of Missouri; 1990 United States Court of Appeals for the Eighth Circuit; 1997 United States Supreme Court.

Member, Association of American Law Schools, American Bar Association, and Missouri Bar Association.

CURRICULUM VITAE - CARL H. ESBECK
Page 12

> Executive Committee of the Religious Liberty Practice Group of The Federalist Society, Washington, D.C.
>
> Board of Directors & Member, Christian Legal Society, Washington, D.C.
>
> Legal Counsel, National Association of Evangelicals, Washington, D.C.

August 2016

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

_____

SHARPE HOLDINGS, INC., *et al.*,

     Plaintiffs-Appellees,

    v.                        No. 14-1507

UNITED STATES DEPARTMENT
OF HEALTH AND HUMAN
SERVICES, *et al.*,

     Defendants-Appellants.

_____

## DECLARATION OF J. MATTHEW BELZ

I, J. Matthew Belz, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.     I am and have been since 2008 a member of the law firm of Ottsen, Leggat & Belz, L.C. in Clayton, Missouri. I was an associate until late in 2015, and have been a partner since that time.

2.     In 2005, I graduated from the University of Missouri-Columbia with a major in business administration and a minor in philosophy.  I graduated from the University Missouri School of Law in 2008.

3.     I am a member of the Missouri bar, the Eastern District of Missouri, and the Eighth Circuit Court of Appeals.

**Exhibit 8**

4.      My primary focus is litigation. Within that field, I have spent as much

as or more than half of my time working on 42 U.S.C. § 1983 and Religious

Freedom Restoration Act ("RFRA") cases. The bulk of my work in these cases

consists of research and drafting briefs, and I was recently lead counsel in a

Section 1983 case, *Powell v. St. Francois County*, 4:14-cv-01230 AGF (E.D. Mo.).

5.      During this case I was primarily responsible for research and drafting

pleadings and briefs. I believe the hours I have submitted were reasonably

expended.

6.      I am requesting compensation in this case at an hourly rate of $250

per hour. Based on my knowledge of prevailing market rates and substantial

research on the subject, $250 is a reasonable rate for a person of my background

and experience.

**VERIFICATION**

Declaration of J. Matthew Belz in Lieu of Affidavit pursuant to 28 U.S.C. § 1746:

I declare under penalty of perjury under the laws of the United States that the
foregoing statements are true and correct.

Executed November 3, 2017.

/s/ J. Matthew Belz
J. Matthew Belz

2

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

_____

SHARPE HOLDINGS, INC., *et al.*,

     Plaintiffs-Appellees,

   v.                                  No. 14-1507

UNITED STATES DEPARTMENT
OF HEALTH AND HUMAN
SERVICES, *et al.*,

     Defendants-Appellants.

_____

## DECLARATION OF AL W. JOHNSON

I, Al W. Johnson, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.     I am the principal and founder of New Covenant Legal Services in St. Louis, Missouri.

2.     I have been admitted to the Missouri bar and the U.S. District Court for the Eastern District of Missouri since 1981. I have been admitted to the Illinois bar since 1998.

3.     One of my practice's concentrations is in civil rights. I have also taught courses on constitutional law at Missouri Baptist University.

**Exhibit 9**

4.      I am generally familiar with the rates charged by Missouri and St. Louis lawyers in litigation, including constitutional and civil rights cases wherein attorney fees awards are applicable pursuant to 42 U.S.C. 1988.

5.      I have worked personally with Timothy Belz, Matthew Belz and Carl Esbeck in the civil rights context and am familiar with their legal work.

6.      My work with Timothy Belz has been extensive, including two substantial police misconduct cases, one of which was tried to a jury verdict in 2007 in the District Court Southern district of Illinois. My most extensive work with Timothy Belz in Section 1983 litigation was my involvement with him as co-counsel in a civil case relating to Heartland Academy Community Church. *Heartland Acad. Cmty. Church v. Waddle*, 317 F. Supp. 2d 984, 994 (E.D. Mo. 2004) *aff'd*, 427 F.3d 525 (8th Cir. 2005). Between 2001 and 2010 I worked closely with Timothy Belz in a case where an injunction was eventually obtained, *id*., and the underlying civil rights violations were presented to a jury in 2010. The 2010 case unfortunately resulted in a defendants' verdict. Based on these experiences with Timothy Belz, I know that he has a keen comprehension of Section 1983 and religious liberties law and litigation and there is no finer litigation attorney in these areas that I have ever observed.

