IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

---

SHARPE HOLDINGS, INC., *et al.*,
      Plaintiffs-Appellees,

v.

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES *et al.*,
      Defendants-Appellants.

No. 14-1507

---

## GOVERNMENT'S OPPOSITION TO APPELLEES' MOTION FOR ATTORNEY'S FEES AND EXPENSES

Pursuant to Eighth Circuit Rule 47C, defendants-appellants respectfully oppose plaintiffs' request for attorney's fees and expenses. As an initial matter, plaintiffs are not eligible for attorney's fees, because they are not prevailing parties. But even assuming that plaintiffs are prevailing parties, the fees that plaintiffs seek should be substantially reduced.

### STATEMENT

**1.** Plaintiffs brought this action challenging federal regulations that required them to cover certain contraceptives through their health-insurance plans unless, in accordance with the "religious accommodation," they submitted a form to the plan's third-party

administrator stating that they objected on religious grounds to providing such coverage. In that event, the regulations generally required the third-party administrator to provide or arrange contraceptive coverage for plan participants. Plaintiffs claimed that the religious accommodation violated their rights under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb *et seq.*

    **2.**  The district court granted plaintiffs' motion for a preliminary injunction, and the government appealed.

    In September 2015, following supplemental briefing addressing a modification to the accommodation and oral argument, this Court affirmed the district court's preliminary injunction, concluding that plaintiffs were likely to succeed on their arguments that the accommodation substantially burdened their exercise of religion and was not the least restrictive means of furthering compelling government interests.

    **3.**  Eight other circuit courts that addressed similar challenges to the accommodation ruled in favor of the government. In November 2015, the Supreme Court granted the petitions for a writ of certiorari in

some of those other cases, which were consolidated for briefing and argument.

In this case, the government filed a petition for a writ of certiorari and succeeded in its request that its petition be held pending the outcome of those other cases.

On May 16, 2016, the Supreme Court vacated the judgments in those other cases and remanded to the respective courts of appeals. *See Zubik v. Burwell*, 136 S. Ct. 1557 (2016) (per curiam). In so doing, the Supreme Court "expresse[d] no view on the merits of the cases." *Id.* at 1560. In particular, the Court "d[id] not decide whether petitioners' religious exercise has been substantially burdened, whether the Government has a compelling interest, or whether the current regulations are the least restrictive means of serving that interest." *Id.* The Court directed that on remand the parties "be afforded an opportunity to arrive at an approach going forward that accommodates petitioners' religious exercise while at the same time ensuring that women covered by petitioners' health plans receive full and equal health coverage, including contraceptive coverage." *Id.* (internal quotation marks omitted). And the Court made clear that "[n]othing in [its]

3

opinion, or in the opinions or orders of the courts below, is to affect the ability of the Government to ensure that women covered by petitioners' health plans obtain, without cost, the full range of FDA approved contraceptives." *Id.* at 1560–61 (internal quotation marks omitted). The Court observed that "[t]hrough this litigation, petitioners have made the Government aware of their view that they meet the requirements for exemption from the contraceptive coverage requirement on religious grounds." *Id.* at 1561 (internal quotation marks omitted). And the Court emphasized that "[n]othing in [its] opinion, or in the opinions or orders of the courts below, precludes the Government from relying on this notice, to the extent it considers it necessary, to facilitate the provision of full contraceptive coverage going forward." *Id.* (internal quotation marks omitted). The Court also stated that "[b]ecause the Government may rely on this notice, the Government may not impose taxes or penalties on petitioners for failure to provide the relevant notice." *Id.*

At the same time, the Supreme Court granted certiorari in this case, vacated the judgment, and remanded to this Court in light of *Zubik. See HHS v. CNS Int'l Ministries*, 136 S. Ct. 2006 (2016) (mem.). The Court included in its remand order substantially the same

4

language from the *Zubik* order, repeating that "[n]othing in the *Zubik*
opinion, or in the opinions or orders of the courts below, is to affect the
ability of the Government to ensure that women covered by
respondents' health plans obtain, without cost, the full range of FDA
approved contraceptives," and that "[n]othing . . . precludes the
Government from relying on this notice, to the extent it considers it
necessary, to facilitate the provision of full contraceptive coverage going
forward." *Id.* (internal quotation marks omitted).

