IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| SHARPE HOLDINGS, INC., *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, *et al.*, | ) ) ) ) |
| Defendants. | ) ) ) ) |

Case No. 2:12-cv-00092-DDN

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR
PERMANENT INJUNCTION AND DECLARATORY RELIEF**

Plaintiffs CNS International Ministries, Inc. and Heartland Christian College seek a permanent injunction and declaratory relief against regulations that no longer apply to them. Their request should be denied as moot. Plaintiffs are two non-profit organizations that provide health benefits to their employees through self-insured group health plans. Plaintiffs initially contended that federal regulations, which had required them to offer coverage of contraceptive services ("the Mandate"), violated the Religious Freedom Restoration Act ("RFRA") and other provisions of law. But Plaintiffs are no longer subject to that requirement.

On October 6, 2017, in an effort to address serious religious and moral objections and finally bring the litigation surrounding the Mandate to a close, the Departments of Health and Human Services ("HHS"), Labor, and the Treasury (collectively, "the Agencies") issued interim final rules ("IFRs") that allow the Health Resources and Services Administration ("HRSA") to keep the Mandate in place, but exempt religious and moral objectors such as Plaintiffs from having to include contraceptive coverage to which they object in insurance plans offered to their employees.  *See* Religious Exemptions and Accommodations for Coverage of Certain Preventive

Services Under the Affordable Care Act, 82 Fed. Reg. 47,792 (Oct. 13, 2017) (the "Religious Exemption Rule"); Moral Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act, 82 Fed. Reg. 47,838 (Oct. 13, 2017) (collectively, "the Rules").  Despite the issuance of the Rules, on November 17, 2017, Plaintiffs filed a motion asking the Court to permanently enjoin the Agencies from enforcing the Mandate against Plaintiffs and to declare that the Mandate violates RFRA as applied to Plaintiffs.  *See* Pls.' Mot. for Permanent Inj. and Declaratory Relief, ECF No. 138; Mem. in Supp. of Pls.' Mot. for Permanent Inj. and Declaratory Relief ("Pls.' Mem."), ECF No. 139 .  Plaintiffs' motion should be denied as moot.

A contrary conclusion should in no event rest on Plaintiffs' broad suggestion that "a future administration" might change the law.  Pls.' Mem. at 14.  In that event, Plaintiffs might have a new cause of action; it would not revive this one.  Any conclusion that this case continues to present a live controversy could instead be based only on the highly unusual circumstances of this case, where Plaintiffs have contended that they are uncertain whether dissolving the preliminary injunction entered by this Court could expose Plaintiffs to retroactive fines and penalties.  *See id*.  That argument, too, is incorrect: The Agencies have expressly concluded that requiring employers with sincerely held religious objections to provide their employees with contraceptive coverage would violate RFRA.  Accordingly, even if dissolving this Court's preliminary injunction might otherwise expose Plaintiffs to the theoretical possibility of liability for their past failure to comply with the Mandate, the Agencies disclaim any intent or ability to take such enforcement action.  And any lingering concern Plaintiffs might have could be addressed, if necessary, with a statement in the order of dismissal explaining that the case is

2

moot because the Agencies have disclaimed any intent to impose fines and penalties for any past noncompliance with the contraceptive coverage requirement.

The Agencies have concluded that the contraceptive-coverage mandate violates RFRA as applied to employers like Plaintiffs and have expanded the religious exemption from the Mandate through the Rules, so Plaintiffs can now qualify for the exemption. And the Agencies never enforced the prior version of the Mandate against Plaintiffs or similar employers with religious objections. Plaintiffs do not allege otherwise. This case is moot and should be dismissed.

## BACKGROUND

The preexisting regulatory accommodations were discussed in detail in Defendants' opposition to Plaintiffs' motion for temporary restraining order and preliminary injunction, and Defendants respectfully refer the Court to that filing for the relevant background of the Mandate. *See* Defs.' Mem. in Opp'n to Pls.' Mot. for TRO & Prelim. Inj. at 5-9, ECF No. 68.

