**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| SHARPE HOLDINGS, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 2:12 CV 92 DDN |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| HEALTH AND HUMAN SERVICES, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**
**REGARDING MOTIONS FOR ATTORNEY FEES**

This action is before the court on the motions of plaintiffs CNS International Ministries ("CNS") and Heartland Christian College ("HCC") ("not-for-profit plaintiffs" or "movant-plaintiffs") for attorneys' fees and expenses under 42 U.S.C. § 1988 following remand from the United States Court of Appeals for the Eighth Circuit. (Docs. 144 and 162). For the reasons set forth below, plaintiffs' motions are granted in part and denied in part.

**BACKGROUND**

On December 4, 2013, CNS and HCC joined certain individual and corporate for-profit plaintiffs in this action against the defendants Department of Health and Human Services, the Secretary of HHS, the Department of the Treasury, the Secretary of the Treasury, the Department of Labor, and the Secretary of Labor.[1] Plaintiffs allege that federal regulations issued under the Patient Protection and Affordable Care Act of 2010

---

[1] A more complete discussion of this case's procedural context is contained in this Court's Memorandum accompanying the Judgment Order granting plaintiffs declaratory and permanent injunctive relief. (Docs. 160, 161).

("contraceptive mandate") forced plaintiffs to violate their sincerely held religious opposition to abortion on demand or pay fines and penalties or lose health insurance coverage in violation of the Religious Freedom Restoration Act and the First Amendment to the Constitution. (Docs. 1, 61).

The original plaintiffs sought and received a temporary restraining order and a preliminary injunction in December 2012 and in June 2013. (Docs. 20, 56). The temporary restraining order and the preliminary injunction were extended to include the later joined not-for-profit plaintiffs on December 30, 2013, a decision the government appealed as to CNS and HCC in February 2014. (Docs. 84, 85). The Eighth Circuit affirmed and the United States Supreme Court vacated and remanded that decision. *Dept. of Health and Human Serv., et al. v. CNS Int'l Ministries, et al.,* No. 15-775, 2016 WL 2842448, at *1 (U.S. May 16, 2016); *Sharpe Holdings, Inc. v. Dept. of Health and Human Serv.*, 801 F.3d 927 (8th Cir. 2015).

On October 6, 2017, the government issued an interim regulation that permitted religious objections to the contraceptive mandate. On October 13, 2017, the Eighth Circuit granted defendants' motion to dismiss their appeal. (Doc. 131). On November 17, 2017, plaintiffs CNS and HCC moved for a permanent injunction. (Doc. 138). The government initially objected on the ground of mootness, but on December 22, 2017, it dropped its objections and declined to offer further substantive defenses in light of developments in other cases. (Docs. 146, 152).

## MOTIONS FOR ATTORNEY FEES

On December 5, 2017, plaintiffs CNS and HCC moved under 42 U.S.C. § 1988(b) for attorney fees in the amount of $408,110.00 and expenses in the amount of $1,753.72. (Doc. 144). On March 30, 2018, they filed a supplemental motion for $43,955.00 in attorney fees for time expended since November 6, 2017. (Doc. 162). Defendants objected to both motions, arguing that (1) plaintiffs are not in fact prevailing parties entitled to receive attorney fees, or, if they are, that the fee should be reduced by 40

percent because of plaintiffs' "limited success;" (2) the number of hours claimed is excessive when compared to filings in similarly situated cases; (3) plaintiffs' claimed fees include duplicative amounts from their compensation for work on the for-profit plaintiffs' portion of this case; (4) plaintiffs' counsel did not exercise reasonable billing judgment in recording time; and (5) plaintiffs' claims for "fees-on-fees litigation" are excessive. (Docs. 145, 156, 164).

## ANALYSIS

*1. Plaintiffs are prevailing parties*

The Court may award a reasonable attorney fee to prevailing parties in "any action or proceeding to enforce a provision of . . . the Religious Freedom Restoration Act of 1993[.]" 42 U.S.C. § 1988(b). The "touchstone of the prevailing party inquiry" is whether there is a "material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Sole v. Wyner*, 551 U.S. 74, 84 (2007); *see, e.g., Maher v. Gagne*, 448 U.S. 122, 129 (1980) (upholding finding that plaintiffs were prevailing parties when they obtained a consent decree after settling).

In plaintiffs' case the government ultimately declined to contest their motion for a permanent injunction. (Doc. 152). In the absence of government opposition and in keeping with the Eighth Circuit's prior decision in this case, this Court granted plaintiffs declaratory and permanent injunctive relief. (Doc. 160). The relationship between the parties thus changed, terminating the controversy and granting plaintiffs the outcome they sought. The government's argument that plaintiffs are not prevailing parties is without merit.