7.      My observations of Matthew Belz are more limited but I have used him as co-counsel in over 25 cases, including a recent Section 1983 case. He was

2

my co-counsel in a complete circuit court jury trial that was completed in 2016. Although not as experienced as his father, he is an outstanding young attorney who demonstrates a high level of competence in legal research, writing and litigation.

8.      I have worked with Carl Esbeck on only two or three legal matters in the past 25 years. However, I have participated in seminars with him and heard him speak on five to six occasions at legal seminars where Section 1983 matters were the primary topic of discussion. He has an exceptional grasp of all aspects of Section 1983 and religious liberties law.

9.      Based on my experience and knowledge of the legal marketplace, I believe hourly rates of $450.00 for Timothy Belz and Carl Esbeck and $250.00 for Matthew Belz are within market norms as rates charged in a constitutional civil rights case for lawyers of their skill and experience.

### VERIFICATION

Declaration of Al W. Johnson in Lieu of Affidavit pursuant to 28 U.S.C. 1746:

I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct.

Executed November 3, 2017.

/s/ Al W. Johnson
Al W. Johnson

3

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

_____

SHARPE HOLDINGS, INC., *et al.*,

      Plaintiffs-Appellees,

   v.                       No. 14-1507

UNITED STATES DEPARTMENT
OF HEALTH AND HUMAN
SERVICES, *et al.*,

      Defendants-Appellants.

_____

## DECLARATION OF MARK F. (THOR) HEARNE II
## IN SUPPORT OF MOTION FOR ATTORNEY FEES

I, Mark F. (Thor) Hearne II, declare the following to be true based upon my knowledge and experience:

1.     I am an equity partner in the Arent Fox law firm. Before joining Arent Fox in 2010, I was an equity partner with Lathrop & Gage and managing partner for the St. Louis office of Lathrop & Gage.

2.     I graduated from Washington University School of Law in 1986. I am licensed to practice in the States of Missouri and Michigan, and in the District of Columbia. I am also admitted to practice before the United States Supreme Court, the Courts of Appeal for the Second, Fourth, Sixth, Eighth and Federal Circuits, the United States Court of Federal Claims, the United States Tax Court, and the

**Exhibit 10**

United States Court of International Trade. I have argued before the United States Supreme Court, and the Supreme Courts of Missouri, Kansas, Florida and Michigan.

3.      My practice primarily involves federal trial and appellate litigation. Many of the cases in which I am counsel are in the Court of Federal Claims and the Federal Circuit, representing owners whose property the federal government has taken in violation of the Fifth Amendment's just compensation clause. Congress adopted the fee-shifting provisions of the Uniform Relocation Assistance Act, 42 U.S.C. 4654, requiring the federal government to reimburse prevailing landowners' attorney fees and litigation expenses. Researching and resolving the government's obligation to reimburse attorney fees under federal fee-shifting statutes is a necessary and significant part of my practice. I was also counsel for Lt. Governor Peter Kinder in *Kinder v. Geithner*, 695 F.3d 772 (8th Cir. 2012), which I argued.

4.      I am chair of Arent Fox's appellate practice group. As such, I am required to be familiar with the hourly rates fee-paying clients pay attorneys possessing comparable experience in those markets where Arent Fox practices.

5.      I am familiar with the hourly rates fee-paying clients pay attorneys in St. Louis to represent them in federal litigation, including constitutional and civil rights litigation subject to federal fee-shifting statutes such as 42 U.S.C. 1988.

2

6.     I know Carl Esbeck, Timothy Belz and Matthew Belz, and I know their experience and the quality of their legal work. I was co-counsel with Carl Esbeck on amicus briefs before both the Eighth Circuit, in *Trinity Lutheran Church of Columbia, Inc. v. Pauley*, 788 F.3d 799 (8th Cir.), and in the Supreme Court, in *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012 (2017). I have known Tim Belz and Matt Belz for many years and am familiar with their reputations in the legal community and their experience.

7.     Based on my experience and knowledge of the legal marketplace, I believe hourly rates of $450.00 for Tim Belz and Carl Esbeck and $250.00 for Matt Belz are substantially below prevailing market rates for attorneys possessing their skill and experience.

FURTHER DECLARANT SAYETH NOT.


**VERIFICATION**

Declaration of Mark F. (Thor) Hearne II in Lieu of Affidavit pursuant to 28 U.S.C. 1746:

I declare under penalty of perjury under the laws of the United States that the foregoing statements are true and correct to the best of my knowledge and belief.

Executed November 3, 2017.

/s/ *Mark F. (Thor) Hearne II*
Mark F. (Thor) Hearne II

3