**4.**  Following remand, the case was effectively stayed in this
Court.

In July 2016, the agencies issued a request for information (RFI)
to determine whether further modifications to the accommodation could
resolve the RFRA objections asserted by various organizations while
still ensuring that the affected women receive full and equal health
coverage, including contraceptive coverage. *See* 81 Fed. Reg. 47,741
(July 22, 2016). The agencies, however, could not find a way to amend
the accommodation to satisfy both objecting organizations and the
agencies' policy goals.

5

A little more than a year later, on October 6, 2017, the agencies issued new interim final rules expanding the religious exemption to include objecting employers like plaintiffs. *See* 82 Fed. Reg. 47,792 (Oct. 13, 2017). That same day, the government filed a motion to dismiss its appeal in this case, which this Court granted.

Litigation in the district court, however, remains ongoing. After this Court granted the government's motion to dismiss its appeal, plaintiffs filed a motion for a permanent injunction and declaratory relief in the district court.

## ARGUMENT

Plaintiffs seek attorney's fees under 42 U.S.C. § 1988. Section 1988 authorizes a court to award a "reasonable attorney's fee" to the prevailing party in "any action or proceeding to enforce" certain statutes, including RFRA. 42 U.S.C. § 1988(b). Although § 1988 does not, by its terms, authorize an attorney's fee award against the United States, subsection (b) of the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(b), waives the United States' sovereign immunity and makes the United States liable for such a fee award "to the same extent that any other party would be liable" under § 1988.

6

As a threshold matter, plaintiffs are not eligible for attorney's fees, because they are not prevailing parties. But even to the extent they are prevailing parties, any fee award should be substantially reduced.

## I.      Plaintiffs Are Not Prevailing Parties

Contrary to plaintiffs' suggestion (Mot. 6), plaintiffs are not prevailing parties.

The government's issuance of the new religious-exemption rule is not itself sufficient to confer prevailing-party status on plaintiffs. *See Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001) (rejecting "catalyst" theory and holding that legislative amendment to challenged statute did not render plaintiffs prevailing parties). As the Supreme Court made clear in *Buckhannon*, "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* at 605.

Nor is the preliminary injunctive relief that plaintiffs obtained sufficient to confer prevailing-party status. This Court has held that the

7

grant of a preliminary injunction may confer prevailing-party status on the plaintiff when the injunction entails a judicial determination of the likelihood of success on the merits and the plaintiff's claim for a permanent injunction is rendered moot before final judgment. *See Rogers Grp., Inc. v. City of Fayetteville*, 683 F.3d 903 (8th Cir. 2012). But here, although plaintiffs received a preliminary injunction on the merits, which this Court upheld, the Supreme Court vacated this Court's judgment. And the Supreme Court's order did not give plaintiffs any substantive success on the merits. The Court made clear that it was "express[ing] no view on the merits of the case[]," *Zubik v. Burwell*, 136 S. Ct. 1557, 1560 (2016) (per curiam), and emphasized that "[n]othing [in its order], or in the opinions or orders of the courts below, [wa]s to affect the ability of the Government to ensure that women covered by [plaintiffs'] health plans obtain, without cost, the full range of FDA approved contraceptives," *HHS v. CNS Int'l Ministries*, 136 S. Ct. 2006 (2016) (mem.) (internal quotation marks omitted). Indeed, the fact that plaintiffs continue to seek a permanent injunction in district court suggests that plaintiffs have not received the sort of "alteration in the

8

legal relationship of the parties" necessary to confer prevailing-party status. *Buckhannon*, 532 U.S. at 605.

Under these circumstances, plaintiffs cannot be considered prevailing parties.