In 2014, the Supreme Court held that, at least as applied to closely held for-profit corporations with religious objections to providing contraceptive coverage, the contraceptive coverage mandate violated RFRA. *See Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2775 (2014). The Court explained that the "contraceptive mandate substantially burden[ed] the exercise of religion" by those employers because it put them to the choice of violating their sincerely held religious beliefs or facing significant fines. *Id.* at 2757 (citation omitted). The Court also held that the application of the Mandate to them was not the least restrictive means of achieving a compelling governmental interest, because the accommodation made available to certain non-profit organizations was a less restrictive alternative than applying the Mandate

3

directly.  *See id.* at 2779–80.  The Court cautioned that it was not deciding "whether an approach of this type complies with RFRA for purposes of all religious claims."  *Id.* at 2782.

Less than one week later, the Court issued an order in a case involving an employer whose objections to the Mandate could not be satisfied by use of the accommodation process.  *See Wheaton Coll. v. Burwell*, 134 S. Ct. 2806 (2014).  Wheaton College sincerely believed that executing the self-certification form and submitting it to its health insurance issuer or third-party administrator made it materially complicit in providing the forms of contraceptive coverage to which it objected.  *Id.* at 2808.  The Court accordingly identified an alternative form of accommodation for Wheaton College during the litigation: the college was to "inform[] the Secretary of Health and Human Services in writing that it is a nonprofit organization that holds itself out as religious and has religious objections to providing coverage for contraceptive services," but was not required to use the self-certification form or send copies of that form to its health insurance issuers or administrators.  *Id.* at 2807.  This alternative form of accommodation would neither affect "the ability of [Wheaton College's] employees and students to obtain, without cost, the full range of FDA approved contraceptives," nor preclude the government from relying on the notice it received from Wheaton College "to facilitate the provision of full contraceptive coverage under the Act."  *Id.*

The Agencies responded to these litigation developments through various rulemakings.  The Agencies issued a set of IFRs to augment the regulatory accommodation process in light of the *Wheaton College* order.  Coverage of Certain Preventive Services Under the Affordable Care Act, 79 Fed. Reg. 51,092 (Aug. 27, 2014).  They also issued a NPRM to extend the accommodation process to closely held for-profit entities with religious objections to contraceptive coverage in light of the decision in *Hobby Lobby*.  *See* 79 Fed. Reg. 51,118 (Aug.

4

27, 2014).  On July 14, 2015, the Agencies finalized both the August 2014 IFRs and the August 2014 proposed rules.  *See* 80 Fed. Reg. 41,318, 41,324 (July 14, 2015).

Meanwhile, the litigation about whether the accommodation process satisfied the government's RFRA obligations toward non-profit religious entities generated a split among the federal appeals courts, and the Supreme Court granted certiorari in *Zubik v. Burwell*, Civ. Action No. 14-1418, 2016 WL 1203818 (Mar. 29, 2016), to resolve it.  After oral argument, the Court asked the parties to submit supplemental briefs addressing "whether and how contraceptive coverage may be obtained by petitioners' employees through petitioners' insurance companies, but in a way that does not require any involvement of petitioners beyond their own decision to provide health insurance without contraceptive coverage to their employees."  *Id.* at *2.  In supplemental briefing, the Agencies acknowledged that the accommodation process for eligible organizations with insured plans could operate without any formal self-certification or written notice being submitted by eligible organizations, so long as the organization provided the insurer "any request" to exclude coverage of contraceptives, albeit at a cost to its sound implementation. Suppl. Br. for Resp'ts at 15, *Zubik v. Burwell*, 136 S. Ct. 1557 (2016).  On May 16, 2016, the Supreme Court issued a *per curiam* opinion, vacating the judgments of the courts of appeals and remanding the cases "[i]n light of the . . . substantial clarification and refinement in the positions of the parties" in their supplemental briefs.  136 S. Ct. at 1560.  The Court stated that it anticipated that, on remand, the courts of appeals would "allow the parties sufficient time to resolve any outstanding issues between them."  *Id*.