*2. Consideration of prior work and work in other cases*

Plaintiffs request attorneys' fees totaling $452,065.00 ($408,110 in Doc. 144 and $43,955 in Doc. 162), plus expenses totaling $1,753.72. (Doc. 144). To reflect the

statutory requirement that fee awards under 42 U.S.C. § 1988(b) must be "reasonable," they must be sufficient to "attract competent counsel" without producing a windfall. *Perdue v. Kenney A. ex. rel. Winn*, 559 U.S. 542, 552 (2010). "It [is] for the district court to determine what fee is 'reasonable.'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Generally, the method for determining a reasonable fee is "the lodestar" figure, that is, "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* The government does not challenge the hourly rates requested by plaintiffs' counsel. (Doc. 145 at 10). This Court has previously found these rates reasonable in light of plaintiffs' attorneys' respective experience and qualifications. (Doc. 118 at 4-5).

The government does, however, challenge the number of claimed hours. The process of awarding attorney fees gives "rough justice[,]" not "auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). District courts "may take into their account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

First, the Court notes that plaintiffs' attorneys have received fees on behalf of their non-movant, for-profit plaintiffs. The fees claimed for the hours representing the not-for-profit plaintiffs must reflect those hours spent on already-compensated hours representing the for-profit plaintiffs. The not-for-profit plaintiffs joined this case in December 2013, and counsel claims 5.8 hours of work done more than fifteen months before that time. (Doc. 144, at 1, 13, 32, 44) (1 hour for J. Matthew Belz on July 9, 2012, and 4.8 hours for Professor Carl Esbeck in March through July 2012). The Court observes that the entries for these hours describe work relating to nonprofit entities, but these hours predate the filing of the not-for-profit plaintiffs' claims to such an extent that, without specific information, the Court cannot conclude that they sufficiently relate to representation of the movant-plaintiffs. Rather, these hours enhance counsel's skill and expertise and are compensated in the hourly rates the Court agrees counsel deserve. Therefore, these hours are not compensable in the hours component of the lodestar amount.

-4-

Additionally, many of the movant-plaintiffs' filings are drawn directly from other attorney work in similar cases. As the Court has previously noted (Doc. 118), this is a practical litigation strategy, but the hours claimed in light of this substantial reliance must reflect that some of the value was provided by other counsel. Movant-plaintiffs claim a total of approximately 250 hours on these filings: approximately 50 hours on the second amended complaint, 80 hours on the opening brief seeking a temporary restraining order and a preliminary injunction, 65 hours on the reply brief, 30 hours on the motion for permanent injunction, and 25 hours on the permanent injunction reply brief. (Doc. 144, at 32-33). The government has produced comparable filings in *East Texas Baptist University*, No. 4:12 CV 3009 (S.D. Tex.) ("ETBU"), *Catholic Diocese of Nashville*, No. 3:13 CV 1303 (M.D. Tenn.) ("CDN"), and *Catholic Benefits Association LCA ("CBA") v. Sebelius et al.*, No. 5:14 CV 240 R (W.D. Okla.). (Doc. 154, Exs. 1-6; Doc. 164, Exs. 1-2).

The not-for-profit plaintiffs joined this action in the second amended complaint. (Doc. 61, filed December 4, 2013). That pleading added 46 paragraphs to the first amended complaint: some information about plaintiffs in approximately 8 different paragraphs, as well as substantive allegations about the accommodation process in paragraphs 115-52. (*Id.*). The second amended complaint reflects a strong reliance on the first amended complaint in ETBU, filed four months earlier on August 6, 2013. (Doc. 154, Exs. 2-3). The Court believes that counsel would reasonably apply their experience and expertise to the review of similar cases in other courts. Reflecting the benefits counsel garnered by the review of those pleadings, this Court reduces by 20 percent the claimed hours in this case that are classified by plaintiffs as work, research, or revision of the second amended complaint after August 6, 2013. This results in a reduction of attorney Tim Belz's 31.6 hours to 25.28 hours and J. Matthew Belz's 15.2 hours to 12.16.

Plaintiffs' memorandum in support of their motion for a temporary restraining order and a preliminary injunction similarly reflects consideration of the memorandum filed in ETBU on August 30, 2013. (Doc. 154, Exs. 4-5). In the 36-page memorandum,

much of the material is similar to material found in the ETBU memorandum. (*Id.*). The Court recognizes that counsel also prepared two motions and two five-page declarations along with the memorandum (Docs. 62-64). The Court reduces the time claimed in preparing this motion after August 30, 2013, by 20 percent: attorney Tim Belz's 31.2 hours are reduced to 24.96 hours and attorney J. Matthew Belz's 44.8 hours are reduced to 35.84 hours.