## II.   Even If Plaintiffs Are Prevailing Parties, Any Fee Award Should Be Substantially Reduced

Even to the extent that plaintiffs are eligible for attorney's fees, any fee award should be substantially reduced. As an initial matter, although plaintiffs' request includes fees incurred throughout the entirety of the litigation, including in district court, we understand this Court's order of October 17, 2017 to have contemplated a motion under Eighth Circuit Rule 47C only for attorney's fees incurred *on appeal*. The "usual practice" of this Court is to determine the amount of fees and costs allowable for services rendered by counsel before this Court, and to leave it for the district court "to do so for services rendered before it." *Little Rock Sch. Dist. v. Arkansas*, 127 F.3d 693, 696 (8th Cir. 1997); *see also Avalon Cinema Corp. v. Thompson*, 689 F.2d 137, 138 (8th Cir. 1982) (en banc). That is because, as this Court has explained, "fee awards should be determined by the court most familiar with the legal

9

services in question." *Little Rock Sch. Dist.*, 127 F.3d at 696. Accordingly, we do not address plaintiffs' request for fees incurred in the district court proceedings.

Moreover, litigation remains ongoing in the district court: plaintiffs have filed a motion for declaratory and permanent injunctive relief. This Court may wish to delay consideration of plaintiffs' request for fees on appeal until after the district court proceedings have concluded and the district court has resolved any requests for fees incurred in the proceedings in that court.

As to the remainder of plaintiffs' fee request, plaintiffs seek $331,170 in attorney's fees (plus $1,753.72 in other expenses) incurred for work on appeal in this Court (and the Supreme Court). *See* Ex. at 1; Pls.' Mot. 23. Assuming that plaintiffs are eligible for attorney's fees, these fees should be substantially reduced. The "starting point" for determining a "reasonable fee" is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The government does not challenge the hourly rates requested by plaintiffs' counsel. But counsel have claimed an unreasonable number of hours, and the fees

10

that plaintiffs seek should therefore be reduced. Plaintiffs did not

prevail in the Supreme Court, and this Court should take into account

their limited degree of success, in determining the fee award. In

addition, the fees that plaintiffs seek should also be reduced for time

that is not compensable or that was otherwise not reasonably expended,

as well as to account for plaintiffs' inadequate documentation.

### A. The Fee Award Should Be Reduced to Reflect the Limited Degree of Success

As the Supreme Court has emphasized, "the most critical factor"

in determining the proper amount of a fee award is "the degree of

success obtained." *Hensley*, <u>461 U.S. at 436</u>. "That the plaintiff is a

'prevailing party,'" the Court has explained, "may say little about

whether the expenditure of counsel's time was reasonable in relation to

the success achieved." *Id.*; *see also id.* at 433 (describing the concept of

"prevailing party" as "a generous formulation that brings the plaintiff

only across the statutory threshold" for attorney's fees). A court should

therefore "focus on the significance of the overall relief obtained by the

plaintiff in relation to the hours reasonably expended on the litigation."

*Id.* at 435.

11

Here, as discussed, although plaintiffs initially obtained a
preliminary injunction that was upheld by this Court, the Supreme
Court vacated this Court's judgment and emphasized that "nothing . . .
[wa]s to affect the ability of the Government to ensure that women
covered by [plaintiffs'] health plans obtain, without cost, the full range
of FDA approved contraceptives." *CNS Int'l Ministries*, 136 S. Ct. at
2006. In light of that, plaintiffs achieved, at best, only partial success
(as further evidenced by the fact that they continue to seek permanent
injunctive relief in district court).

Where, as here, a plaintiff has achieved only partial success, a
court "may attempt to identify specific hours that should be eliminated,
or it may simply reduce the award to account for the limited success."
*Hensley*, 461 U.S. at 436–37. A 40% reduction in the total fees awarded
would be appropriate here.

### B.    The Fee Award Should Also Be Reduced for Lack of Billing Judgment, Inadequate Documentation, and Time That Was Unreasonable, Unnecessary, or Outside the Litigation

Even apart from the fact that plaintiffs achieved—at best—only
limited success, the number of hours for which plaintiffs seek attorney's

fees is unreasonable. An award of attorney's fees may compensate only for hours that were "reasonably expended." *Hensley*, 461 U.S. at 434 (internal quotation marks omitted). Counsel for the prevailing party must exercise the same "billing judgment" as it would in billing a private client, "exclud[ing] from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* (internal quotation marks omitted). And it is "the fee applicant's burden to establish entitlement to a particular award by presenting adequate documentation of its efforts in the litigation." *United HealthCare Corp. v. American Trade Ins. Co.*, 88 F.3d 563, 575 (8th Cir. 1996). Plaintiffs have not carried that burden here.