The Agencies then issued a Request for Information ("RFI") seeking public comment on options for modifying the accommodation process in light of the supplemental briefing in *Zubik* and the Court's remand order.  Coverage for Contraceptive Services, 81 Fed. Reg. 47,741 (July

5

22, 2016). The Agencies explained that they were using the RFI procedure because the issues addressed in the supplemental briefing in *Zubik* affect a wide variety of stakeholders, including many who were not parties to the cases before the Supreme Court. *Id*. at 47,742-43.

In response to the RFI, the Agencies received over 54,000 public comments.[1] On January 9, 2017, the Agencies issued a "FAQ" document noting that, after reviewing these comments and considering various options, the Agencies could not find a way to amend the accommodation so as to satisfy objecting organizations while pursuing the Agencies' policy goals. *See* FAQs About Affordable Care Act Implementation Part 36 (Jan. 9, 2017). Thus, the litigation on remand remained unresolved.

On May 4, 2017, the President issued an Executive Order titled "Promoting Free Speech and Religious Liberty." Exec. Order No. 13,798, 82 Fed. Reg. 21,675 (May 4, 2017). Regarding "Conscience Protections with Respect to Preventive-Care Mandate," that order instructed the Agencies to "consider issuing amended regulations, consistent with applicable law, to address conscience-based objections to the preventive-care mandate promulgated under section 300gg-13(a)(4) of title 42, United States Code." *Id*. at 21,675.

"Consistent with the President's Executive Order and the Government's desire to resolve the pending litigation and prevent future litigation from similar plaintiffs," the Agencies concluded that it was "appropriate to reexamine the exemption and accommodation scheme currently in place for the Mandate" and issued IFRs on October 6, 2017. Religious Exemption Rule, 82 Fed. Reg. 47,792, 47,799; *accord* Moral Exemption Rule, 82 Fed. Reg. 47,838. The Agencies requested public comments on the Rules by December 5, 2017. Those comments are

---

[1] Available at: https://go.usa.gov/xnWVG and https://go.usa.gov/xnWVs.

6

now under review, and the Agencies are in the process of considering, based on those comments, whether the exemptions should be maintained in their current form when the Rules are finalized.

The Religious Exemption Rule expands the exemption for non-governmental plan sponsors that object to providing all or a subset of contraceptive services based on sincerely held religious beliefs, as well as institutions of higher education in their arrangement of student health plans, to the extent of these entities' sincerely held religious beliefs. 45 C.F.R. § 147.132(a)(2).[2] The Rules also maintain the accommodation process as a voluntary mechanism to provide contraceptive availability for women covered by the plans of exempt entities that choose to use it. 45 C.F.R. § 147.131; 26 C.F.R § 54.9815-2713A; 29 C.F.R. § 2590.715-2713A. On October 6, 2017, the same date that the Agencies issued the Rules, HRSA updated its Guidelines to exempt entities and individuals that qualify for exemptions from the Guidelines' requirements. *See* HRSA, Women's Preventive Services Guidelines, http://www.hrsa.gov/womens-guidelines.

The Rules are currently subject to eight legal challenges, including two in which the plaintiffs are seeking preliminary injunctions to prevent the government from enforcing the Rules. Hearings on the plaintiffs' preliminary injunction motions are schedule to be held on December 12, 2017 and December 14-15, 2017.

---

[2] The Moral Exemption Rule provides an exemption for certain non-governmental plan sponsors that object to providing all or a subset of contraceptive services based on sincerely held moral convictions, as well as institutions of higher education in their arrangement of student health plans, to the extent of these entities' sincerely held moral convictions. 45 C.F.R. § 147.133(a)(2). Each rule also includes an "individual exemption" that allows a willing plan sponsor of a group health plan or a willing health insurance issuer offering group or individual health insurance coverage to provide a separate benefit package option or separate policy, certificate, or contract of insurance to an individual who objects to coverage for contraceptive services based on sincerely held religious beliefs or moral convictions. *Id*. §§ 147.132(b), 147.133(b).