Plaintiffs' reply brief, filed December 25, 2013, reflects strong consideration of the reply filed in CDN nine days earlier on December 16, 2013. (Doc. 154, Exs. 6-7). The Court accordingly reduces the time claimed for preparing this pleading by 20 percent. This results in a reduction of Tim Belz's 30.5 hours to 24.4 hours and J. Matthew Belz's 28.5 hours to 22.8 hours.

Similarly the movant-plaintiffs' memorandum in support of their motion for a permanent injunction (Doc. 139, filed Nov. 17, 2017) benefitted from a review of CBA's motion for permanent injunction, filed November 1, 2017. (Docs. 139, 164, Ex. 1). The Court reduces by 20 percent those hours classified by plaintiffs as work, research, or revision of the memorandum after November 1, 2017. This results in a reduction of attorney Tim Belz's 17.4 hours to 13.92 hours; attorney J. Matthew Belz's 12 hours are reduced to 9.6 hours; and attorney Carl Esbeck's 3.7 hours are reduced to 2.96.

Finally, the movant-plaintiffs' reply in support of their motion for permanent injunction (Doc. 151, filed December 15, 2017) also reflects strong consideration of CBA's reply filed December 4, 2017 (Doc. 164, Ex. 2), and time claimed for its preparation will reflect this consideration. The Court reduces by 20 percent those hours classified by plaintiffs as work, research, or revision of the reply after December 4, 2017. This results in a reduction of attorney Tim Belz's 11.1 hours to 8.88 hours; attorney J. Matthew Belz's 11.8 hours are reduced to 9.44 hours; and attorney Carl Esbeck's 3.4 hours are reduced to 2.72 hours.

*3. Fees for fee claim litigation*

Plaintiffs claim a total of 108 hours for working on the two fee claim motions in this case.   (Docs. 144, 162).   "Time spent preparing fee applications is generally compensable," *El-Tabech v. Clarke*, 616 F.3d 834, 834-44 (8th Cir. 2010), but not when this time is excessive or "result[s] in a second major litigation."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  The government challenges plaintiffs' fees-on-fees claims as based on excessive numbers of hours. (Doc. 164).

Plaintiffs have 59.2 hours of time entries related to their first motion, which was filed on December 5, 2017, and which claimed hours from July 9, 2012, to November 6, 2017.   (Doc. 144).   This work consisted of a 23-page motion, 10 pages of which discussed the background of the case, and 7 pages of which discussed the attorney fee rates that this Court already approved in this case for these attorneys in 2015.  (Docs. 118, 144).  In addition, counsel submitted their timekeeping records; copies of briefs filed before the Supreme Court; affidavits from each of plaintiffs' three attorneys, ranging from two to three pages; the resumes of the attorneys; and affidavits from two other attorneys regarding customary rates.  (Doc. 144).

In their supplemental motion, filed on March 30, 2018 (Doc. 162), plaintiffs addressed hours expended since November 6, 2017.  (Doc. 163).  This includes a total of 40.8 hours on their 15-page reply to the government's brief in opposition to the fee motion. (Doc. 156).

 In contrast, plaintiffs claim a total of 8 hours on their supplemental fee application for work from November 8, 2017, to March 30, 2018, which consisted of a 6-page motion, timekeeping records, and three one-page affidavits.  (Doc. 163, Ex. 3).  The time spent on this motion was reasonable.  But the time spent on the preceding motion and reply was excessive.

A claim of five days of attorney work on the reply memorandum and over seven days of attorney work to prepare the initial motion is excessive.  The Court will reduce the claimed time for these documents by 30 percent, reducing the hours for attorney J.

Matthew Belz from 24 to 16.8 hours and for Tim Belz from 35.2 to 24.64 hours on the initial motion; and from 20.8 to 14.56 hours for J. Matthew Belz and 19.7 to 13.79 hours for Tim Belz on the reply.

### 4. *Fees for strategy-planning, conferencing, and oral argument preparation*

On appeal, plaintiffs' counsel reported a total of 752.4 hours of work, including 251.8 hours on initial correspondence and briefing, 123.3 hours on 28(j) letters, 85.6 hours on correspondence, research, and status report work, and 102.8 hours on oral argument preparation. (Doc. 144, Ex. 2). The Court finds counsel's 102.8 hours on oral argument preparation to be excessive. Plaintiffs' lead counsel asserts "more than 30 years [of] experience… in constitutional law, with a particular emphasis on religious liberty." (Doc. 144, Ex. 6 at 2). This justifies the accepted rate per hour for plaintiffs' experienced counsel. This factor also militates toward a reduction of the required hours for presentation preparation. *See Glassroth v. Moore*, 347 F.3d 916, 919 (11th Cir. 2003) (finding that the presence of "lead counsel [who] is an expert in this area" should result in more efficient resolution). The Court finds Carl Esbeck's timekeeping entries for 12.6 hours in oral argument preparation to be sufficiently specific and reasonable, but it will reduce Tim and J. Matthew Belz's oral argument preparation time by 20 percent, reducing attorney Tim Belz's 58.8 hours to 47.04 and J. Matthew Belz's 31.5 hours to 25.2 hours.