### 1.   The Fee Award Should Be Reduced for Lack of Billing Judgment and Inadequate Documentation

Plaintiffs' counsel report a total of 752.4 hours of work on appeal in this Court, including 251.8 hours on "[i]nitial correspondence and briefing"; 102.9 hours related to oral argument; 123.3 hours on 28(j) letters; and 85.6 hours on "[c]orrespondence, research," "[s]tatus report work, etc." when the case was effectively stayed after the Supreme Court's remand. Pls.' Mot. Ex. 2. These hours seem excessive,

13

particularly in light of the "more than 30 years [of] experience" that plaintiffs' lead counsel has in "constitutional law, with a particular emphasis on religious liberty." *Id.* Ex. 6, at 2 (decl. of Timothy Belz).[1] *Cf. Glassroth v. Moore*, 347 F.3d 916, 919 (11th Cir. 2003) (observing that a factor to be considered in determining whether hours spent were reasonable is that "lead counsel . . . is an expert in this area").

And there is no evidence that counsel exercised the requisite billing judgment. While plaintiffs' lead counsel declares that "the hours I report in the invoices submitted to the Court represent substantially fewer hours than I actually spent on this matter," Pls.' Mot. Ex. 6, at 3,[2] counsel has provided no record of the number of hours or the nature of work excluded, *cf. Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 769 n.9 (5th Cir. 1996) ("Ideally, billing judgment is reflected in the fee application, showing not only hours claimed, but also hours written off." (internal quotation marks omitted)); *National Ass'n of Concerned*

---

[1] *See also* Pls.' Mot. Ex. 7, at 2 (decl. of Carl H. Esbeck) (describing "more than 40 years' experience in constitutional litigation, with a particular emphasis on the statutory and constitutional rights bearing on religious freedom").

[2] *See also* Pls.' Mot. Ex. 8, at 2 (decl. of J. Matthew Belz) ("I believe the hours I have submitted were reasonably expended.").

14

*Veterans v. Secretary of Def.*, 675 F.2d 1319, 1327–28 (D.C. Cir. 1982) (per curiam) ("The fee application should . . . indicate whether nonproductive time . . . was excluded and, if time was excluded, the nature of the work and the number of hours involved should be stated.").

Moreover, plaintiffs have not provided "sufficient detail" to "enable the court to determine with a high degree of certainty that [the hours reported] were actually and reasonably expended." *United Slate, Tile & Composition Roofers v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 n.2 (6th Cir. 1984); *see also Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 972 (D.C. Cir. 2004) ("[B]ecause the time records contain so little information, we have no basis for concluding that hours that appear to be excessive and redundant are in fact anything other than excessive and redundant."). Many time entries "lump together multiple tasks," leaving the court "to approximate the amount of time which should be allocated to each task." *Role Models*, 353 F.3d at 971 (internal quotation marks omitted). And many time entries fail to adequately describe the reported work, "making it impossible for the court to gage whether the task performed was warranted [and] . . . if the time factor

15

allocated was appropriate or excessive." *Tennessee Gas Pipeline Co. v. 104 Acres of Land*, 32 F.3d 632, 634 (1st Cir. 1994).

For example, counsel's time report contains over *fifty* entries referring to communications with other attorneys in similar cases. *See, e.g.*, Pls.' Mot. Ex. 1, at 2 (5/27/14) (referring to "communications with similarly situated counsel").[3] But in most of the entries, these communications are "lumped together" with other tasks, making it impossible to determine how much time was actually spent communicating with counsel in other cases. And there is not enough information about the nature of or reasons for these communications to determine whether they are compensable.