7

**ARGUMENT**

**I.      THIS CASE SHOULD BE DISMISSED AS MOOT**

Article III of the Constitution defines the outer bounds of the constitutional jurisdiction of federal courts by restricting the exercise of judicial power only to "Cases" or "Controversies." U.S. Const., art. III, § 2. In part, this constitutional limitation defines "the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government." *Flast v. Cohen*, 392 U.S. 83, 95 (1968); *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997). Absent an ongoing case or controversy, a case is moot and a court lacks jurisdiction. *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). As the Supreme Court has observed, "[m]ootness has been described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *Arizonans for Official English*, 520 U.S. at 68 n.22 (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)).

Intervening events that occur while litigation is pending may, of course, render a formerly live, ongoing controversy moot. Those events might eliminate any ongoing injury-in-fact, *see, e.g.*, *Spencer v. Kemna*, 523 U.S. 1, 14 (1998), or render relief unavailable because the relief sought has effectively been granted, *see Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992); *Mills v. Green*, 159 U.S. 651, 653, 657-58 (1895). "When a law has been amended or repealed, actions seeking declaratory or injunctive relief for earlier versions are generally moot." *Teague v. Cooper*, 720 F.3d 973, 976 (8th Cir. 2013); *see, e.g.*, *Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) (where a defendant has amended its regulations, "the issue of the validity of the old regulation is moot"). "No matter how vehemently the parties

8

continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013) (citation omitted).  Thus, even if there was a live controversy when a case was filed, courts should refrain from deciding claims if "the requisite personal interest that must exist at the commencement of the litigation" is no longer present. *Arizonans for Official English*, 520 U.S. at 68 & n.22 (citations omitted).

The Agencies' recent decision to issue the Rules, and the Agencies' non-enforcement of the prior version of the Mandate against Plaintiffs, renders Plaintiffs' claims moot because the very action Plaintiffs demand—relief from the Mandate—has already issued, and any injury Plaintiffs could allege based on the absence of this relief has been vitiated. *See, e.g.*, *Ozinga v. Price*, 855 F.3d 730, 733 (7th Cir. 2017) (concluding "it was error for the court to enter any injunctive relief at all once the regulatory accommodation was revised to include for-profit employers like [the plaintiffs]" because "[a]t that point, the case was moot"); *Teague*, 720 F.3d at 975-78 (holding plaintiffs' challenge to state statute was moot where legislature amended statute to remove challenged provision); *Phelps-Roper v. City of Manchester*, 697 F.3d 678, 687, 695 (8th Cir. 2012) (vacating district court's injunction against prior versions of city ordinance because challenges to those earlier versions were moot).

For similar reasons, Plaintiffs lack standing for prospective relief.  Plaintiffs suggest that the possibility that "a future administration" might change the law keeps the case alive.  Pls.' Mem. at 14.  Under that theory, no challenge to agency action would ever be moot.  Any notion that Plaintiffs may, in theory, face enforcement of the Mandate against them years in the future is speculative and falls well short of the requirements for Article III jurisdiction.  *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1143 (2013) (requiring alleged injury to be "certainly

9

impending" to establish standing); *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (to satisfy requirement imposed by Article III, "the injury or threat of injury must be both real and immediate, not conjectural or hypothetical" (citations omitted)).

Although "voluntary cessation of a challenged practice" does not necessarily render a challenge moot, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 169-70 (2000), "[a] case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* at 189 (quoting *United States v. Concentrated Phosphate Exp. Assn.*, 393 U.S. 199, 203 (1968)). This doctrine "frequently has not prevented governmental officials from discontinuing challenged practices and mooting a case." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1116 (10th Cir. 2010). Indeed, the Eighth Circuit has made clear that "statutory changes that discontinue a challenged practice are usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed." *Teague*, 720 F.3d at 977. "The exceptions to this general [rule] are rare and typically involve situations where it is *virtually certain* that the repealed law will be reenacted." *Id.* (emphasis added); *see also, e.g.*, *Ozinga*, 855 F.3d at 734 (7th Cir. 2017) (explaining that a "case becomes moot when the government repeals, revises, or replaces" a challenged "statute, regulation, or rule") (citing cases); *Rio Grande*, 601 F.3d at 1117 ("[T]he 'mere possibility' that an agency might rescind amendments to its . . . regulations does not enliven a moot controversy." (citation omitted)) (citing cases). "[W]hen public officials act to correct alleged illegal conduct by government officials, courts place greater stock in the government's act of self correction as long as the correction appears genuine." *Ancona v. Templeton*, 2012 WL 368685, at *6 (E.D. Mo. Feb. 3, 2012); *see Teague*, 720 F.3d at 978 (concluding case was moot even though amendments to