As for the remaining hours on appellate work, plaintiffs' lead counsel claims that "the hours I report in the invoices submitted to the Court represent substantially fewer hours than I actually spent on this matter[.]" (Doc. 144, Ex. 6 at 3). However, no record has been submitted of the number of hours excluded in plaintiffs' application for attorneys' fees. Many time entries contain multiple tasks or insufficient detail to enable the Court to determine the claimed hours were reasonable. For example, the timekeeping report contains over fifty entries referring to communications with other attorneys in similar cases. (Doc. 144, Ex. 1; Doc. 163, Ex. 1) (*see also* Doc. 145 at 16 n. 3). In most

of these entries, these communications are recorded in a string of other tasks and it is not clear how much time was spent on each task, nor is there enough information about the nature of these communications to determine whether they are compensable.

Instead of a line-by-line adjustment, the Court will apply a percentage reduction to adjust for the imprecise and excessive billing. Because Counsel has not disclosed the time excluded from the timekeeping logs, and because the time entries for Tim and J. Matthew Belz are in many cases too general for the Court to adequately evaluate, or involve a long string of tasks with no breakdown of the time spent on each task,[2] the Court reduces the total for each of these attorneys by a further 5 percent.

The Court awards attorneys' fees for the work done on plaintiffs' amicus brief in *Zubik v. Burwell*, 136 S. Ct. 1557, 1560 (2016). This was a related case and played an important role in plaintiffs prevailing in this case, although they achieved only limited success (the Supreme Court vacated the Eighth Circuit judgment and remanded, "express[ing] no view on the merits" of the case). *HHS v. CNS Int'l Ministries*, 136 S. Ct. 2006 (2016). Therefore, the Court will not reduce the claimed attorneys' fees for plaintiffs' participation as amicus.

Finally, the Court will not reduce the time or costs plaintiffs' counsel spent on other work before the Supreme Court.

---

[2] *See, e.g.,* time entries for 7/8/13 (5.6 hours for "Research regarding religious nonprofit status given passage of Final rule; work on amendment of pleadings; two telephone conferences with David Melton, General counsel for nonprofits"); 10/28/13 (4.4 hours for "Communications with various attorneys regarding status of nonprofit religious cases across country; review same"); 12/11/13 (3.8 hours for "Review/revise all documents; file all"); 6/3/14 (4.5 hours for "Work on brief"); 2/12/15 (4.9 hours for "Fly speck Geneva College opinion from the Third Circuit, for purpose of filing a Rule 28(j) letter responding to the Government's 28(j) letter; share research with attorneys similarly situated and speak to client regarding same; research for and prepare Rule 28(j) response letter for filing in the 8th Circuit"); 1/25/17 (2.2 hours for "Telephone conferences and emails to co-counsel and clients over past week") (Doc. 144, Ex. 1).

## CONCLUSION AND ORDER

Applying these considerations,

**IT IS HEREBY ORDERED** that the motions of plaintiffs for attorney fees and expenses (Docs. 144, 162) are **GRANTED IN PART** and **DENIED IN PART**.

The Court finding that the following hourly rates and hours of effort are reasonable compensation for plaintiffs' legal representation, rounded to the nearest hour,

**IT IS FURTHER ORDERED** that defendants must pay plaintiffs CNS and HCC the following amounts as reasonable attorney fees:

| *Attorney* | *Hours Claimed* | *Reduction for Prior Work* | *Reduction for Fee Litigation* | *Reduction for Oral Argument* | *Other Excessive Hours* | *Hours as Determined by Court* | *Hourly Rate* | *Product of Hours and Rate* |
|---|---|---|---|---|---|---|---|---|
| T. Belz | 684 | 24 | 16 | 12 | 34 | 598 | $450 | $269,100 |
| J.M. Belz | 432 | 24 | 13 | 6 | 22 | 367 | $250 | $91,750 |
| C. Esbeck | 81 | 6 | 0 | 0 | 0 | 75 | $450 | $33,750 |
| TOTAL | 1197 | 54 | 29 | 18 | 56 | 1040 | | $394,600 |

**IT IS FURTHER ORDERED** that defendants must pay plaintiffs the reasonable sum of $1,753.72 as expenses in this case.

/s/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on August 9, 2018.