---

[3] *See* Pls.' Mot. Ex. 1, at 2 (3/25/14); *id.* (3/26/14); *id.* (3/28/14); *id.* (5/22/14); *id.* at 3 (5/30/14); *id.* (6/4/14); *id.* (6/30/14); *id.* at 4 (7/23/14); *id.* (8/24/14); *id.* (8/28/14); *id.* (9/15/14); *id.* (10/22/14); *id.* (10/26/14); *id.* at 5 (10/30/14); *id.* (11/3/14); *id.* (11/17/14); *id.* (12/3/14); *id.* (12/4/14); *id.* (12/5/14); *id.* (12/6/14); *id.* (12/7/14); *id.* (12/8/14); *id.* (1/23/15); *id.* at 6 (2/12/15); *id.* (3/10/15); *id.* (3/11/15); *id.* (4/27/15); *id.* (4/29/15); *id.* (6/2/15); *id.* at 9 (3/30/16); *id.* (3/31/16); *id.* (4/1/16); *id.* (4/10/16); *id.* (5/16/16); *id.* (5/19/16); *id.* (6/29/16); *id.* (7/21/16); *id.* (7/22/16); *id.* (7/23/16); *id.* (9/15/16); *id.* (9/16/16); *id.* (9/18/16); *id.* at 10 (11/17/16); *id.* (3/27/17); *id.* (3/30/17); *id.* (4/25/17); *id.* (4/26/17); *id.* (4/28/17); *id.* (4/30/17); *id.* (6/8/17); *id.* at 11 (6/30/17); *id.* (8/29/17); *id.* (9/19/17); *id.* (9/20/17); *id.* (10/4/17); *id.* (10/16/17).

Moreover, it appears that at least some of the time spent communicating with other attorneys may not be compensable. For example, counsel reports a "phone conference with Mark Rienzi at Becket Fund to share my ideas and pass along [client's] ideas." Pls.' Mot. Ex. 1, at 9 (3/30/16). The Becket Fund was not acting as counsel in this case. To the extent this time entry is referring to ideas about a different case with which the Becket Fund was involved, the time spent is not compensable. Likewise, counsel reports time spent "shar[ing] research with attorneys similarly situated." *Id.* at 6 (2/12/15); *see also id.* (3/11/15) ("sharing our[]" 28(j) letter). Plaintiffs are not entitled to fees for assisting counsel or plaintiffs in other cases.

Likewise, counsel reports an "extended telephone conversation with Woody Cozad to answer questions about Sharpe Holdings case asked by Senator Blunt." Pls.' Mot. Ex. 1, at 9 (3/29/16). Such time clearly was not spent on the prosecution of this litigation and is not compensable.

These entries underscore the need for the court to evaluate the reasonableness of the time claimed, and they illustrate why the "block billing" and lack of detail in plaintiffs' time reports are so problematic—

without sufficient detail, it is impossible to determine whether the time reported is compensable and whether the requested fees are reasonable.

The Court should therefore reduce the requested hours by 15% to account for plaintiffs' inadequate records and to "substitute for the exercise of billing judgment." *Walker*, 99 F.3d at 770 (reducing award by 15%); *see also Lahiri v. Universal Music & Video Distribution Corp.*, 606 F.3d 1216, 1222–23 (9th Cir. 2010) (noting report that concluded that "block billing may increase time by 10% to 30%," and approving 30% reduction applied to 80% of billable hours, where district court calculated 80% block-billing rate); *Jensen v. Clarke*, 94 F.3d 1191, 1203 (8th Cir. 1996) (upholding 10% reduction where most records were sufficiently detailed but some were "not sufficient to make an intelligent determination as to whether the hours expended were in fact reasonable" (internal quotation marks omitted)).

### 2. The Fees Sought for Responding to the Government's Certiorari Petition Should Be Substantially Reduced

Plaintiffs' lack of billing judgment is also reflected in the hours they report for responding to the government's petition for a writ of certiorari. While plaintiffs, as a general matter, are entitled to fees

18

incurred in responding to the government's petition in this case, the 43.6 hours that counsel spent (Pls.' Mot. Ex. 2) were largely unnecessary. As plaintiffs made clear in their response, they "d[id] not oppose the [g]overnment's request that the Court dispose of [the government's] petition in accordance with the forthcoming decision in *Zubik*." Pls.' Mot. Ex. 3, at 10 (Br. for Resp'ts at 3, *HHS v. CNS Int'l Ministries*, No. 15-775 (Jan. 28, 2016)). Nonetheless, plaintiffs went on to address what they described as "persistent mischaracterizations in the [g]overnment's petition." *Id.* at 11 (Br. for Resp'ts at 4). But that was a merits issue. And because the Supreme Court's disposition of *Zubik* would have governed this case, there was no need for plaintiffs to address the issue in response to the government's certiorari petition. Accordingly, the Court should reduce the claimed hours by 75%.