challenged law expired in two years because, "as judges, we must assume the [legislature] will properly perform its legislative duty by taking into account the diverse political views of its . . . constituents . . . and by weighing relevant constitutional decisions . . . in fashioning a new law that will then be subject to judicial review"); *Sossamon v. Texas*, 560 F.3d 316, 325 (5th Cir. 2009).

Here, given the Agencies' view that the Mandate and accommodation violate RFRA as applied to Plaintiffs, it is unlikely that the Agencies' actions constituting the alleged violation— enforcement of the Mandate against Plaintiffs—will recur.[3] This is particularly true because the federal agencies have affirmatively reversed the legal position that justified the challenged course of conduct.

Plaintiffs cite *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012 (2017), and cases involving for-profit entities in which courts entered permanent injunctions after *Hobby Lobby*, *see* Pls.' Mem. at 11-12, 14-15, but those cases do not demonstrate that a live controversy remains here. In *Trinity Lutheran*, "[t]he parties agree[d]" that the case was not moot. 137 S. Ct. at 2019 n.1. More importantly, the state government believed the policy being challenged was "compelled by" a provision of the Missouri constitution and that constitutional

---

[3] Plaintiffs correctly note that the Agencies cannot promise that the Religious Exemption Rule will remain unaltered after they take the public's comments into account. *See* Pls.' Mem. at 12-13. The Agencies have not pre-judged that question. The Rules, however, were issued after the Agencies received "more than 100,000 public comments" throughout six years of publishing and modifying these regulations, providing an extensive discussion about whether and by what extent to expand the religious exemption from the Mandate. 82 Fed. Reg. at 47,814. The Agencies solicited public comments on the Rules by December 5, 2017, which the Agencies are now reviewing before issuing final regulations. In the event the Agencies modify the Religious Exemption Rule such that Plaintiffs no longer qualify for the exemption, Plaintiffs might have a new cause of action to challenge such a change. But this would not revive the instant case. *See Phelps-Roper*, 697 F.3d at 687 (holding challenge to superseded city ordinance was moot and noting that plaintiffs could file a new lawsuit to challenge "any further change to the present ordinance"); *Kansas Judicial Review v. Stout*, 562 F.3d 1240, 1249 (10th Cir. 2009) (same).

provision had not been amended or repealed.  *Id*. at 2017; *see id*. 2019 n.1.  Here, in contrast, the Agencies have stated that they believe the Mandate and the prior regulatory scheme violate RFRA as applied to Plaintiffs.  Therefore, it is unlikely that the Agencies would reinstate the prior regulatory scheme.

The entry of permanent injunctions in cases involving for-profit entities after *Hobby Lobby*, *see* Pls.' Mem. at 14-15, also does not establish that this case presents a live controversy.  Those injunctions were entered before the Agencies ceased the conduct found unlawful in *Hobby Lobby* by amending the regulations to extend the accommodation to closely held for-profit entities with religious objections to contraceptive coverage.  *Compare* Order & Injunction, ECF No. 102 (Feb. 13, 2015), *and Newland v. Burwell*, 83 F. Supp. 3d 1122, 1125 (D. Colo. 2015) (order granting permanent injunction dated March 16, 2015), *with* 80 Fed. Reg. 41,318 (July 14, 2015) (final rules extending the accommodations to certain for-profit entities).  In a case more like this one, where the district court entered a permanent injunction after the Agencies issued regulatory amendments, the Seventh Circuit vacated the injunction and instructed the district court to dismiss the case as moot.  *See Ozinga*, 855 F.3d at 734-36.  The court reasoned that, "[o]nce the government, in response to the *Hobby Lobby* decision, re-wrote the regulations to permit closely held for-profit firms to invoke the accommodation . . . , the mandate no longer posed a prospective harm to the company [in light of its failure to challenge the accommodation], and there was no longer any action for the court to take on Ozinga's behalf."  *Id*. at 735.  "Any injunction directed to the prior regulations foreclosing the accommodation," the court explained, "necessarily would be meaningless, as those regulations no longer exist."  *Id*. (citation omitted).  The court also noted that the *Ozinga* plaintiffs had not suffered any past injury as a result of the