### 3.     Plaintiffs Are Not Entitled to Fees for Filing an Amicus Brief in Another Case

Plaintiffs' counsel report 63.8 hours for filing an amicus brief in *Zubik* (Mot. Ex. 2), but plaintiffs are not entitled to compensation for any of that time. As the D.C. Circuit explained in a related context, EAJA "expressly forbids the award of fees in actions over which the

court lacks jurisdiction." *Lundin v. Mecham*, 980 F.2d 1450, 1461 (D.C. Cir. 1992). As a result, a prevailing party in one case may not recover attorney's fees for participating as an amicus in a related case. *See id.*; *see also id.* at 1462 (rejecting argument that "since the related cases were necessary to prevail in the litigation below, the costs incurred [in appearing as amici] in those suits ought to be recoverable from this court").[4]

Although *Lundin* involved an award of attorney's fees under EAJA subsection (d), 28 U.S.C. § 2412(d), its reasoning applies with equal force here, as it is EAJA subsection (b), 28 U.S.C. § 2412(b), that waives the United States' sovereign immunity with respect to fee awards under § 1988. Like subsection (d), subsection (b) only permits a court "having jurisdiction of such action" to award attorney's fees incurred in a civil action. *Compare* 28 U.S.C. § 2412(b), *with id.* § 2412(d)(1)(A). Because this Court did not have jurisdiction over *Zubik*

---

[4] The D.C. Circuit also observed that EAJA—like § 1988— "apparently limits recovery to *parties*." *Lundin*, 980 F.2d at 1461. As a result, the court suggested, the plaintiffs' claim for fees "may be statutorily barred, at least to the extent that they seek to recover for fees incurred in cases in which they appeared as *amici*." *Id.*

20

or the other cases with which it was consolidated, the Court may not award fees for work that plaintiffs performed as amici in those cases.

None of the cases plaintiffs cite (Mot. 10) to support their request for fees for amicus participation in related litigation involved a fee award against the United States under § 1988 or EAJA: *National Ass'n of Concerned Veterans*, 675 F.2d 1319, involved a fee award under the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E); *Hasbrouck v. Texaco, Inc.*, 879 F.2d 632 (9th Cir. 1989), involved a fee award against a private party under the antitrust laws; and *Boehner v. McDermott*, 541 F. Supp. 2d 310 (D.D.C. 2008), involved a fee award against an individual under 18 U.S.C. § 2520. The reasoning of those cases does not apply here.

But even if fees for an amicus brief in a related case could be recovered in a fee award against the United States under § 1988 as a general matter, plaintiffs still would not be entitled to compensation here. Simply put, the hours spent on plaintiffs' amicus brief were not "reasonably expended." *Hensley*, 461 U.S. at 434 (internal quotation marks omitted). Besides plaintiffs' brief, there were *forty* other amicus briefs filed in support of the *Zubik* petitioners, not to mention the two

21

sets of briefs filed by the petitioners themselves. And as plaintiffs themselves explain, their amicus brief merely "detailed the many changes . . . made by the government to make the contraceptive mandate less restrictive to religious freedom." Mot. 9. This was not necessary to the Supreme Court's resolution of the questions presented by the *Zubik* litigation, namely, whether the religious accommodation imposed a substantial burden on objecting employers' exercise of religion and, if so, whether the then-current accommodation was the least restrictive means of furthering a compelling governmental interest. The time counsel spent, therefore, was not "reasonably expended" and is not compensable here.

Moreover, as discussed, the Supreme Court ultimately vacated this Court's judgment, and plaintiffs achieved only a partial success in light of the Supreme Court's order in *Zubik*. An award of attorney's fees for plaintiffs' amicus brief would thus be inappropriate.

### 4. Plaintiffs Cannot Claim Attorney's Fees for Their Response to the RFI

Plaintiffs likewise are not entitled to fees for any of the 18.6 hours that counsel report (Mot. Ex. 2) for submitting comments in response to

the agencies' RFI. As the Supreme Court has made clear, "[t]he time that is compensable under § 1988 is that reasonably expended *on the litigation*." *Webb v. Board of Educ.*, <u>471 U.S. 234, 242</u> (1985) (internal quotation marks omitted). Here, however, plaintiffs' response to the RFI was not part of the litigation or otherwise necessary to the litigation. As in *Webb*, plaintiffs' voluntary participation in a separate administrative process not required by the litigation is not compensable under § 1988.