12

mandate because they "had enjoyed the benefit of preliminary injunctive relief during the litigation." *Id.* at 734-35.

The same reasoning applies here. Because the Religious Exemption Rule exempts Plaintiffs from the contraceptive coverage mandate to the extent of their sincerely held religious beliefs, this case is moot and the Court lacks jurisdiction to enter a permanent injunction or declaratory relief.

## II. PLAINTIFFS HAVE FAILED TO ESTABLISH ACTUAL OR IMMINENT LIABILITY FOR PAST NONCOMPLIANCE WITH THE MANDATE

If the Court concludes that Plaintiffs' claims are not moot, that determination could rest only on the possibility that "penalties [could be assessed] against [Plaintiffs] for refusing to comply with the Mandate's requirements" prior to the issuance of the Rules. Pls.' Mem. at 14. That possibility is too remote to support jurisdiction. *See Clapper*, 133 S. Ct. at 1143 (requiring alleged injury to be "certainly impending" to establish standing); *City of Los Angeles*, 461 U.S. at 102 (to satisfy requirement imposed by Article III, "the injury or threat of injury must be both real and immediate, not conjectural or hypothetical" (citation omitted)). The Agencies have expressly concluded that requiring employers with sincerely held religious objections to provide their employees with contraceptive coverage would violate RFRA. Thus, even if dissolving this Court's preliminary injunction might otherwise expose Plaintiffs to the theoretical possibility of liability for their past failure to comply with the Mandate, the Agencies disclaim any intent or ability to take such enforcement action. If the Court disagrees on this point, however, the concern could be addressed by an order of dismissal that makes clear that the Agencies have disclaimed any intent to assess penalties against Plaintiffs for past refusal to comply with the Mandate.

13

If this Court finds that Plaintiffs' claims are not moot and Plaintiffs face potential enforcement of the Mandate, Defendants do not oppose the entry of a permanent injunction enjoining the Agencies from enforcing the Mandate against Plaintiffs, so long as Plaintiffs have a sincere religious objection to the Mandate's enforcement.  As noted in the preamble to the Religious Exemption Rule, the Agencies have concluded that "requiring certain objecting entities or individuals to choose between the Mandate, the accommodation, or penalties for noncompliance imposes a substantial burden on religious exercise under RFRA," and the Mandate thus should not be enforced against employers with sincere religious objections to facilitating the provision of contraceptive services, to the extent of that religious objection.  82 Fed. Reg. at 47,800.

## **CONCLUSION**

For all of the foregoing reasons, the Court should deny Plaintiffs' motion for permanent injunction and declaratory relief, and dismiss this case as moot.

Respectfully submitted this 8th day of December, 2017,

>ETHAN P. DAVIS
>Deputy Assistant Attorney General
>
>JOEL McELVAIN
>Assistant Director, Federal Programs Branch
>
> /s/ Michelle R. Bennett
>MICHELLE R. BENNETT (CO Bar No. 37050)
>Senior Trial Counsel
>United States Department of Justice
>Civil Division, Federal Programs Branch
>20 Massachusetts Avenue N.W.  Room 7310
>Washington, D.C.  20530
>Tel: (202) 305-8902
>Fax: (202) 616-8470
>Email: michelle.bennett@usdoj.gov
>
>Attorneys for Defendants.

## **CERTIFICATE OF SERVICE**

      I hereby certify that on December 8, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notice of such filing to all parties.

                                                          /s/ Michelle R. Bennett
                                                        MICHELLE R. BENNETT