In *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, <u>478 U.S. 546, 559</u> (1986), the Supreme Court upheld attorney's fees for time spent in participating in regulatory proceedings, where participation was "necessary to enforce the remedy ordered by the District Court." As the Court explained, "participation in these administrative proceedings was crucial to the vindication of [the plaintiffs'] rights under the consent decree." *Id.* at 561.

The same cannot be said of the RFI here. While the Supreme Court in *Zubik* directed that the "parties on remand . . . be afforded an opportunity . . . to resolve any outstanding issues between them," <u>136 S. Ct. at 1560</u>, nothing in the Court's order required the RFI or plaintiffs' submission of comments in response to the RFI.

## C.   Costs for Plaintiffs' Supreme Court Filings Are Not Recoverable

While this Court has already granted plaintiffs' taxable costs on appeal (*see* Order (Oct. 24, 2017)), plaintiffs request (Mot. 22–23) an additional $1,753.72 in printing costs incurred for their Supreme Court filings—their amicus brief in *Zubik* and their response to the government's petition for a writ of certiorari in this case. These costs, however, are not recoverable. The Supreme Court Rules make clear that "[t]he Clerk's fees and the cost of printing the joint appendix are the only taxable items in [the Supreme] Court." Sup. Ct. R. 43.3. Plaintiffs have offered no basis for recovering costs under § 1988 that are not otherwise taxable in the Supreme Court.

\*     \*     \*

In sum, plaintiffs are not prevailing parties and thus are not eligible for an award of attorney's fees. But to the extent plaintiffs are considered prevailing parties, plaintiffs' request for attorney's fees should be reduced as follows:

24

|  | Hours | Fees |
|---|---|---|
| Total hours / fees requested for appeal (excluding district court proceedings) | 859.8 | $331,170 |
| Less: 75% reduction in hours for response to government's certiorari petition | (32.7) | (12,540) |
| Less: *Zubik* amicus brief | (63.8) | (24,190) |
| Less: RFI response | (18.6) | (7,350) |
| Subtotal | 744.7 | $287,090 |
| Less: 15% reduction for inadequate records and lack of billing judgment | (111.7) | (43,064) |
| Subtotal | 633.0 | $244,027 |
| Less: 40% reduction for partial success | (253.2) | (97,611) |
| **Adjusted award for appeal** | **379.8** | **$146,416** |

Additional detail is provided in the attached exhibit.

25

## CONCLUSION

For the foregoing reasons, this Court should deny plaintiffs' request for attorney's fees and for an additional $1,753.72 in costs. Alternatively, this Court should reduce plaintiffs' request for fees to $146,416, and should deny in its entirety plaintiffs' request for additional costs.

Respectfully submitted,

MATTHEW C. COLLETTE
JAYNIE LILLEY

 /s/ Karen Schoen
KAREN SCHOEN
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7533*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue N.W.*
   *Washington, D.C. 20530*
   *(202) 514-3159*
   *karen.a.schoen@usdoj.gov*

DECEMBER 2017

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION

I hereby certify that this motion complies with the type-volume limitation in Fed. R. App. P. 27(d)(2)(A) because it has been prepared in 14-point Century Schoolbook, a proportionally spaced font, and contains 4,743 words, according to the count of Microsoft Word.

/s/ Karen Schoen
Karen Schoen

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2017, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ Karen Schoen
Karen Schoen

**EXHIBIT**

| | Hours | | | | Fees ($)* | | | |
|---|---|---|---|---|---|---|---|---|
| | T. Belz | M. Belz | C. Esbeck | Total | T. Belz | M. Belz | C. Esbeck | Total |
| **8th Circuit Prior to Supreme Court** | | | | | | | | |
| Initial correspondence and briefing | 149.3 | 88.7 | 13.8 | 251.8 | $67,185 | $22,175 | $6,210 | $95,570 |
| Supplemental briefing | 47.7 | 43.5 | 2.7 | 93.9 | 21,465 | 10,875 | 1,215 | 33,555 |
| Oral argument, moot, preparation, etc. | 58.8 | 31.5 | 12.6 | 102.9 | 26,460 | 7,875 | 5,670 | 40,005 |
| 28(j) letters, 8th Cir. decision, etc. | 62.7 | 41.1 | 19.5 | 123.3 | 28,215 | 10,275 | 8,775 | 47,265 |
| **Total** | **318.5** | **204.8** | **48.6** | **571.9** | **$143,325** | **$51,200** | **$21,870** | **$216,395** |
| **Eighth Circuit After Remand** | | | | | | | | |
| Correspondence, research, etc. | 37.6 | 0 | 0 | 37.6 | $16,920 | $0 | $0 | $16,920 |
| RFI response | 13.5 | 5.1 | 0 | 18.6 | 6,075 | 1,275 | 0 | 7,350 |
| Status report work, etc. | 31.8 | 7.1 | 9.1 | 48.0 | 14,310 | 1,775 | 4,095 | 20,180 |
| Fee petition and settlement work, etc. | 51.7 | 24.6 | 0 | 76.3 | 23,265 | 6,150 | 0 | 29,415 |
| **Total** | **134.6** | **36.8** | **9.1** | **180.5** | **$60,570** | **$9,200** | **$4,095** | **$73,865** |
| **TOTAL REQUEST FOR EIGHTH CIRCUIT** | **453.1** | **241.6** | **57.7** | **752.4** | **$203,895** | **$60,400** | **$25,965** | **$290,260** |
| **US Supreme Court** | | | | | | | | |
| *Zubik* amicus brief | 41.2 | 22.6 | 0 | 63.8 | $18,540 | $5,650 | $0 | $24,190 |
| Response to cert. petition | 19.8 | 14.5 | 9.3 | 43.6 | 8,910 | 3,625 | 4,185 | 16,720 |
| **Total** | **61.0** | **37.1** | **9.3** | **107.4** | **$27,450** | **$9,275** | **$4,185** | **$40,910** |
| **TOTAL REQUEST FOR APPEAL** | **514.1** | **278.7** | **67.0** | **859.8** | **$231,345** | **$69,675** | **$30,150** | **$331,170** |

\* Applying hourly rates of $450 for T. Belz, $250 for M. Belz, and $450 for C. Esbeck.

1

|  | Hours | | | | Fees ($)* | | | |
|---|---|---|---|---|---|---|---|---|
|  | T. Belz | M. Belz | C. Esbeck | Total | T. Belz | M. Belz | C. Esbeck | Total |
| Total Request for Appeal | 514.1 | 278.7 | 67.0 | 859.8 | $231,345 | $69,675 | $30,150 | $331,170 |
| ADJUSTMENTS: | | | | | | | | |
| Less: 75% reduction in hours for response to cert. petition | (14.9) | (10.9) | (7.0) | (32.7) | (6,683) | (2,719) | (3,139) | (12,540) |
| Less: *Zubik* amicus brief | (41.2) | (22.6) | 0 | (63.8) | (18,540) | (5,650) | 0 | (24,190) |
| Less: RFI response | (13.5) | (5.1) | 0 | (18.6) | (6,075) | (1,275) | 0 | (7,350) |
| Subtotal | 444.6 | 240.1 | 60.0 | 744.7 | $200,048 | $60,031 | $27,011 | $287,090 |
| Less: 15% reduction for inadequate records and lack of billing judgment | (66.7) | (36.0) | (9.0) | (111.7) | (30,007) | (9,005) | (4,052) | (43,064) |
| Subtotal | 377.9 | 204.1 | 51.0 | 633.0 | $170,040 | $51,027 | $22,960 | $244,027 |
| Less: 40% reduction for partial success | (151.1) | (81.6) | (20.4) | (253.2) | (68,016) | (20,411) | (9,184) | (97,611) |
| Subtotal | 226.7 | 122.5 | 30.6 | 379.8 | $102,024 | $30,616 | $13,776 | $146,416 |
| ADJUSTED FEE AWARD FOR APPEAL | 226.7 | 122.5 | 30.6 | 379.8 | $102,024 | $30,616 | $13,776 | $146,416 |

* Applying hourly rates of $450 for T. Belz, $250 for M. Belz, and $450 for C. Esbeck.

2